# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW JERSEY

_____

MARY BASILE LOGAN, individually and on behalf
of those similarly situated, *Pro-Se*;

               Plaintiff,

MERRITT GARLAND, in his official capacity
Attorney General, Department of Justice; et al.

               Defendants.

                                     **CIVIL DOCKET: 3:24-CV-00040
                                         ZNQ-TJB**

_____

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' <u>MOTION TO DISMISS</u>

Dated February 19, 2023

Mary Basile Logan
Plaintiff, *Pro-Se*
Post Office Box 5237
Clinton, New Jersey 08809
Telephone:  908-200-7294
FAX:  888-237-2671
Email:  Trino@trinops.com

Plaintiff, Mary Basile Logan, individually and on behalf of those similarly situated, does hereby reply to Defendants, JAMES PITTINGER and LISA SELLA's joint Motion to Dismiss ("Motion").  Plaintiff opposes the Motion.

As setforth in ¶I of co-Defendant's Motion, Rule 12(b)(6) provides that parties may assert by motion a defense based on "failure to state a claim upon which relief can be granted" Fed. R. Civ. P. 12(b)(6), Plaintiff provides the weight of facts concerning the co-Defendants as to stated factual harms herein, appreciatively reaching beyond mere speculation.

The Rule 12(b)(6) test has been revised in recent years, this includes *Conley v. Gibson*, 355 U.S. 41 (1957), in this case, the Supreme Court stated that the interplay between Rule 8 ("pleading") and Rule 12(b)(6) as follows:  "[T]he accepted rule [is] that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove a set of facts to support her claim which would entitle her to relief." 355 U.S. at 45-46.  In *Bell Atlantic Corporation v. Twombly*, 55 U.S. 544 (2007), the Court noted questions raised regarding the "no set of facts" test and clarified that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *id.* at 563.  It continued, "*Conley*, then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Id.*   In *Ashcroft v. Iqbal,* 566 U.S. 662 (2009), the Court further elaborated on the test, including this statement: "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face.'" *Id.* at 1949  (citation omitted).  The court considering a motion to dismiss pursuant to Rule 12(b)(6) must take all the factual allegations in the complaint as true, and must draw all reasonable inferences in favor of the plaintiff. *Iqbal,* 556 U.S. at 678; *see Loreley Fin.*

*(Jersey) No. 3 v. Wells Fargo Sec.,* 797 F.3d 160, 169 (2d. Cir. 2015).  Where a complaint is

inadequate, leave to amend the complaint is common, Plaintiff is intent to take such action by way of

separate plea.  see, *e.g. Butt v. United Brotherhood of Carpenters & Joiners of America, No. 09-4285,*

2010 WL 2080034 (E.D. Pa. May 19, 2010).

<u>**FACTUAL BACKGROUND**</u>

Defendants, JAMES PITTINGER ("PITTINGER") and LISA SELLA ("SELLA") claim by

way of their memorandum of law an observed "difficulty" in identifying a factual background in the

complaint, lacking in specificity regarding the co-Defendants, at which point the memorandum moves

to present legal verbiage in support of their request of the court.  Setting aside the memoranda's

typographical errors, Plaintiff presents, substantive facts so as to assist the Honorable court's

evaluation in advance of Plaintiff actions pursuant to Fed. R. Civ. P. 15(a)(2), the facts provide

simultaneous redress to the co-Defendant's claims as presented in the memorandum of law, ¶ 2, and 3.

1. Plaintiff's knowledge exceeds that of the co-Defendants.  The constitutional violations as

   setforth in the Complaint are herein reaffirmed inclusive of those claims against the subject co-

   Defendants.  Plaintiff's efforts to remedy such claims are sought with assurance that the

   resulting injury as well the threat to her, personally, as much to the People of these United

   States, be extinguished.  Plaintiff will not stand down to the co-Defendants with whom she

   shares a long history, her allegiance is to that of the Country.

2. Plaintiff states as a matter of record that co-Defendants diligently worked to disenfranchise the

   Plaintiff from her Oath of Office.  The co-Defendants willfully participated in and among their

   co-conspirators to direct and instruct the actions of extraneous persons, extending to members

   of the public coercing them to vote for a specific candidate.  It is difficult to believe that these

   educated persons would take such action without some semblance of benefit. .  The co-

Defendants conspired to exact a determined outcome in a manner so as to subvert, obstruct and

conceal the fraudulent actions of their co-conspirators with whom they share company,

including PHIL MURPHY and GEORGE NORCROSS.   Plaintiff asserts that monetary

benefit transacted as a component of the vote brokering.  This statement is supported by claims

made more broadly in New Jersey and subject of active litigation at the time of this writing.

3.  *Right reasoning* would have and should have prevailed, with the co-Defendants declining to

participate in meetings which knowingly compromised PITTINGER's oath of office, that

would not be the last example of poor moral reasoning.  As these meetings were made known

to the Plaintiff, she chose to have a  conversation with PITTINGER following a municipal

meeting at which time he apologized, an admission of guilt with several witnesses to the

conversation; however, his apology rang hollow as his behavior continued unabated.

4.  Within the complaint, Plaintiff cites in ¶2d, 18 U.S.C. §371, a section of the Constitution

crafted to protect government functions from frustration, distortion and exploitation through

deceptive practices, Plaintiff refers to section 371 of the code which reads, "…any conspiracy

for the purpose of impairing, obstructing or defeating the lawful function of any department of

Government."  (*Tanner v. United States*, 483 U.S. 107, 128 (1987); *see Dennis v. United

States*, 384 U.S. 855 (1966).  The "defraud part of section 371 criminalizes any willful

impairment of a legitimate function of government, whether or not the improper acts or

objective are criminal under another statute." *United States v. Tuohey*, 867 F.2d 534 (9th Cir.

1989).  The co-Defendant's actions described herein echo those of *State v. O'Donnell*, 471 N.J.

Super 360.

Plaintiff states in the complaint that the Constitution, in its entirety, serves to assure the

American people, inclusive of the Plaintiff, that the President, Legislative officers, their

designees, and officials, inclusive of the co-Defendants will conduct themselves honorably, within the construct and constraint of the founding principles and in a manner fitting of a Republic form of government.  As setforth herein, by his own admission, PITTINGER has not in the past, nor does he now conform to Constitutional restraints, rather he plays by his own rules, unequivocally conspiratorial in nature.  The co-defendants knew of the Plaintiff's efforts within the state of New Jersey as well across the United States regarding analysis of the 2020 election, as evidenced below:

a.  In November, 2021, Plaintiff sought to read an original authored analysis regarding the Center for Tech and Civic Life as well as findings on Panorama Education, an affiliate entity, at the Council dais.  Plaintiff felt the weight and obligation to the community who elected her to ensure such facts be disclosed in their interest while seeking to engage her peers as to the content.  Once Plaintiff began reading the letter, PITTINGER publicly admonished her, advising her to stop and deferred to a Councilwoman who immediately continued the admonishment, no one interrupted their joint actions which terminated the Plaintiff's ability to speak further; Council and its attorney sought a copy of the letter which was provided, however, it was withheld from becoming a component of the official meeting minutes, the contents were knowingly withheld from the community by the meeting officiate, PITTINGER.

b.  The co-Defendants were present at private meetings commencing in May, 2022, which included ROBERT JUNGE, LISA SELLA , JAMES PITTINGER, among others who formulated plans to subvert the Plaintiff, personally as well in her elected capacity.  By attending and participating in such meetings, these parties knowingly accepted the consequences to their actions.  In their most egregious manifestation, the co-

conspirators involved members of the public in brokering promises of future

Commission and Board appointments, same was fulfilled in November, 2023, see

EXHIBIT 1, appointment to Land Use Board.  These parties then imposed on the

earnest efforts to address mental health complexities within the community.  Plaintiff

seeks to ensure that the co-Defendants understand the manifest unintended

consequences of their actions; two residents attempted suicide during that time period.

Plaintiff would not discuss those persons, rather it is brought forward to evidence the

irresponsible and heinous leadership structure to which the co-Defendants knowingly

participated which placed the community at great risk while conducting themselves for

aggrandizement; the underlying issues have not dissipated, now, however, they are

without an advocate.

c.   In June, 2022, Plaintiff ran as a candidate for Mayor, she did not prevail.  The vote

differential reflects the exact configuration associated with the Fire Company as

evidenced in EXHIBIT 2.  The Defendant's co-conspirator, SELLA, is the sibling of

the Fire Chief and the daughter of the Land Use Chair, also serving as OEM Chair.

Throughout the subject election cycle, SELLA openly campaigned for PITTINGER,

wholly inappropriate given her municipal employment for which the Administrator

addressed.  Thereafter, the Administrator also became vulnerable to the actions of

PITTINGER.  The environment became so contentious that Plaintiff requested the

municipal insurer present to the elected body regarding legal protections and actions

taken by members of the municipal elected structure.  Plaintiff called on previous

experience as a Councilwoman in which staff members sued citing conflicts with

varying factions and Mayoral actions, same a matter of public record.  Despite

Plaintiff's earnest intent to protect the community and the co-Defendants, their actions continued and escalated.  On election day of June, 2022 election, SELLA was seen leaving her office to make cellphone calls to canvass voters outside of the municipal building.  The foregoing will be confirmed in discovery.  SELLA's actions were repeated in the 2023 election cycle, verbatim.  Plaintiff filed a formal complaint with the Hunterdon County Prosecutor's office, see EXHIBIT 3, regarding these actions; she was referred to the Attorney General's grievance portal, entering the grievance on November 22, 2023, no subsequent answer or query was provided.  Lebanon is subject of the federal "Protect the Right to Vote" actions under the Department of Justice; however these laws and regulations too were ignored.

d. Following the June, 2022 election and repeating through the 2023 election, PITTINGER was heard stating on different occasions, "I will not stop until she (Plaintiff) is gone, off Council and forced to move."  Following the 2022 election, the personal attacks against the Plaintiff commenced during Council meetings by a variety of residents; each meeting, the parties being the same group of residents who stated being in attendance of private meetings which were also attended by PITTINGER and SELLA, as above.

e. The earnest nature of the Plaintiff's efforts across these United States and in New Jersey was confronted by a myriad of persons including Michael Flynn, members of the Central Intelligence Agency and Christopher Christie – the latter parties contacting Plaintiff's husband under the auspices of his business.  Additional persons include Lynne Lippincott, the cousin of SELLA, see attached EXHIBIT 4, whom the Plaintiff trained in the company of some 100,000 other residents across the United States.  To be

blunt, Plaintiff has touched the truth in every sovereign State of this fine Nation and, on a granular scale, that of New Jersey.  So too has the Plaintiff experienced a variety of subterfuge to the efforts, in New Jersey as well as many other states.  Plaintiff's degrees of study when combined with her avocational skills create a formidable analytical toolbox, unmatched for the task at hand.  Moreover, she has a working knowledge of nearly every one of the co-conspirators having walked in and among their shadows through years of dedicated civic volunteer roles held with the highest degree of integrity.  The court record reflects the Plaintiff's thorough and appreciative analysis as well the timeline of history as to her advocate actions.  Moreover, the record evidences the claims herein concerning the influence and posture of the co-Defendants as much a foreshadow of their actions in attempting to extinguish Plaintiff's advocate voice both as an elected official as well redress to the harms outlined in the complaint.

f.   Not unlike the Plaintiff, the co-Defendants too applied their avocation skills, advantaging themselves in business enterprise; a sell out for a buck and a pat on the head by the "PittBull", the Land Use Chair and/or a member of the hierarchal structure within the body politic in New Jersey.

g.   Contrary to the co-Defendants and their associated cohorts enumerated in the complaint, the Plaintiff's primary concerns orbit on the unintended consequences of the collective conspiratorial actions; these concerns remain unchanged for the Plaintiff, never far in thought or prayer, hauntingly so.  The Plaintiff's intimate knowledge of the unintended consequences is engrained in her very nature, she has an extensive interview of whispered advocacy unknown to the co-Defendants and their cohorts but

for those persons who drew benefit from her actions.  Examples within her community include quietly resolving tax sale matters to stay foreclosure, drug addiction counseling and homeless inreach as well youth mentoring.  Plaintiff brings this into pleading to ensure that the weight of the decisions by and between the co-conspirators is understood insofar as the resulting consequence by Plaintiff's absence of voice and presence in advocacy; the human complexities remain, now being unaddressed. Plaintiff's familiarity with the composition of the co-Defendants is appreciative as well their cohorts, their disastrous, self-absorption and attachment to capacity as power versus capacity in service, falls hollow in the vastness of human impact happening all around us.  In the last ten (10) months of 2023, Plaintiff had worked with Hunterdon County officials in an attempt to extend Municipal Board of Health (BoH) services to incorporate mental health advocacy noting the significant rise in mental health complexities as a consequence of the varied parameters resulting from COVID-19.  In lieu of partnering with Plaintiff for the benefit of the community, and, by extension the entirety of the County, the co-conspirators focused on a property management ordinance which sought redress for a limited number of impacted properties in the community; meanwhile two of our valued residents had attempted suicide with a vast number of others were living through extreme bouts of depression, same continuing to this very day.  But for the heinous actions of the co-Defendants and their co-conspirators, the resident needs and care would be met with a wrap-around program ensuring that those who need help would have immediate access, retaining full confidentiality and discretion with trained professionals.

h.  COVID-19 masked a myriad of disastrous outcropping human entanglements, by far the most egregious was the orchestration of synthetic opioids, fentanyl and over the counter accessible liquids made readily available by the co-conspirators, unabated, within our Nation's communities.  Plaintiff serves as the Chair of the Hunterdon County Local Advisory Committee on Drug and Alcohol Abuse, her interview in that capacity and its interface with the County Prosecutor as well peer advocates is a matter of Minutes and recordation.  Plaintiff has full breadth of knowledge in the orchestration and sourcing of these abhorrent humanity impositions, extending to her formal academic acumen and moreover the individuals responsible in New Jersey and more broadly.

i.  Plaintiff cites the foregoing as distinct harms; they are a sample of the Plaintiff's experiential expertise focused centrally on whole human well-being for her fellow man/woman and child.

5.  Applying the foregoing statements, Plaintiff states that there are some matters between the parties that do not add up.  SELLA's cousin was trained by Plaintiff to research election related information, working in and among the FOIA/OPRA team for some time; she remains active in her pursuits at the time of this writing, working with Mike Lindell.  SELLA by way of counsel herein claims that the presented initial findings setforth by the Plaintiff are "conspiracies", the claim despite 150 pages of sourced evidentiary data concerning nursing home deaths, etc. which the co-Defendants seek to have dismissed by way of their motion. Moreover, SELLA actively participated to ensure that Plaintiff was not reelected, jeopardizing her employment.  So too, PITTINGER, who knowingly jeopardized his oath of office.

6. Taking the foregoing statements into full consideration requires an evaluation in context of capacity as it relates to the harms experienced by the Plaintiff as well the community.  The Mayor (PITTINGER) and the Deputy Clerk (SELLA), is the daughter of the Land Use Chair/OEM and the sibling of the Fire Chief.  These parties were in attendance at the private meetings and vocal in their intent as well their invisible hand of directive to imposition in local government leadership as well interference in election process by directing persons, thereafter canvassing who to vote for in a community consisting of 1,700 residents.   Their actions, egregious and their harms incalculable as much to the Plaintiff as the residents themselves, sending a resounding message that they control and affix who serves the community and its future.

7. Not unlike many communities, Lebanon has experienced its share of controversy, including those herein; however, Plaintiff's concern focuses on two overarching matters and their implications on the safety and well-being of our citizens which center on public safety and human health.  Plaintiff served as Chair of Public Safety honorably, negotiating the stand along contract with the New Jersey State Police, the only one of its kind in the state.  Moreover, Plaintiff has knowledge concerning parties in the community who are subject of observation by federal entities concerning illicit business practices which prey on human addictions.  State policy as it relates to advancement of cannabis as referenced in the complaint, is beneficial to the co-Defendant's co-conspirators, including NORCROSS; these policies when combined with the existing complexities in the composite of the community, inclusive of the actions of the co-Defendants as much their posture and, indeed their personal vulnerabilities, combine to create a cauldron of tinder awaiting a flame; Plaintiff herein seeks to extinguish that tinder, ensuring *right reasoning* is imposed.

### LEGAL ARGUMENT

8.  The Hatch Act is quite specific in the use and application of federal funding as was the case with the American Rescue Plans appropriation allocations for which Lebanon was a recipient. As setforth above, SELLA's actions as a private actor in PITTINGER's stead, in elections and more broadly is not only inappropriate, SELLA's actions compromise the Hatch Act while imposing a vulnerability onto the administration of the Borough.  See attached communication to Counsel, EXHIBIT 5, inclusive of the email which prompted same, dated November 22, 2023.

9.  Plaintiff reasserts jurisdiction and venue.  Plaintiff reiterates the co-Defendant's imposition on her Constitutional rights as setforth above, the co-Defendants were operating under a false premise, assuming that they could conduct themselves in a manner contrary to the law, absent accountability as though no one was the wiser.  Accordingly, Plaintiff reaffirms federal jurisdiction pursuant to 28 U.S.C. §§1331 and 1332, as the actions arose under the Constitution, laws, or treaties of these United States.  Citing *Sandusky Co. Democratic Party v. Blackwell* 387 F3d. 565 (6th Circ. 2004), the district court holding "it is clearly established that the Supremacy Clause grants the federal courts jurisdiction over such claims; conflict with a federal law raises a federal question pursuant to 28 U.S.C. §1331."[1]

Citing the Civil Rights Act of 1871, (Section 1983), Plaintiff states:

a.  *Perez v. Zagami, LLC* 94 A.3d. 869 (N.J. 2014).  "Referring to *Felicioni v. Administrative Office of the Courts*, 404 N.J. Super. 382, 961 A.2d 1207 (App.Div. 2008), certify. Denied, 203 N.J. 440, 3 C.3d 1228 (2010), the appellate panel determined that N.J.S.A. 10:6-2(c) has two distinct clauses: one clause protects against

---

[1] Sandusky Co. Democratic Party v. Blackwell 287 F.3d 565 (6th Cir. 2004).

a 'deprivation' of an individual's constitutional or statutory rights and the other clause

protects against an 'interference' with those same rights…(c) any person who has been

deprived of any substantive due process or equal protection rights, privileges or

immunities secured by the Constitution or laws of the United States, or any substantive

rights, privileges or immunities secured by the Constitution or laws of this State, or

who exercise or enjoyment of those substantive rights, privileges or immunities has

been interfered with or attempted to be interfered with, by threats, intimidation or

coercion by a person acting under color of law, may bring a civil action for damages

and for injunctive or other appropriate relief."

b.   *Solis v. Beacon Associates Management Corporation*, 09 Civ. 777 (AJP) (S.D.N.Y.

Aug. 10, 2011).  "In assessing the sufficiency of an affirmative defense, the Court

'should construe 'the pleadings liberally to give the defendant a full opportunity to

support its claims at trial, after full discovery has been made.'" *Coach, Inc. v. Kmart*

*Corps.,*  756 F. Supp. 2d 421, 425 (S.D.N.Y. 2010) (quoting *McCaskey,* 56 F. Supp. 2d

at 326).  A motion to strike an affirmative defense "is not favored and will not be

granted 'unless it appears to a certainty that Plaintiffs would succeed despite any state

of the facts which could be provided in support of the defense.'" *William Z. Salcer,*

*Panfield, Edelman v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir. 1984),

vacated on other grounds, 478 U.S. 1015 (1986) (quoting *Durham Indus., Inc. v. N.*

*River Ins. Co.*, 482 F. Supp. 910, 913 (S.D.N.Y. 1979)).  "[E]ven when the defense

presents a purely legal question, the courts are very reluctant to determine disputed or

substantial issues of law on a motion to strike; these questions quite properly are

viewed as determinable only after discovery and a hearing on the merits." Id. (quoting

5 C. Wright & A. Miller, Federal Practice & Procedure § 1381, at 800-01).

c.      Monell v. New York City Dept. of Social Services, 436 U.S. 6598 (1978).  Citing 4(d),

"finally, it appears beyond doubt from the legislative history of the Civil Rights Act of

1871 that *Monroe* misapprehended the meaning of the Act.  Where §1983

unconstitutional as to local governments, it would have been equally unconstitutional

as to state or local, officers yet the 1871 Congress clearly intended §1983 to apply to

such officers and all agreed that such officers could constitutionally be subjected to

liability under §1983.  The Act also unquestionably was intended to provide a remedy,

to be broadly construed, against all forms of official violation of federally protected

rights.  Therefore, without a clear statement in the legislative history, which is not

present, there is no justification for excluding municipalities from the 'persons' covered

by §1983.  Pp. 700-701. 5. Local government sued under §1983 cannot be entitled to

an absolute immunity, lest today's decision 'be drained of meaning,' *Scheuer v. Rhodes,*

416 U.S. 232, 248. P.701. *Perez v. Zagami, LLC.*  94 A.3d 869 (N.J. 2014) Citing

N.J.S.A. 10:6-2(c) "Any person who has been deprived of any substantive due process

or equal protection rights privileges or immunities secured by the Constitution or laws

of the United States, or any substantive rights, privileges or immunities secured by the

Constitution or laws of this State, or whose exercise or enjoyment of those substantive

rights, privileges or immunities has been interfered with or attempted to be interfered

with, by threats, intimidation or coercion by a person acting under color of law, may

bring a civil action for damages and for injunctive or other appropriate relief.  The

parties dispute the requirements for initiating an action under subsection (c) against a

private party for civil rights violations.  Specifically at issue is whether all claims filed under N.J.S.A. 10:6-2(c) require the presence of state action, or whether the 'under color of law' condition of that subsection is limited to claims based on interference with protected civil rights."

d.      14th Amendment, Section 1.  "Persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside.  No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protections of law."

e.      Title 18, Section 242.  "Acts under 'color of law' include acts not only done by federal, state or local officials within their lawful authority, but also acts done beyond the bounds of that official's lawful authority, if the acts are done while the official is purporting to or pretending to act in the performance of his/her official duties.  Persons acting under color of law within the meaning of this statute include police officers, prison guards and other law enforcement officials, as well as judges, care providers in public health facilities, and others who are acting as public officials."  Plaintiff states, no one is above the law, regardless of political bargaining as capital to which Plaintiff finds abhorrent in all representations.

f.      The 'Take Care Clause', Article II, Section 3, subject of PITTINGER and SELLA's memorandum, the co-Defendant's claim is suggestive while not definitive.  The Constitution, despite efforts to the contrary, is and remains the law of the land, no one is above the law, regardless of the heartened attempt by counsel.  Plaintiff hereto

provides citation, *Unique Prod. Solutions v. Hy–grade Valve Inc.,* 765 F. Supp. 2d 997 (N.D. Ohio 2011)  "Therefore, the Court must determine whether the quitam provision of the False Marking Statute provides the Executive Branch sufficient control to ensure that the President is able to perform his constitutionally assigned duty to 'Take Care' that the Laws be faithfully executed." Such determination is made in Section IV, infra."

10. Plaintiff prays over the court and its honorable jurists as the content herein is evaluated against the co-Defendant's actions, made known, as well their pending motion.

### CERTIFICATION OF SERVICE

Plaintiff, Mary Basile Logan, hereby certifies that on this 20th day of February, 2024, I electronically filed the foregoing Plaintiff's Opposition to Defendants' Motion to Dismiss the Complaint with the Clerk's office of the U.S. District Court for the District of New Jersey using the Electronic Case Filing ("ECF"), to be served upon the Defendants, James Pittinger and Lisa Sella, same being notice of electronic filing to the following:

**Matthew C. Moench**
King, Moench & Collins, LLP
51 Gibraltar Drive, Suite 2F
Morris Plains, New Jersey 07950
Email:        mmoench@kingmoench.com
lynn@kingmoench.com
monenchlawllc@gmail.com
rwindels@kingmoench.com
ttagarelli@kingmoench.com

Dated February 20, 2024

Respectfully submitted,

/s/Mary B. Logan_____
Mary Basile Logan
Plaintiff (*Pro Se*)

cc:        All Counsel of Record (***Via ECF***)

# OATH OF ALLEGIANCE AND OFFICE

STATE OF NEW JERSEY
COUNTY OF HUNTERDON
BOROUGH OF LEBANON

I, **Marianne Mathewson** solemnly swear.
that I will support the Constitution of the United States
and the Constitution of the State of New Jersey,
and that I will bear true faith and allegiance to the same
and to the governments established in the United States
and in this State, under the authority of the people, and
that I will impartially and justly perform all the duties of the
office of **Lebanon Borough Land Use Board**
Alternate Member
(term expires December 31, 2023)
according to the best of my ability.
So, help me God.

_Marianne Mathewson_
Signature

Sworn and subscribed before me this.
20th Day of November 2023 at Lebanon Borough.

_Joseph S. Novak_
ATTY AT LAW OF NJ

Exhibit 1

UNOFFICIAL STATEMENT OF RESULTS
2023 General Election
November 7, 2023

UNOFFICIAL RESULTS

Hunterdon County

### BOROUGH COUNCIL Lebanon Borough

Vote For 2

| | TOTAL | VOTE % | Election Day | Early Voting | Mail In Ballots | Provisional | Emergency | Overseas |
|---|---|---|---|---|---|---|---|---|
| REP MARY B. LOGAN | 238 | 28.30% | 180 | 19 | 39 | 0 | 0 | 0 |
| REP LISA PORCELLO | 314 | 37.34% | 243 | 25 | 46 | 0 | 0 | 0 |
| DEM MARLENE BALDINGER | 287 | 34.13% | 184 | 35 | 68 | 0 | 0 | 0 |
| NO NOMINATION MADE | 0 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 |
| Write-In Totals | 2 | 0.24% | 0 | 0 | 2 | 0 | 0 | 0 |
| Write-In: Matthew Calabrese | 1 | 0.12% | 0 | 0 | 1 | 0 | 0 | 0 |
| Write-In: Other | 1 | 0.12% | 0 | 0 | 1 | 0 | 0 | 0 |
| Not Assigned | 0 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 |
| Total Votes Cast | 841 | 100.00% | 607 | 79 | 155 | 0 | 0 | 0 |





Exhibit 2 -1

SUMMARY RESULTS REPORT
June 6, 2023 Primary Election
June 6, 2023

UNOFFICIAL PRIMARY ELECTION RESULTS

Hunterdon County

### REP TOWNSHIP COMMITTEE Kingwood Township
Vote For 1

|  | TOTAL | VOTE % | Election Day | Early Voting | Mail In Ballots | Provisional | Overseas | Emergency |
|---|---|---|---|---|---|---|---|---|
| PAYMON JELVANI | 46 | 95.83% | 0 | 0 | 46 | 0 | 0 | 0 |
| Write-In Totals | 2 | 4.17% | 0 | 0 | 2 | 0 | 0 | 0 |
| Write-In: Maureen Swank | 2 | 4.17% | 0 | 0 | 2 | 0 | 0 | 0 |
| Write-In: Invalid | 0 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 |
| Write-In: Other | 0 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 |
| Not Assigned | 0 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 |
| Total Votes Cast | 48 | 100.00% | 0 | 0 | 48 | 0 | 0 | 0 |

### REP CITY COUNCIL Lambertville City
Vote For 2

|  | TOTAL | VOTE % | Election Day | Early Voting | Mail In Ballots | Provisional | Overseas | Emergency |
|---|---|---|---|---|---|---|---|---|
| NO PETITION FILED | 0 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 |
| NO PETITION FILED | 0 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 |
| Write-In Totals | 3 | 100.00% | 0 | 0 | 3 | 0 | 0 | 0 |
| Write-In: Rich DeRose | 1 | 33.33% | 0 | 0 | 1 | 0 | 0 | 0 |
| Write-In: Matthew Reid | 1 | 33.33% | 0 | 0 | 1 | 0 | 0 | 0 |
| Write-In: John Case | 1 | 33.33% | 0 | 0 | 1 | 0 | 0 | 0 |
| Write-In: Invalid | 0 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 |
| Write-In: Other | 0 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 |
| Not Assigned | 0 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 |
| Total Votes Cast | 3 | 100.00% | 0 | 0 | 3 | 0 | 0 | 0 |

### REP BOROUGH COUNCIL Lebanon Borough
Vote For 2

|  | TOTAL | VOTE % | Election Day | Early Voting | Mail In Ballots | Provisional | Overseas | Emergency |
|---|---|---|---|---|---|---|---|---|
| MARY B. LOGAN | 17 | 34.00% | 0 | 0 | 17 | 0 | 0 | 0 |
| CHRISTOPHER M. FOLEY | 17 | 34.00% | 0 | 0 | 17 | 0 | 0 | 0 |
| LISA PORCELLO | 16 | 32.00% | 0 | 0 | 16 | 0 | 0 | 0 |
| Write-In Totals | 0 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 |
| Write-In: Invalid | 0 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 |
| Write-In: Other | 0 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 |
| Not Assigned | 0 | 0.00% | 0 | 0 | 0 | 0 | 0 | 0 |
| Total Votes Cast | 50 | 100.00% | 0 | 0 | 50 | 0 | 0 | 0 |

Exhibit 2 - 2.

Hunterdon County 2022 General Election

November 8, 2022

Hunterdon County

## Lebanon Borough

### Boro Council 3 Yr Term Lebanon Borough
Vote For 2

|  | TOTAL | Election Day | Early Voting | Mail In Ballots | Provisional | Overseas | Emergency |
|---|---|---|---|---|---|---|---|
| REP GREGORY F. CRAWFORD | 388 | 310 | 24 | 54 | 0 | 0 | 0 |
| REP ROBERT J. KIRCHOFER | 414 | 337 | 26 | 51 | 0 | 0 | 0 |
| DEM MARLENE G. BALDINGER | 340 | 251 | 37 | 52 | 0 | 0 | 0 |
| NO NOMINATION MADE | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Write-In Totals | 6 | 4 | 0 | 2 | 0 | 0 | 0 |

### N. Hunter/Voorhees BOE Member 3Yr Clinton TWP \ Lebanon Baugh
Vote For 1

|  | TOTAL | Election Day | Early Voting | Mail In Ballots | Provisional | Overseas | Emergency |
|---|---|---|---|---|---|---|---|
| CAN DEBORAH YARNELL | 112 | 93 | 3 | 16 | 0 | 0 | 0 |
| ROGER STRAIGHT | 52 | 40 | 1 | 11 | 0 | 0 | 0 |
| RACHEL MCLAUGHLIN | 47 | 37 | 4 | 6 | 0 | 0 | 0 |
| BETH KOTRAN | 140 | 100 | 12 | 28 | 0 | 0 | 0 |
| CYNTHIA REYES | 117 | 95 | 10 | 12 | 0 | 0 | 0 |
| Write-In Totals | 3 | 2 | 1 | 0 | 0 | 0 | 0 |

### BOE Membership 3 Yr Term Lebanon Borough School
Vote For 2

|  | TOTAL | Election Day | Early Voting | Mail In Ballots | Provisional | Overseas | Emergency |
|---|---|---|---|---|---|---|---|
| DAVID ABELES | 382 | 294 | 22 | 66 | 0 | 0 | 0 |
| DANIELLE NUGENT | 369 | 280 | 22 | 67 | 0 | 0 | 0 |
| Write-In Totals | 6 | 3 | 2 | 1 | 0 | 0 | 0 |

### BOND PROPOSAL QUESTION North Hunterdon Regional High School District
Vote For 1

|  | TOTAL | Election Day | Early Voting | Mail In Ballots | Provisional | Overseas | Emergency |
|---|---|---|---|---|---|---|---|
| YES | 374 | 284 | 33 | 57 | 0 | 0 | 0 |
| NO | 196 | 156 | 15 | 25 | 0 | 0 | 0 |

Exhibit 2 - 3

| Municipality | REP MAYOR Lebanon Borough VOTE FOR 1 | | | | | REP BOROUGH COUNCIL Lebanon Borough VOTE FOR 2 | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | JAMES PITTINGER | MARY B. LOGAN | Write-in Totals | Write-in: Not Assigned | Total Votes Cast | GREGORY F. CRAWFORD | JOE CORTESE | Write-in Totals | Write-in: Not Assigned | Total Votes Cast |
| Municipality Totals | 135 | 48 | 0 | 0 | 183 | 170 | 155 | 0 | 0 | 325 |
| Alexandria Township | | | | | | | | | | |
| Bethlehem Township | | | | | | | | | | |
| Bloomsbury Borough | | | | | | | | | | |
| Califon Borough | | | | | | | | | | |
| Clinton Town | | | | | | | | | | |
| Clinton Township | | | | | | | | | | |
| Flinton Township | | | | | | | | | | |
| Delaware Township | | | | | | | | | | |
| East Amwell Township | | | | | | | | | | |
| Flemington Borough | | | | | | | | | | |
| Franklin Township | | | | | | | | | | |
| Frenchtown Borough | | | | | | | | | | |
| Glen Gardner Borough | | | | | | | | | | |
| Hampton Borough | | | | | | | | | | |
| High Bridge Borough | | | | | | | | | | |
| Holland Township | | | | | | | | | | |
| Kingwood Township | | | | | | | | | | |
| Lambertville City | | | | | | | | | | |
| Lebanon Borough | 135 | 48 | 0 | 0 | 183 | 170 | 155 | 0 | 0 | 325 |
| Lebanon Township | | | | | | | | | | |
| Milford Borough | | | | | | | | | | |
| Raritan Township | | | | | | | | | | |
| Readington Township | | | | | | | | | | |
| Stockton Borough | | | | | | | | | | |
| Tewksbury Township | | | | | | | | | | |
| Union Township | | | | | | | | | | |
| West Amwell Township | | | | | | | | | | |

Exhibit 2-4

# Lebanon Boro

## Totals

### Registration & Turnout

| | Registration | Turnout | |
|---|---|---|---|
| **Total Registration & Turnout** | **1,207** | **1,046** | **86.66%** |

### Contests

| | | | |
|---|---|---|---|
| **Presidential Electors** | 1 of 1  precincts counted | | 100.00% |
| JOSEPH R. BIDEN/KAMALA D. HARRIS | | 466 | 44.98% |
| DONALD J. TRUMP/MICHAEL R. PENCE | | 543 | 52.41% |
| HOWIE HAWKINS/ANGELA WALKER | | 8 | 0.77% |
| DON BLANKENSHIP/WILLIAM MOHR | | 2 | 0.19% |
| JO JORGENSEN/SPIKE COHEN | | 15 | 1.45% |
| BILL HAMMONS/ERIC BODENSTAB | | 1 | 0.10% |
| ROQUE 'ROCKY' DE LA FUENTE/DARCY G. RICHARDSON | | 0 | 0.00% |
| GLORIA ESTELA LA RIVA/SUNIL FREEMAN | | 1 | 0.10% |
| | **Total** | **1,036** | |
| | | | |
| **United States Senate** | 1 of 1  precincts counted | | 100.00% |
| CORY BOOKER | | 437 | 43.74% |
| RIKIN 'RIK' MEHTA | | 539 | 53.95% |
| MADELYN R. HOFFMAN | | 20 | 2.00% |
| DANIEL BURKE | | 0 | 0.00% |
| VERONICA FERNANDEZ | | 3 | 0.30% |
| | **Total** | **999** | |
| | | | |
| **House of Representatives- 7th District** | 1 of 1  precincts counted | | 100.00% |
| TOM MALINOWSKI | | 424 | 41.69% |
| THOMAS H. KEAN JR. | | 593 | 58.31% |
| | **Total** | **1,017** | |
| | | | |
| **Board of Chosen Freeholders** | 1 of 1  precincts counted | | 100.00% |
| PATRICK D. HELLER | | 379 | 38.67% |
| SHAUN C. VAN DOREN | | 601 | 61.33% |
| | **Total** | **980** | |
| | | | |
| **Lebanon Borough Council 3Yr Term** | 1 of 1  precincts counted | | 100.00% |
| BENEDICT F. VALLIERE | | 413 | 22.26% |
| CARONA DAVIS DIOP | | 360 | 19.41% |
| JAMES P. LANCE | | 562 | 30.30% |
| MARY BASILE LOGAN | | 520 | 28.03% |
| | **Total** | **1,855** | |
| | | | |
| **N. Hunter/Voorhees-Lebanon Boro BOE Member 3 Yr. T** | 1 of 1  precincts counted | | 100.00% |
| ROBERT KIRCHBERGER | | 663 | 99.55% |
| BRYAN CHAPMAN | | 3 | 0.45% |
| | **Total** | **666** | |

Exhibit 2-5

## 1   Lebanon Borough Council 3Yr Term - Rep

|  |  | Registered | Ballots Cast | Turnout (%) | JAMES P. LANCE (1) | MARY BASILE LOGAN (1) |  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Lebanon Boro 1 | Total | 0 | 0 | 0.00 |  |  |  |  |  |  |  |  |  |
| Lebanon Boro Mail-In Ballot | Total | 494 | 196 | 39.68 | 167 | 159 |  |  |  |  |  |  |  |
| Lebanon Boro Provisional | Total | 0 | 8 | 0.00 | 4 | 7 |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| Lebanon Boro | TC-Election Day | 494 | 0 | 0.00 |  |  |  |  |  |  |  |  |  |
| Lebanon Boro | TC-Mail-In Ballot | 494 | 196 | 39.68 | 167 | 159 |  |  |  |  |  |  |  |
| Lebanon Boro | TC-Provisional | 494 | 8 | 1.62 | 4 | 7 |  |  |  |  |  |  |  |
| Lebanon Boro | Total | 494 | 204 | 41.30 | 171 | 166 |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| Total - TC-Election Day |  | 494 | 0 | 0.00 |  |  |  |  |  |  |  |  |  |
| Total - TC-Mail-In Ballot |  | 494 | 196 | 39.68 | 167 | 159 |  |  |  |  |  |  |  |
| Total - TC-Provisional |  | 494 | 8 | 1.62 | 4 | 7 |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| Contest Total |  | 494 | 204 | 41.30 | 171 | 166 |  |  |  |  |  |  |  |

Exhibit 2 - 6

**Mary Basile Logan**

| | |
|---|---|
| **From:** | Joseph Paravecchia <jparavecchia@co.hunterdon.nj.us> |
| **Sent:** | Wednesday, November 22, 2023 2:25 PM |
| **To:** | Mary Basile Logan |
| **Cc:** | Prosecutor |
| **Subject:** | RE: [External Email] - RE: 2021 and 2023 Lebanon Borough Election |

Good afternoon,

We are in receipt of your request below.  We will contact you sometime next week to discuss your allegations.  Have a happy and healthy Thanksgiving.

Thank you,

Joseph Paravecchia
First Assistant Prosecutor
Hunterdon County Prosecutor's Office
65 Park Avenue, PO Box 756
Flemington, NJ 08822
(908) 806-4206 (phone)
(908) 806-4618 (fax)

**Confidentiality Notice:**  This e-mail transmission may contain confidential or legally privileged information that is intended only for the individual or entity named in the e-mail address.  If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or reliance upon the contents of this e-mail is strictly prohibited.  If you have received this e-mail transmission in error, please reply to the sender, so that we can arrange for proper delivery, and then delete the message from your Inbox.  Thank you.

**From:** Mary Basile Logan <                    >
**Sent:** Tuesday, November 21, 2023 4:30 PM
**To:** Prosecutor <                    >;
**Subject:** [External Email] - RE: 2021 and 2023 Lebanon Borough Election

**[EXTERNAL EMAIL]** DO NOT CLICK links/attachments or respond to requests unless you recognize the sender, the email address properly identifies the sender, and you know that the content is safe.

Good afternoon.

This email requests the opening of an election investigation concerning malfeasance for the subject elections for which I was a candidate.  The imposition to federal law of malfeasance includes intimidation and bribery of voters.  Accordingly, I ask your immediate attention to this query advising the mechanism to commence a full investigation advising by reply email.

Exhibit 3 - 1

Thank you.
Mary

**From:** Mary Basile Logan
**Sent:** Tuesday, November 21, 2023 2:04 PM
**To:**
**Subject:** 2023 Lebanon Borough Election

Ms. Robeson:

Good afternoon.  I hope this note finds you well.  I am writing to officially file a claim of election malfeasance in the 2021 and 2023 elections in Lebanon Borough, Hunterdon County.

Kindly reach back to advise the process by which this claim should take as to format and/or official paperwork needed.

Thanking you, in advance.

Mary

*Mary B. Logan, M.P.P.*
*Trino Paralegal Services LLC.*
*Post Office Box 5237*
*Clinton, New Jersey 08809*

908-200-7294 Phone
888-237-2671 FAX

**COVID-19:**  We are not attorneys, working in the company of trusted attorneys, we advocate to resolve client debt inquiries through negotiations with the debt-holders.  Engaging with parties thorough knowledge of public policy in combination with legal premise and compassion among all parties to secure a viable resolution.  If you experience financial hardship as a result of COVID-19, please make your first call to your debt-holders, DO NOT DEFAULT; give them the opportunity to inform you of debt options.  At this time of uncertainty, empowerment arrives through fact-based knowledge, extinguishing fear.

**NOTICES:**
Unless otherwise expressly approved in advance, any discussion of federal tax matters herein is not intended and cannot be used 1) to avoid penalties under the federal tax laws, or 2) to promote, market or recommend to another party any transaction or tax-related matter addressed.

This electronic message contains information intended for the use of the addressee(s) only, which may be privileged and confidential.  If you are not an addressee, any review, distribution, or use of the contents of this message is prohibited.  If you have received this message in error, please contact the originator immediately.

Never trust wiring instructions sent via email.  Cyber criminals are hacking email accounts and sending emails with fake wiring instructions.  These emails are convincing and sophisticated.  Always independently confirm wiring instructions in person or via a telephone call to a trusted and verified phone number.  Never wire money without double-checking that the wiring instructions are correct.

Exhibit 3 - 2

**Mary Basile Logan**

| | |
|---|---|
| **From:** | Mary Basile Logan |
| **Sent:** | Wednesday, November 22, 2023 4:45 AM |
| **To:** | joseph@novakandnovak.com |
| **Subject:** | FW: 2021 and 2023 Lebanon Borough Election |

Mr. Novak

Kindly note below.  Additionally, I have also begun the process of the filing a whistleblower Complaint with the IRS against the Lebanon Fire Company for violating their tax exemption status by influencing/steering elections.  They are, of course, beholden to the Hatch Act moreover.  As you know, I do not take kindly to election malfeasance and I am certainly NOT going to passably permit being railroaded.  Choices have consequences, the cases and controversies born of autonomous decision making by the referenced parties, actions for which I have never nor will I ever partake or tolerate.

Regards-
Mary

**From:** Mary Basile Logan
**Sent:** Tuesday, November 21, 2023 4:30 PM
**To:** prosecutor@co.hunterdon.nj.us; DOSComms@sos.nj.gov
**Subject:** RE: 2021 and 2023 Lebanon Borough Election

Good afternoon.

This email requests the opening of an election investigation concerning malfeasance for the subject elections for which I was a candidate.  The imposition to federal law of malfeasance includes intimidation and bribery of voters.  Accordingly, I ask your immediate attention to this query advising the mechanism to commence a full investigation advising by reply email.

Thank you.
Mary

**From:** Mary Basile Logan
**Sent:** Tuesday, November 21, 2023 2:04 PM
**To:**
**Subject:** 2023 Lebanon Borough Election

Ms. Robeson:

Good afternoon.  I hope this note finds you well.  I am writing to officially file a claim of election malfeasance in the 2021 and 2023 elections in Lebanon Borough, Hunterdon County.

Kindly reach back to advise the process by which this claim should take as to format and/or official paperwork needed.

Thanking you, in advance.

Mary                                    *Exhibit 3 -1*

1

*Mary B. Logan, M.P.P.*
*Trino Paralegal Services LLC.*
Post Office Box 5237
Clinton, New Jersey 08809

908-200-7294 Phone
888-237-2671 FAX

**COVID-19:**  We are not attorneys, working in the company of trusted attorneys, we advocate to resolve client debt inquiries through negotiations with the debt-holders.  Engaging with parties thorough knowledge of public policy in combination with legal premise and compassion among all parties to secure a viable resolution.  If you experience financial hardship as a result of COVID-19, please make your first call to your debt-holders. DO NOT DEFAULT; give them the opportunity to inform you of debt options.  At this time of uncertainty, empowerment arrives through fact-based knowledge, extinguishing fear.

**NOTICES:**
Unless otherwise expressly approved in advance, any discussion of federal tax matters herein is not intended and cannot be used 1) to avoid penalties under the federal tax laws, or 2) to promote, market or recommend to another party any transaction or tax-related matter addressed.

This electronic message contains information intended for the use of the addressee(s) only, which may be privileged and confidential.  If you are not an addressee, any review, distribution, or use of the contents of this message is prohibited.  If you have received this message in error, please contact the originator immediately.

Never trust wiring instructions sent via email. Cyber criminals are hacking email accounts and sending emails with fake wiring instructions. These emails are convincing and sophisticated. Always independently confirm wiring instructions in person or via a telephone call to a trusted and verified phone number. Never wire money without double-checking that the wiring instructions are correct.

*Exhibit 3 - 2*

Exhibit 4- 1 of 1

 Gmail                Mary Basile Logan <marybasilelogan@gmail.com>

## (no subject)

2 messages

**SAMUEL BERGER** <sberger56@aol.com>             Mon, Nov 13, 2023 at 3:15 PM
To: Mary Logan <marybasilelogan@gmail.com>

Hi Mary,

Just wanted you to know how sorry I was to see Jim's efforts with Lisa Porcello prevail in the
election. Obviously, many Republicans in Lebanon have been mislead in many ways by Jim's
campaign of mis-information. It sounds like Jim has plenty more on his agenda.

I hope that you will still be involved in the codification effort and wherever you can be going
forward.

Those of us who know you, appreciate the hard work that you have done for Lebanon previously
and as a member of council the past 3 years.


Regards,
Sam

**Mary Basile Logan** <marybasilelogan@gmail.com>       Tue, Nov 21, 2023 at 2:55 PM
To: SAMUEL BERGER <sberger56@aol.com>

Sam:

Thank you for your note. Kindly be aware that I have moved to file an official investigation regarding the 2023 and 2021
elections in the Borough with the Prosecutor's office. I have today advised Karen. I did not lose the election, others
imposed on the process to meet their ends. If they can do it to me they will have permission to do it to everyone and
anyone else with whom they do not agree; that is simply **unacceptable**.

It is my sincere hope that you will speak to the truth as may be called upon.

Thank you.
Mary

*Mary B. Logan, M.P.P.*
*Trino Paralegal Services, LLC.*
*65 Old Highway 22, Suite 5*
*Clinton, New Jersey 08809*

888-237-2671 Fax
908-200-7294 Phone
908-246-8466 Direct

*Exceeding Expectation is our Standard of Practice!*

*EFFECTIVE JANUARY 15, 2022 - NEW EMAIL TRINO@TRINOPS.COM*      Exhibit 5-1

DISCLAIMER REQUIRED BY IRS CIRCULAR 230: Unless otherwise expressly approved in advance, any discussion of
federal tax matters herein is not intended and cannot be used 1) to avoid penalties under the federal tax laws, or 2) to

**Mary Basile Logan**

| | |
|---|---|
| **From:** | Mary Basile Logan |
| **Sent:** | Wednesday, November 22, 2023 10:33 AM |
| **To:** | joseph@novakandnovak.com |
| **Cc:** | Karen Romano |
| **Subject:** | Hatch Act and SSARPA |
| **Attachments:** | Hatch Act Modernization Act Guidance for State and Local Employees.pdf; ssarpca_ARPA_HATCH.pdf |

Good morning.  This is an official email, apart from my continuing Council business to which, for the time that remains in my term, my commitment is unabating.  Please see attached, SSARPA (Certification and Agreement) as well the Hatch Act, same being incorporated into SSARPA.

Upon taking office, I noted issues and sought to bring them to the table of the governing body for discussion, avoiding escalation of behavior which I had immediately observed.  During the 2021 election, for which I was a candidate, a staff member of Lebanon Borough electioneered at the Municipal office and canvassed the community on behalf of a Mayoral candidate - this is a gross violation of the Hatch Act.  The employee has and remains serving the whim of the Mayor, also in violation of her employment at the will of the taxpaying public as well the Hatch Act to which she is beholden, the Borough having been entrusted with Treasury funds for the public good.  The Mayor and employee have, with the help of extraneous parties, altered the business of the Borough, impacting the work flow and outcome on behalf of the community taxpayers  the Council Minute records clearly reflect that fact.

During the 2021 election, the Mayor was seen electioneering by disseminating campaign material to staff members, it can be surmised that such action sought to further compromise others, all of which are violations of election law.  These evidenced issues permeated the 2023 election, up to and including Fire18/OEM, even the GOP Chairs.  It is my belief that promises of future capacity as well monetary exchanges took place, facts which I will seek through means of discovery.  These statements are egregious and shocking as much for you as myself but I have every reason to believe them absolutely true and would go so far as sign an affiant statement to that effect.

The Mayor's ongoing engagement of donations (monetary or otherwise) and negotiated Contracts apart from Treasury and/or Administrator disclosure or involvement, these actions have created a vulnerability of integrity placing the Borough in a compromising position.  But for the actions of the Mayor same would not otherwise exist.  I formed a 501c3 seeking to avoid such violations in the future, the Community Foundation of Lebanon Borough, Inc.

In good faith to the community, among others, I have reviewed work-around options to protect the community with the Administrator, she has evidenced herself to be admirable in her intent, knowledge and capacity.  These work-arounds should not be necessary but for the bully-pulpit environment created and fostered by the Mayor – the staff should be professional in their demeanor so as to avoid such entanglements.  These actions, left to their own, reflect poorly on the inclusive governing body, extending to yourself and Council as much the staff – creating future legal issues which hold close similarity to those of the past.

Fire18, was the recipient of ARPA funds by pass-through citing turnout gear presentation as advocated by the Mayor, OEM, etc.  Citing their circumstance, I too advocated in their interest and safety, proposing the subject Ordinance for which Council affirmed.  Receipt of these funds holds them to the content and intent of the Hatch

*Exhibit 5-2*

Act for which they have violated at the bequest of the Mayor and staff member – it is unconscionable that an elected person would knowingly compromise others.

For the good of the community as much the seated and future servants of the public good in Lebanon Borough as well those who may aspire to same, these matters require immediate redress.  It is abhorrent that as the victim of these violations, given my appreciative history of Borough advocacy, I too am tasked with being the party that must seek legal and corrective action.

The parties have traversed my civil rights and conspired to compromise the Borough of Lebanon in all manner of integrity, as Counsel for the Borough, you are hereby required to investigate these issues.  I have sent a formal grievance with the State as well as the County Prosecutor and will be drafting a grievance to the Federal Treasury regarding the tax exemption violation by Fire18 citing.

Given the ongoing evident and enumerated violations of conduct or moral fortitude witnessed, the Mayor should be removed from office – his actions divisive and escalating to this very day; left to itself, the Borough Municipal offices and its staff as much the community at large are made vulnerable which is absolutely unacceptable.

Regards-
Mary

*Mary B. Logan, M.P.P.*
*Trino Paralegal Services LLC.*
*Post Office Box 5237*
*Clinton, New Jersey 08809*

908-200-7294 Phone
888-237-2671 FAX

**COVID-19:**  We are not attorneys, working in the company of trusted attorneys, we advocate to resolve client debt inquiries through negotiations with the debt-holders.  Engaging with parties thorough knowledge of public policy in combination with legal premise and compassion among all parties to secure a viable resolution.  If you experience financial hardship as a result of COVID-19, please make your first call to your debt-holders, DO NOT DEFAULT; give them the opportunity to inform you of debt options.  At this time of uncertainty, empowerment arrives through fact-based knowledge, extinguishing fear.

**NOTICES:**
Unless otherwise expressly approved in advance, any discussion of federal tax matters herein is not intended and cannot be used 1) to avoid penalties under the federal tax laws, or 2) to promote, market or recommend to another party any transaction or tax-related matter addressed.

This electronic message contains information intended for the use of the addressee(s) only, which may be privileged and confidential.  If you are not an addressee, any review, distribution, or use of the contents of this message is prohibited.  If you have received this message in error, please contact the originator immediately.

Never trust wiring instructions sent via email. Cyber criminals are hacking email accounts and sending emails with fake wiring instructions. These emails are convincing and sophisticated. Always independently confirm wiring instructions in person or via a telephone call to a trusted and verified phone number. Never wire money without double-checking that the wiring instructions are correct.

*Exhibit 5.3*
2