# NEWS

United States Department of Justice
U.S. Attorney, District of New Jersey
970 Broad Street, Seventh Floor
Newark, New Jersey 07102



**Ralph J. Marra, Jr., Acting U.S. Attorney**

*More Information?* Call the Assistant U.S. Attorney or other contact listed below to see if more information is available.

*News on the Internet*: News Releases and related documents are posted at our website.
*Go to:* http://www.usdoj.gov/usao/nj/press/index.html

| | |
|---|---|
| Contact: | bidrig0723.rel |
| Michael Drewniak, Public Affairs Officer | FOR IMMEDIATE RELEASE |
| 973-645-2888 | July 23, 2009 |

## Two-Track Investigation of Political Corruption and International Money Laundering Rings Nets 44 Individuals

### – FBI Arrests Mayors, Assemblymen, Political Operatives, Rabbis –

(More)

Public Affairs Office                                                                973-645-2888
Michael Drewniak, PAO

**http://www.usdoj.gov/usao/nj/press/index.html**

EXHIBIT 2

NEWARK, N.J. – The mayors of Hoboken, Secaucus and Ridgefield, the Jersey City deputy mayor and council president, two state assemblymen, numerous other public officials and political figures and five rabbis from New York and New Jersey were among 44 individuals charged today in a two-track federal investigation of public corruption and a high-volume, international money laundering conspiracy, Acting U.S. Attorney Ralph J. Marra, Jr., announced.

Among those charged in criminal Complaints are:

• Peter Cammarano III, the newly elected mayor of Hoboken and an attorney, charged with accepting $25,000 in cash bribes, including $10,000 last Thursday, from an undercover cooperating witness.

• L. Harvey Smith, a New Jersey Assemblyman and recent mayoral candidate in Jersey City, charged along with an aide of taking $15,000 in bribes to help get approvals from high-level state agency officials for building projects.

• Daniel Van Pelt, a New Jersey Assemblyman, charged with accepting a $10,000 bribe.

• Dennis Elwell, mayor of Secaucus, charged with taking a $10,000 cash bribe.

• Anthony Suarez, mayor of Ridgefield and an attorney, charged with agreeing to accept a $10,000 corrupt cash payment for his legal defense fund.

• Louis Manzo, the recent unsuccessful challenger in the Jersey City mayoral election and former state Assemblyman, and his brother and political advisor Ronald Manzo, both with taking $27,500 in corrupt cash payments for use in Louis Manzo's campaign.

• Leona Beldini, the Jersey City deputy mayor and a campaign treasurer, charged with taking $20,000 in conduit campaign contributions and other self-dealing in her official capacity.

• Eliahu Ben Haim, of Long Branch, N.J., the principal rabbi of a synagogue in Deal, N.J., charged with money laundering of proceeds derived from criminal activity.

• Saul Kassin, of Brooklyn, N.Y., the chief rabbi of a synagogue in Brooklyn, New York, charged with money laundering of proceeds derived from criminal activity.

• Edmund Nahum, of Deal, N.J., the principal rabbi of a synagogue in Deal, charged with money laundering of proceeds derived from criminal activity.

2

EXHIBIT 2

• Mordchai Fish, of Brooklyn, N.Y., a rabbi at a synagogue in Brooklyn, charged with money laundering of proceeds derived from criminal activity. His brother, also a rabbi, was charged as well.

Most of the defendants were arrested early this morning by a large contingent of federal agents, led by Special Agents of the FBI Newark Division and IRS Criminal Investigation Division (See addendum of defendants, charges and arrest status). Court-authorized search warrants were also being executed approximately 20 locations in New Jersey and New York, to recover, among other things, large sums of cash and other evidence of criminal conduct. Additionally, 28 seizure warrants were being executed against bank accounts in the names of the money laundering defendants and entities they control.

One criminal Complaint charges a Brooklyn man, Levy Izhak Rosenbaum, with conspiring to broker the sale of a human kidney for a transplant, at a cost of $160,000 to the transplant recipient. According to the Complaint, Rosenbaum said he had been brokering the sale of kidneys for 10 years.

Those charged in the public corruption investigation are scheduled to begin making appearances today in federal court in Newark at 2 p.m. before U.S. Magistrate Judge Madeline Cox Arleo. Those charged in the money laundering investigation, are scheduled to begin making initial appearances thereafter before U.S. Magistrate Judge Mark Falk.

Law enforcement personnel, with the assistance of a cooperating witness, first infiltrated a pre-existing money laundering network that operated internationally between Brooklyn, Deal, N.J. and Israel and laundered at least tens of millions of dollars through charitable, non-profit entities controlled by rabbis in New York and New Jersey.

The cooperating witness told targets of the money laundering investigation that he was involved in illegal businesses and bank frauds. He also openly discussed with targets that he was in bankruptcy and was attempting to conceal cash and assets, and told them he wanted to launder criminal proceeds in increments ranging from tens of thousands of dollars to $150,000 or more at a time, often at the rate of several transactions per week. According to the criminal Complaints, the money laundering operations run by the rabbis laundered a total of approximately $3 million for the cooperating witness alone between about June 2007 and July 2009.

The investigation veered onto its public corruption track in July 2007 in Hudson County, where the cooperating witness represented himself to be a developer and owner of a tile business who wanted to build high rises and other projects and get public contracts in Hudson County schools. Through an intermediary, the cooperating witness was introduced

to a Jersey City building inspector who, in return for $40,000 in bribes, promised to smooth the way for approvals of the cooperating witness's building projects, according to the criminal Complaints.

From there, introductions and referrals spread amongst a web of public officials, council and mayoral candidates, their operatives and associates – mostly in Hudson County, and primarily in Jersey City – who took bribes.  In return, they pledged their official assistance in getting the cooperating witness's projects prioritized and approved or to steer contracts to him.

In part, the bribe-taking was connected to fund raising efforts in heavily contested mayoral and city council campaigns in Jersey City and Hoboken, and the bribes were often parceled out to straw donors, who then wrote checks in their names or businesses to the campaigns in amounts that complied with legal limits on individual donations – so-called conduit or conversion donations.  Other bribe recipients took cash for direct personal use and benefit; others kept some of the cash and used the rest for political campaigns, according to the criminal Complaints.

The investigation produced hundreds of hours of video and audio recordings documenting much of the money laundering and bribe-taking.

"This investigation has once again identified a corrupt network of public officials who were all too willing to take cash in exchange for promised official action," said Marra.  "It seemed that everyone wanted a piece of the action.  The corruption was widespread and pervasive."

"In both parts of this investigation," Marra said, "respected figures in positions of public and private trust engaged in conduct behind closed doors that belied the faces of honesty, integrity and rectitude they displayed daily to their respective constituencies."

"The list of names and titles of those arrested today sounds like a roster for a community leaders meeting," said Weysan Dun, Special Agent In Charge of the FBI in Newark.  "Sadly, these prominent individuals were not in a meeting room but were in the FBI booking room this morning.  We hope that our actions today will be the clarion call that prompts significant change in the way business and politics are conducted in the State of New Jersey.  Those who engage in this culture of corruption should know the cross hairs of justice will continue to be focused on them."

"Traditional money laundering used to be confined to narcotics traffickers and organized crime," said Julio La Rosa, Acting Special Agent in Charge of the IRS Criminal

4

EXHIBIT 2

Investigation Division (CID). "Based on the allegations contained in today's complaints, money laundering has no boundaries and impacts every segment of our society."

The investigation is the third phase of the FBI, IRS-CID and U.S. Attorney's Office "Bid Rig" investigations that began first in Monmouth and Ocean counties in New Jersey. The initial investigation became public in 2002 with the guilty plea of Ocean Township mayor Terrence Weldon, who admitted extorting cash from developers to influence approval of projects. The second Bid Rig phase resulted in the arrests in February 2005 of 11 sitting and former mayors and other elected officials in Monmouth County. Those public officials took bribes from someone they believed was a contractor and money launderer seeking municipal work but who was, in fact, an undercover cooperating witness.

### The Money Laundering Investigation

The money laundering conspiracy involved high-ranking religious figures and their associates in Brooklyn, N.Y. and Deal, N.J. Among them was Eliahu Ben Haim, of Long Branch, N.J., the principal rabbi of Congregation Ohel Yaacob in Deal, N.J. Typically, according to the criminal Complaints, Haim received bank checks in amounts ranging from tens of thousands of dollars up to $160,000 at a time made payable to a charitable, tax-exempt organization associated with Haim and his synagogue. To complete the money laundering cycle, Haim would return the amount of the check in cash to the cooperating witness, less a cut for Haim, typically 10 percent.

Haim's source of cash for funding the money laundering was, according to the Complaints, an Israeli in Israel who, Haim said, he had worked with for years. For a fee, that source would make cash available through other individuals charged today who ran cash houses in Brooklyn. Hundreds of thousands of dollars were regularly available from the cash houses for Haim to return to his money laundering clients, including the government's cooperating witness.

Similar circles of money launderers in Brooklyn and Deal, N.J. operated separately but occasionally co-mingled activities and participants. In most cases, the rings were led by rabbis who used charitable, non-profit entities connected to their synagogues to "wash" money that they understood came from criminal activity like bank fraud, counterfeit goods and other illegal sources, according to the criminal Complaints. Since such large amounts of cash were being transacted – tens to hundreds of thousands of dollars per transaction, often multiple times in a week – the rabbis made significant sums in fees, which typically ran between five and ten percent per transaction.

One of the other money laundering operations was allegedly led by Saul Kassin, a leading Brooklyn rabbi, and another by Edmund Nahum, the leader of a synagogue in Deal. In one secretly recorded conversation, Nahum tells the cooperating witness that he should launder

his money through a number of rabbis. "The more it's spread the better," Nahum said, according to his criminal Complaint.

In another conversation, Kassin allegedly asked the cooperating witness – who at the moment was conducting a $25,000 transaction with Kassin – why he didn't do all his business with Haim. The cooperating witness replied that he had by that time already conducted between $600,000 and $700,000 in money laundering transactions with Haim.

Another group of alleged money launderers was led by Mordchai Fish, a rabbi at a Brooklyn synagogue. Fish's brother, Lavel Schwartz, a rabbi, was also charged with money laundering.

Also arrested today was Levi Deutsch, an Israeli living in Israel who, according to the Complaints, was a high-level source of cash from overseas for funding the bank checks that passed through charitable entities. Deutsch, who traveled frequently between Israel and New York, explained to the cooperating witness that the source of his cash was the "diamond business (and) other, other things," according to the Complaints. He further explained that he was associated with a Swiss banker who charged "two, three points" per $1 million laundered through him. (Deutsch is a different person than the Israeli working with Haim.)

Finally, another alleged money launderer was Moshe "Michael" Altman, a Hudson County real estate developer who, according to the criminal Complaints, "washed" more than $600,000 in dirty checks to cash for the cooperating witness through charitable, non-profit entities. Altman is also the intermediary who introduced the cooperating witness to Jersey City building inspector John Guarini, who allegedly took $20,000 from the cooperating witness in July 2007, and $40,000 in total over time. That initial bribe is what gave rise to the public corruption portion of the investigation.

### The Public Corruption Investigation

Guarini introduced the cooperating witness to Maher A. Khalil, deputy director of the Jersey City Department of Health and Human Services and a former member of the Jersey City Zoning Board of Adjustment. Khalil – who accepted $30,000 in cash payments from the cooperating witness – made key referrals that set in motion a kind of "corruption networking" amongst the defendants charged today, as well as others, Marra said. The investigation is continuing.

Introductions usually took place at diners and restaurants in Jersey City, Bayonne, Weehawken, Hoboken, Staten Island, Toms River, Atlantic City and elsewhere. Envelopes stuffed with cash were often passed from the cooperating witness to recipients or their intermediaries in parking lots after such meetings, according to the criminal Complaints.

6

EXHIBIT 2

Khalil pledged to the cooperating witness to make introductions only to "players" who would "do the right thing" by approving the cooperating witness's development plans in exchange for payments, according to his criminal Complaint. All along the way, each of the individuals charged allegedly took cash bribes up to $20,000 at a time – often numerous times – either taking the money outright or scheming to direct conduit payments through others to political campaigns in Jersey City or Hoboken. In each instance, the defendants acknowledged that, in exchange for the cash or cash campaign contributions, they would vote for and/or use their official influence to expedite and get approvals for the cooperating witness's projects.

Following are the individuals charged in the public corruption investigation, with the exception of Khalil and Guarini above, and summaries of their alleged conduct from the criminal Complaints (All defendants are presumed innocent unless proven guilty beyond a reasonable doubt):

• Leona Beldini, deputy mayor of Jersey City and a realtor. Beldini planned to become broker for his purported 750-unit condominium project on Garfield Avenue, where units would sell for $500,000 each. Beldini, who was treasurer of a Jersey City official's re-election campaign (that official is identified only as Jersey City Official 4 in the Complaints), also accepted $20,000 in campaign donations, which she said would be divided between "donors" who would return the money to the campaign in increments of $2,600, the maximum individual donation allowed under law.

• Jack M. Shaw, a Hudson County political consultant. As described in the Complaint, he took $10,000 from the cooperating witness for himself and proposed that the cooperating witness pay $10,000 in campaign contributions for the re-election campaign of Jersey City Official 4.

• Edward Cheatam, the affirmative action officer for Hudson County, a commissioner with the Jersey City Housing Authority and, until May, vice president of the Jersey City Board of Education. Cheatam took $15,000 in cash bribes. (Khalil had introduced Cheatam to the cooperating witness; Cheatam then introduced Beldini and Shaw to the cooperating witness, all of whom then went on to extend introductions of the cooperating witness to many others.)

• Mariano Vega, Jr., the Jersey City council president. He met several times with the cooperating witness and ultimately accepted three $10,000 payments, two of which Vega instructed an intermediary to have broken down and converted into individual contributions for his re-election campaign and the third which he received after his election victory.

• Louis Manzo, a defeated candidate for Jersey City mayor, and his brother and political advisor, Ronald. Together, they accepted $27,500 in three cash payments intended for

7

EXHIBIT 2

Louis Manzo's campaign. The cooperating witness was told that giving money to Louis Manzo was "insurance" to secure his influence for the cooperating witness in the event the incumbent for mayor lost.

• Lavern Webb-Washington, an unsuccessful candidate for the Jersey City council and a self-described housing activist. She accepted $15,000 in three cash installments of $5,000 for her political campaign.

• Lori Serrano, an unsuccessful candidate for the Jersey City council and former chair of the Jersey City Housing Authority. Serrano accepted $10,000 in two cash payments of $5,000 for her political campaign.

• James P. King, an unsuccessful candidate for Jersey City Council, former head of the Jersey City Parking Authority, former chairman of the Jersey City Incinerator Authority and a former Hudson County undersheriff. He accepted two payments of $5,000 each for his political campaign.

• Michael J. Manzo (no relation to the other Manzos), an unsuccessful candidate for Jersey City Council, and a Jersey City arson investigator. He agreed to accept a $5,000 cash payment from the cooperating witness for his campaign.

• Joseph Castagna, a health officer with the Jersey City Department of Health and Human Services, and a close associate of Michael Manzo. Castagna took the $5,000 payment from the cooperating witness to pass to Michael Manzo.

• Dennis Jaslow, an investigator for the Hudson County Board of Elections and formerly a state corrections officer. Jaslow accepted $2,500, but complained that he wanted $5,000.

• Joseph Cardwell, a political consultant and a commissioner of the Jersey City Municipal Utilities Authority. He accepted two payments of $10,000 in cash to assist the cooperating witness with local government officials in Jersey City and other municipalities, and another $10,000, most of which was used for the purchase of fundraising event tickets.

• Guy Catrillo, a Jersey City planning aide and member of the mayor's "Action Bureau," and an unsuccessful candidate for the city council. Catrillo took $10,000 in campaign cash and another $5,000.

• L. Harvey Smith, state Assemblyman, a Jersey City mayoral candidate and former three-term councilman in Jersey City and a Hudson County undersheriff. Smith took two cash payments, one for $5,000, the other for $10,000, in exchange for approaching high-level contacts with the state Department of Transportation and Department of Environmental Protection to clear the way for approvals of the cooperating witness's project on Garfield

8

EXHIBIT 2

Avenue in Jersey City and another project off Route 440 in Bayonne. Smith's aide, Richard Greene, is charged in the same criminal Complaint, and is accused of taking the $5,000 payment from the cooperating witness and passing it to Smith.

• Peter Cammarano III, previously a Hoboken councilman and now mayor, and a lawyer specializing in election law. While a candidate for mayor, then-councilman Cammarano and his close associate, Michael Schaffer, a commissioner on the North Hudson Utilities Authority, took three payments of $5,000 each with the promise that, in return, Cammarano would sponsor zoning changes and push through building plans for high-rise development in Hoboken by the cooperating witness. After the conclusion of their first meeting at a Hoboken diner, the cooperating witness stated, "Make sure you get my stuff expedited." To which Cammarano replied: "I promise you ... you're gonna be treated like a friend." Moments later, in the parking lot, Schaffer took the first $5,000 in cash. On July 16, Cammarano and Schaffer met the cooperating witness again at a Hoboken diner and accepted another $10,000, which Cammarano said was needed to pay campaign debts, bringing the total in bribes accepted by Cammarano and Schaffer to $25,000.

• Dennis Elwell, mayor of Secaucus, and Ronald Manzo (Manzo is charged in this Complaint in addition to the one with his brother Louis). Elwell received a $10,000 cash bribe – through Manzo as the middleman – to assist the cooperating witness with plans to build a hotel in Secaucus. Manzo took $5,000 from the cooperating witness as a reward for bringing Elwell to him.

• Anthony Suarez, mayor of Ridgefield Borough and an attorney, and co-defendant Vincent Tabbachino, owner of a tax preparation business in Guttenberg. Suarez accepted $10,000 from the cooperating witness through Tabbachino as a middleman, for Suarez's promised assistance in getting approvals to develop properties in Ridgefield. Tabbachino said he kept the cash and, in turn, would write checks totaling $10,000 (one check for $2,500 was cashed) to a legal defense fund for Suarez related to an allegation made by a political opponent of Suarez. Tabbachino also laundered $100,000 in cash from the cooperating witness's purported knock-off handbag business.

• Daniel M. Van Pelt, state Assemblyman and administrator for Lumberton Township. Van Pelt accepted $10,000 from the cooperating witness for his influence as a state Assemblyman to help in getting the necessary permits for a purported project the cooperating witness was planning in Waretown, Ocean Township. Van Pelt particularly offered his influence in obtaining the necessary permits from the state Department of Environmental Protection.

• Jeffrey Williamson, a Lakewood housing inspector, who was also a state Assembly candidate in 2007. He accepted a total of more than $16,000 in bribes in regular payments of $1,000 between about May 2007 and the last one on July 10, to provide lenient

9

EXHIBIT 2

inspections on rental and other properties owned by the cooperating witness in Lakewood. Williamson also allowed the cooperating witness to illegally use a residence in Lakewood as a commercial office. Charles "Shaul" Amon aided in the Lakewood payoff scheme by introducing Williamson to the cooperating witness.

• Charles "Shaul" Amon, previously worked for the cooperating witness managing properties in Lakewood. Amon aided in the Lakewood payoff scheme by introducing Williamson to the cooperating witness. Amon described how he had previously made payoffs to Williamson to go light on housing inspections.

### The Money Laundering Defendants

Following are the individuals charged in the money laundering investigation and summaries of their alleged conduct as described in the criminal Complaints (All defendants are presumed innocent unless proven guilty beyond a reasonable doubt):

• Saul Kassin, the chief rabbi of Sharee Zion in Brooklyn, who laundered more than $200,000 with the cooperating witness between June 2007 and December 2008 by accepting "dirty" bank checks from the cooperating witness and exchanging them for clean checks from Kassin's charitable organization, after taking a fee of 10 percent for each transaction.

• Edmund Nahum, principal rabbi at Deal Synagogue in Deal, N.J., who laundered money both acting alone and with Kassin. Nahum laundered $185,000 between June 2007 and December 2008 by accepting dirty checks from the cooperating witness and exchanging them for clean checks from his own and Kassin's charitable organizations, after taking a fee of 10 percent for each transaction. Both Kassin and Nahum also laundered money to create fictitious tax deductions by accepting checks made payable to their charitable organizations, which created the appearance of charitable donations. They then deducted their 10 percent fee for laundering the checks through their charitable organization accounts and returned to the originators checks drawn on one of their accounts for 90 percent of the value of the original checks. These return checks would be payable to a name designated by the originators.

• Eli Ben Haim, principal rabbi of Congregation Ohel Yaacob in Deal, N.J., laundered $1.5 million with the cooperating witness between June 2007 and February 2009 by accepting dirty checks from the cooperating witness and exchanging them for cash, after taking a fee of approximately 10 percent for each transaction. His source for the cash was an Israeli who, for a fee of 1.5 percent, supplied the cash through intermediary cash houses run by defendants Weiss, Ehrental, and Cohen, who are described below. Ben Haim remarked that at one time he had laundered between $7 million and $8 million in one year, and earned $1

10

EXHIBIT 2

million laundering money in that year.

Cash House Operators for Haim transactions:

> • Arye Weiss – operated cash house from his residence in Brooklyn for Haim money laundering transactions; charged with supplying $300,000 in cash.
>
> • Yeshayahu Ehrental– operated cash house from his office in Brooklyn for Haim money laundering transactions; charged with supplying $300,000 in cash.
>
> • Schmulik Cohen – operated cash house from his residence in Brooklyn for Haim money laundering transactions; charged with supplying $850,000 in cash.

• Mordchai Fish – Rabbi of Congregation Sheves Achim in Brooklyn.  Working with his brother Lavel Schwartz, also a rabbi in Brooklyn, Fish laundered approximately $585,000 with the cooperating witness by accepting dirty checks and exchanging them for cash, after taking a fee of 15 percent for each transaction.  His source for the cash for some of the transactions was Levi Deutsch, who supplied the cash through an intermediary cash house run by Spira; for other transactions his source for the cash is unidentified but the cash was provided by cash couriers Gertner and Goldhirsh and cash houses run by Pollack and Weber.  On two occasions over the course of his dealings with the Cooperating witness, Fish gave the Cooperating witness new chips for his cell phone to thwart any law enforcement attempt to wiretap their telephone calls.

• Levi Deutsch – Israeli source/supplier of cash for a number of Fish money laundering transactions.  For a fee of two or three percent, he supplied cash for the transactions through intermediary Spira's cash house and is charged with supplying $200,000 in cash

Cash House Operators and Cash Couriers for Fish transactions:

> • Binyomin Spira – operated a cash house from a bakery in Brooklyn in which he received cash from Levi Deutsch and supplied cash for Fish money laundering transactions, charged with supplying $200,000 in cash
>
> • Yolie Gertner – acted as a cash courier for Fish money laundering transactions, charged with moving $185,000 in cash
>
> • David Goldhirsh - acted as a cash courier for Fish money laundering transactions, charged with moving $100,000 in cash

11

EXHIBIT 2

- Abe Pollock - operated cash house from his office in Brooklyn (which he shared with Naftoly Weber) for Fish money laundering transactions, charged with supplying $125,000 in cash

- Naftoly Weber – operated cash house from his office in Brooklyn (which he shared with Abe Pollack) for Fish money laundering transactions, charged with supplying $125,000 in cash.

Additionally, money laundering charges were filed against Shimon Haber and Itzak Friedlander, associates of Michael Altman.

Marra credited Special Agents of the FBI Red Bank Resident Agency, under the direction of Special Agent in Charge Weysan Dun, in Newark, and the IRS Criminal Investigation Division, under the direction of Acting Special Agent in Charge Julio La Rosa, for their commitment of resources and success in the Bid Rig cases to date. Marra also thanked the Monmouth County Prosecutor's Office under the direction of Prosecutor Luis Valentin for its assistance in the Bid Rig investigations.

The cases are being prosecuted by Brian Howe, Deputy Chief of the Special Prosecutions Unit, and Assistant U.S. Attorneys Mark McCarren, Sandra Moser and Maureen Nakly, all of the Special Prosecutions Division.

-end-