Mary Basile Logan
Post Office Box 5237
Clinton, New Jersey 08809
Email:  Trino@trinops.com

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW JERSEY

MARY BASILE LOGAN, individually and on behalf        |
of those similarly situated, *Pro-Se*;                              |
                                                                                         |
                        Plaintiff,                                             |
                                                                                         |
MERRICK GARLAND, in his official capacity             |
Attorney General, Department of Justice;                   |
                                                                                         |
LLOYD AUSTIN, III, in his official capacity as the    |
Secretary, Department of Defense;                              |
                                                                                         |
WILLIAM J. BURNS, in his official capacity as the    |
Director, Central Intelligence Agency;                        |
                                                                                         |
CHRISTOPHER A. WRAY, in his official capacity      |
as the Director of the Federal Bureau of Investigation; |
                                                                                         |
DENIS RICHARD MCDONOUGH, in his official        |
capacity as Secretary of Veterans Affairs;                   |
                                                                                         |
ALEJANDRO MAYORKAS, in his official capacity as |
Secretary, U.S. Department of Homeland Security;        |
                                                                                         |
MARCIA L. FUDGE, in her former capacity as Secretary |
U.S. Department of Housing and Urban Development;    |
                                                                                         |
ROBERT CALIFF, in his capacity as Commissioner,     |
Food and Drug Administration;                                    |
                                                                                         |
WILLIAM J. CLINTON, in his official capacity as the  |
former President of the United States of America;         |
                                                                                         |
HILLARY R. CLINTON, in her official capacity as        |
former Secretary of State for the United States of America; |

THOMAS KEAN, Sr., in his former capacity as Chairman
9/11 Commission;

ROBERT MUELLER, in his former capacity as Director
of the Federal Bureau of Investigation;

JAMES COMEY, in his former capacity as Director
of the Federal Bureau of Investigation;

CHRISTOPHER J. CHRISTIE, in his capacity as the
former-Governor of New Jersey;

RICHARD "DICK" CHENEY, in his former capacity
as Vice President of the United States;

ELIZABETH "LIZ" CHENEY, in her former capacity
as Chair, January 6 Commission;

JOHN KERRY, in his official capacity as U.S. Special
Presidential Envoy for Climate;

GEORGE W. BUSH, in his former capacity as
President of the United States;

BARACK HUSSEIN OBAMA, in his former capacity as
President of the United States;

LORETTA LYNCH, in her former capacity as
United States Attorney General;

JAMES BAKER, in his former capacity as White House      **CIVIL DOCKET: 3:24-CV-00040**
Chief of Staff;                                            **ZNQ-TJB**

ERIC HOLDER, in his former capacity as United States    **ORAL ARGUMENT REQUESTED**
Attorney General;

JOSEPH R. BIDEN, in his official capacity as President,
his former capacities as Vice President and Senator, of
these United States;

JOHN ASHCROFT, in his former official capacity,
as United States Attorney General;

JAMIE GORELICK, in her official capacity, Homeland
Security Advisory Council member;

NANCY PELOSI, in her official capacity as
Congresswoman (CA);

GEORGE NORCROSS, in his capacity as Chairman,
Cooper University Medical Systems;

PHILIP MURPHY, in his official capacity as Governor
of New Jersey, and as former Chair of the National
Governors Association (NGA);

TAHESHA WAY, in her former capacity as Secretary
of State, as former President of the National Association
of Secretaries of State, and her current capacity as
Lt. Governor, New Jersey;

JUDITH PERSICHILLI, in her official capacity as then-
Commissioner of Health for the State of New Jersey;

SEJAL HATHI, in her official capacity as Deputy
Commissioner for Public Health Services;

MATTHEW PLATKIN, in his official capacity as
Attorney General of the State of New Jersey;

KATHY HOCHUL, in her official capacity as Governor
of New York;

ANDREW CUOMO, in his former capacity as Governor
of New York and his capacity as Vice-Chair of the National
Governors Association;

LETITIA JAMES, in her capacity as Attorney General of
the State of New York;

SUSAN RICE, in her official capacity as United States
Domestic Policy Advisor;

ADAM SCHIFF, in his official capacity as Congressman,
of the State of California;

CHARLES "CHUCK" SCHUMER, in his official
capacity as Senator for the State of New York;

XAVIER BECERRA, in his official capacity as
Secretary of Health and Human Services;

JANET YELLEN, in her official as Secretary of
the United States Treasury;

ROD ROSENSTEIN, in his former capacity as United
States Deputy Attorney General;

HUMA  ABEDIN, in her former capacity as vice
Chair of Hillary Clinton;

DEBBIE WASSERMAN SCHULTZ, in her current
capacity as U.S. Representative, (FL-25);

BILL NELSON, in his official capacity as Administrator
of NASA;

OCCIDENTAL PETROLEUM;

UNITED HEALTHCARE;

DEMOCRATIC NATIONAL COMMITTEE;

REPUBLICAN NATIONAL COMMITTEE;

JAMES PITTINGER, in his official capacity as Mayor
of Lebanon Borough, State of New Jersey;

LISA SELLA, in her official capacity as Deputy Clerk,
Lebanon Borough, State of New Jersey;

ROBERT JUNGE, in his official capacity as Municipal
Co-Chair, Republican Party, Lebanon Borough, State of
New Jersey;

JOHN DOES (1-100)

JANE DOES (1-100)
                              Defendants.

_____

**PLAINTIFF'S REPLY BRIEF IN OPPOSITION OF DEFENDANTS' RESPONSE TO
MOTION FOR PRELIMINARY INJUNCTION HEARING DATE,
AND TEMPORARY RESTRAINING ORDER**

**DEFENDANTS:  REPUBLICAN NATIONAL COMMITTEE ("RNC"); GEORGE
NORCROSS;**

**DEMOCRATIC NATIONAL COMMITTEE ("DNC"); DEBBIE WASSERMAN
SCHULTZ;
KATHY HOCHUL and LETITIA JAMES**

On January 4, 2024, Plaintiff filed this lawsuit as an amended complaint, alleging that
Defendant's actions, taken under the color of state law, deprived the Plaintiff of Rights,
privileges, or immunities in violation of 42 U.S.C. § 1983, the First and Fourteenth Amendments
to the Constitution, and the Equal Protection Clause.  Plaintiff filed a Motion for Preliminary
Injunction Hearing Date and Temporary Restraining Order.  The Court acknowledged Plaintiff's
request, scheduling a Motion hearing date of June 17, 2024, to be decided on papers with no
appearances required.

The Defendants, MERRICK GARLAND, LLOYD AUSTIN, WILLIAM J. BURNS,
CHRISTOPHER A. WRAY, DENIS MCDONOUGH, ALEJANDRO MAYORKAS, MARCIA
FUDGE, ROBERT CALIFF,  WILLIAM J. CLINTON, HILLARY R. CLINTON, THOMAS
KEAN SR., ROBERT MUELLER, JAMES COMEY, CHRISTOPHER J. CHRISTIE,
RICHARD "DICK" CHENEY, ELIZABETH "LIZ" CHENEY, JOHN KERRY, GEORGE W.
BUSH, BARACK HUSSEIN OBAMA, LORETTA LYNCH, JAMES BAKER, ERIC HOLDER,
JOSEPH R. BIDEN, JOHN ASHCROFT, JAIME GORELICK, NANCY PELOSI, GEORGE
NORCROSS, PHILIP MURPHY, TAHESHA WAY, JUDITH PERSICHILLI, SEJAL HATHI,
MATTHEW PLATKIN, KATHY HOCHUL, ANDREW CUOMO, LETITIA JAMES, SUSAN
RICE, ADAM SCHIFF, CHARLES "CHUCK" SCHUMER, XAVIER BECERRA, JANET
YELLEN, ROD ROSENSTEIN, HUMA ABEDIN, DEBBIE WASSERMAN SCHULTZ, BILL
NELSON, OCCIDENTAL PETROLEUM, UNITED HEALTHCARE, the DEMOCRATIC
NATIONAL COMMITTEE, the REPUBLICAN NATIONAL COMMITTEE, JAMES

PITTINGER, LISA SELLA, and ROBERT JUNGE, hereinafter referred to as "inclusive Defendants."

## **SUPPLEMENT TO ARGUMENT**

1.      Plaintiff restates all and inclusive claims represented and authored by her hand, informed by God, Almighty, as set forth inclusive of the supplemental submissions with Exhibits so accompanying, ECF 45; 45-1; 45-2; 45-3; 45-4; 45-5; 45-6; 45-7; 45-8; 45-9; 45-10; 45-11; 45-12; 45-13; 45-14; 45-15; 45-16; 45-17; 45-18; 45-19; 45-20; 45-21; 45-21; 45-22; 56; 46; 46-1; 46-2; 55; 55-1; 55-2; 55-3; 55-4; 55-5; 73; 73-1; 73-2; 73-3; 73-4; 73-5; 73-6; 73-7, 73-8; 77; 77-1;77-2;77-3;77-4;77-5 and the inclusive reply pleadings authored by the Plaintiff in support of the certified statements of harms herein.

2.      Title 18 § 245(b)(1)(A) of the U.S. Code addresses interference in federal elections by force or threats.  Title 18 § 245(1)(A) imposes penalties on whoever "by force or threat of force willfully injures, intimidates or interferes with, or attempts to injure, intimidate or interfere with any person because he is or has been, or in order to intimidate such person or any other person or any class of persons from" voting or participating in other election activities.  Title 18 § 245 (a)(1) requires the Attorney General, the Deputy Attorney General, the Associate Attorney General, or a specially designated Assistant Attorney General to certify that federal prosecution of a case under Section 245(b)(1)(A) is in the public interest and necessary to secure substantial justice.

3.      Plaintiff states that the Defendants, RNC, GEORGE NORCROSS, DNC, DEBBIE WASSERMAN SCHULTZ, KATHY HOCHUL and LETITIA JAMES, as outlined above, each having used the recurrent descriptive "conspiracy theory" amid their respondent filings.  Plaintiff states for the Court record, conspiracy is extinguished altogether when the truth is substantiated through primary sourced exhibits.  Conspiracy theories can, however, foreclose the sovereign Rights

of American citizens as evidenced by the inclusive Defendant's actions and the events surrounding January 6, 2021 (https:www.govinfo.gov/collection/January-6[th]-committee-final-report?path=/GPO/January%206th%20Committee%20Final%20Report%20and%20Supporting%20Materials%20Collection).  As this Plaintiff's pleading within the Honorable Court's docket provides, the exampled crisis manifested itself through the knowing actions of the inclusive Defendants and, with some specificity, Defendant, NANCY PELOSI who withheld action by knowingly usurping Executive directive, resulting in the unconstitutional constraint, harm and hostage siege of sovereign citizens with same continuing to the present day.  Alternatively, it could be the Russia conspiracy which imposed on Plaintiff's Title 18 § 245(A)(1) Rights, a conspiracy theory perpetrated by the Defendants, the DNC and HILLARY R. CLINTON who later providing a monetary settlement evidencing an admission of culpability at the expense of the American citizens' trust in their government.

4.      Plaintiff states that the subject Motion for preliminary injunction is expressly time sensitive.  The inclusive Defendants seek recurrent delays while simultaneously denying validity to the claims, harms and ongoing infringements of Plaintiff's sovereign Rights to Life, Liberty and Property.  So as to clarify, Plaintiff provides exacting harms herein outlined, each of the inclusive Defendants, providing aid and comfort to foreign enterprise and foreign nation-states, themselves interlopers; all sharing malevolence to these United States, seeking to disembowel the Constitution, the Bill of Rights and the Declaration of Independence through contractual relation afforded by economic espionage at the hands of the inclusive Defendants and extraneous parties so attached by contract consummated with taxpayer funds.

5.      Plaintiff states clearly and succinctly, the 2024 primary election, will be conducted with foreign encroachment conducted by way of Microsoft, Dominion Voting, ES&S, HART InterCivic, etc. as noted in Plaintiff's docket records, above stated and incorporated herein, absent shell or bias.

All such entities are *foreign*, with this Honorable Court and the inclusive Defendants having foreknowledge of such unconstitutional traverse, a gross violation of the federally protected Subsector of the United States Critical Infrastructure, the Constitution and all manner of jurisprudence has been affixed to the primary federal election and, by extension, to the outcome of same.  The foregoing actions affix the Plaintiff's harms stated herein.  Plaintiff has set motion to provide further proof of such unlawful traverse.

6.      The Defendants, RNC by way of Doc. 86; GEORGE NORCROSS by way of Doc. 85; DNC and DEBBIE WASSERMAN SCHULTZ by way of Doc. 84; KATHY HOCHUL and LETITIA JAMES by way of Doc. 82, respecting the Honorable Court's time, Plaintiff prepared a collective, succinct inclusive reply, responding to each of the respecting response filings as below.

**RNC:**

7.      Defendant, the RNC, continues its diatribe and posture concerning Plaintiff's action which it deems absent of merit, standing and failure to state a claim.  Plaintiff states as a matter of record, that repeating a statement does not give it weight, nor does the statement become any more meritorious by recurrence of such words opined, whether orally or in writing.  The claims presented to the Honorable Court accompany extensive Exhibits corroborating fact, dismissing theory altogether.

8.      The Defendant claims that the Plaintiff has no standing to bring the Motion, yet the law is quite clear, under Title 18 Section 245, the sovereign Rights of the Plaintiff are implicitly protected, the "provision prohibits using force or threat of force to willfully injure, intimidate, or interfere with 'any person because he or she has been, or in order to intimidate such persons from participating, without discrimination on account of race, color, religion or national origin' in voting or voting related activities."

9.      The Defendant claims that Plaintiff delayed to seek preliminary injunctive relief; however, the facts concerning the foreign interference in federal elections only recently came to light through the consummation of the contract in April, 2024, by and between Microsoft and G42, a wholly government owned enterprise of the United Arab Emirates ("UAE").  As the facts were made known, Plaintiff immediately analyzed the inclusive data thereafter presented her findings incorporated into the Motion before this Honorable Court.  There being no delay, nor does Plaintiff's matter have anything to do with "trademark infringement" (Doc. 86, p.4).  Plaintiff seeks the Court's protection of her Right as a sovereign citizen, ensuring that such sovereignty remain intact and without infringement, intimidation or foreign encroachment in the federal election conducted at the local level of government for which the RNC's elected representative designees will proctor to ensure voters are qualified to cast their ballot.  The foregoing irrefutably iterates the Defendant, the RNC's recurring and sustained involvement in this matter, a central figure and entity.

10.      The Defendant claims that the Plaintiff is seeking "extraordinary" (Doc. ¶1) relief in her Motion before the Honorable Court.  Plaintiff states that her Rights as a sovereign citizen, resolving to her Creator, God and that of the government of these United States in accordance with Natural Law, is rightly placed.  Moreover, Plaintiff states that the sovereignty of these United States is no less her interest as too it should be the Defendants.  To that end, in 2016, 2018 and 2020, this fine Nation was turned upside down and inside out based on claims of election interference, claims which were later found to be false and, in fact, projected by the very inclusive Defendants, party to this action.  Plaintiff states that it is utterly incomprehensible that the RNC would not seek the very same sovereign protections of the United States when the irrefutable evidence has been provided through corporate registration of the subject entities, Microsoft, Dominion Voting, ES&S, HART InterCivic, etc.

**GEORGE NORCROSS:**

11.     The Defendant, GEORGE NORCROSS claims throughout his five-page letter brief no less than six (6) times that the Plaintiff's claims are "conspiracy theories…frivolous."  Plaintiff states that the amassed volume of supporting evidence provided, all and inclusive being primary sourced, dismiss the Defendants claim altogether.  As stated above, when facts are evidenced which uphold under unbiased examination, they are no longer conspiracy.

12.     The Defendant claims that the Motion does not comply with Local Civil Rules; however, Plaintiff has entered her pleading in conformity to the Fed. Civil Rules in accordance with the instructions of this Honorable Federal Court.  Defendant's claims are without merit.

13.     The Defendant claims that the Plaintiff "cannot establish a right to preliminary injunctive relief by clear and convincing evidence," (Doc. 85, p. 2) Plaintiff refutes this claim citing the facts herein.

14.     The Defendant claims that the Plaintiff "cannot establish that she will suffer irreparable harm in the absence of an injunction," (Doc. 85, p. 3) Plaintiff states that the foregoing claim runs counter to the Constitution and is the Defendants' cognizable premise employed to buttress his claim that the Motion should be dismissed which holds no water upon examination.  Given the facts herein as well the irrefutable fact that Plaintiff retains her sovereign Rights, at least at the present time, the Defendant's claim is deemed without merit.

**DNC and DEBBIE WASSERMAN SCHULTZ:**

15.     The Defendants, the DNC and DEBBIE WASSERMAN SCHULTZ claim that Plaintiff has presented to the Honorable Court "nothing more than an improper attempt to implicate a defendant in an implausible conspiracy theory."  Plaintiff states that the amassed volume of supporting evidence provided, all and inclusive being primary sourced, dismiss the Defendants' claim altogether.

As stated above, when facts are evidenced which are upheld under unbiased examination, they are no longer conspiracy.

16.     The Defendants' claim that the Plaintiff "has not established legally cognizable harm (let alone irreparable harm) because the Amended Complaint does not identify the existence of any concrete, particularized injury."  Plaintiff refutes Defendant's claim as meritless which Defendants have repeated throughout their two page statement of opposition, in lieu of dialogue on the merits of the fingerprints of criminal evidence provided in Plaintiff's pleading which is further substantiated in the Motion for Injunctive Relief, Defendants reach back to their unsubstantiated argument, echoing the very same sentiments presented in their motion to dismiss Plaintiff's Amended Complaint.  The Defendants' fail to establish a viable argument to counter the facts in evidence while the Plaintiff has incontrovertible facts with distinct harms, presently mounting with each passing day, disclosing the schema born of the Defendants' hands and minds.

## ARGUMENT

17.     Plaintiff states, as surely as born of her parents, she is sovereign, resolving not to the State or any governmental body but to her Creator, God.  The Plaintiff is of Basile descent, having full and absolute knowledge of God's intent which is incorporated with Natural Law to all pursuits, whether philanthropic, corporate or governmental.  Human life, the organs which comprise all facets of sustenance to same, are determined and guaranteed of control to the sovereign, the Plaintiff, affirmed by the Constitution under Life, Liberty and Property.  Plaintiff gives no consent, whatever, to parties or entities in their imposition to her sovereign Rights, whether such actions are taken through deception, fraud or coercion, Plaintiff makes no delineation, such actions are a foreclosure of the Plaintiff's sovereign Rights, an unlawful trespass.  This foreclosure and trespass of Rights extends to that which nourishes, sustains and affixes as omniscient that of Life, Liberty and Property; her

covenant by marriage to her Creator, God; making no allowance for confusion as to loyalty.  Plaintiff presents this plea with the utmost love of these United States, but it is God, Almighty who gifted it, the land and all things, in trust; therefore, it is by God, Almighty that Plaintiff finds resolve to the protection of her Rights as well those of these United States.

18.     To ensure these Rights inalienable, informed by Natural Law, the Founders scribed the Constitution, the Bill of Rights and the Declaration of Independence, conferring same in resolve affixed of authored names to the People, a parallel covenant of trust, unmistakably triune.  Within same, are the Rights, unalienable to the Plaintiff, which protect while serving to reinforce the resolve of the foregoing covenant, these include Title 18 Sections 245(b)(1)(A); (a)(1); and (b)(4).  Plaintiff states that these Rights have been foreclosed by the Defendant, JOSEPH R. BIDEN who traversed and foreclosed on the Separation of Powers, Article I, Section 7, by directing, choreographic and officiating apart from his physical presence, through the persons of his designation including but not limited to Judge Lewis Kaplan; Judge Chutkan; Judge Arthur Engoron; Judge Juan Merchan; Alvin Bragg; Fani Willis, Jack Smith; Lisa Monaco; Defendant, LETITIA JAMES; Eric Schneiderman and Barbara Underwood, each no less culpable for their surrogacy on the part of the Defendant, JOSEPH R. BIDEN and the resulting actions which followed, inclusive of Plaintiff's harms established herein. Plaintiff states that these unlawful, unconstitutional foreclosures of the Plaintiff's sovereign Rights were secured with the aid of Defendants, NANCY PELOSI; DEBBIE WASSERMAN SCHULTZ; ADAM SCHIFF; CHARLES "CHUCK" SCHUMER, HILLARY R. CLINTON and HUMA ABEDIN, the latter associated with George Soros, directly, as well a number of tax-exempt entities and multinational corporations.  Where statistical associations are consistent, there can be no theory, facts become irrefutable.

19.     Plaintiff states that the inclusive persons and entities knowingly eviscerated Plaintiff's sovereign Rights to influence candidate access and public opinion, going so far as to indict and convict the candidate, Donald John Trump, absent jurisprudence or Constitutional muster while affixing Jurists so as to ensure a predetermined outcome, thereby steering the evidence and shattering public trust in the balance of equity principally required to ensure a just outcome.  In each of the cases brought in New York against Donald J. Trump, the inclusive balance of equity evaluation was disoriented, the law incurvatus in se, clearly disclosing an insurance policy meant to affix a predetermined outcome.  So determined in the precept and construct of their schema that the parties foreclosed the candidate's 1st Amendment Right to free speech which, by extension, foreclosed the Plaintiff's sovereign Rights as to Title 18 Section 245, interfering with the federal election by threat of force to willfully injure, intimidate, or interfere with "any person because he is or has been, or in order to intimidate such persons …from participating, without discrimination on account of race, color, religion or national origin," in voting or voting-related activities.  In many of these cases, the Attorney General, themselves opining of threatening language, publicly.  The foregoing statements are affirmed by Defendant, JOSEPH R. BIDEN in his own words, see

https://youtu.be/03o9eqO8G31?si=u5olnthTkMPnMDxY; "Donald, I hear you're free on Wednesdays."  Defendant intimated having express knowledge regarding the case, information which would otherwise only be held by those persons directly associated.  So confident as to his intimate knowledge, unlawfully held, that the Defendant gave no consideration to the implication of his reference.

20.     Plaintiff states as below, the argument in support of her Motion with particular harms following thereafter.

**ARTICLE 1, SECTION 4, CL. 1; TITLE 18 SECTION 245; ARTICLE IV, SECTION 2 –**

**COMITY CLAUSE; DUE PROCESS CLAUSE – 5TH AMENDMENT; EQUAL**

**PROTECTIONS – 14TH AMENDMENT:**

21.     The 2000 Federal election has been cited as the most controversial election in United States history with the Supreme Court hearing oral arguments on December 11, 2000 which focused on 61,000 ballots, the tabulation machines and the Electoral College.  The legal arguments were confined to the Equal Protections Clause, the 14th Amendment and Article II, § 1, cl. 2, the number of Electors by State referenced in Section 2 of the Electoral Count Act 3 U.S.C.§ 5.

22.     On October 29, 2002, Defendant, GEORGE W. BUSH, executed the Help America Vote Act ("HAVA"), New Jersey was the only non-conforming State, receiving special dispensation due to existing voter registration nonconformance within each of the 21-Counties, Hunterdon County was the only County conforming to the State and Federal standards.  To date, New Jersey has remained an outlier to the HAVA requirements.

23.     In 1996, Microsoft became engaged with elections by way of MSNBC's new interactive program, "Decision '96," which allowed the candidates in the federal election, Bob Dole/Jack Kemp and Bill Clinton/Al Gore, to secure an online venue of inreach to the sovereign voters, a venue that would not have been accessible but for Microsoft's monopoly, well established in the February 27, 2001 Federal Antitrust investigation, see

https://youtu.be/ZohSfvCQGC8?si+WUC8M8U4Myq4wuJD, transcript open source accessible. CompuServe hosted a simultaneous online forum with Newt Gingrich, later cited as the best attended of that calendar year.  As a matter of ownership record, CompuServe was formerly owned by H&R Block until 1997 when it was sold to America Online ("AOL"), the transaction was brokered by WorldCom.

24.     For the Honorable Court's benefit in navigating the deceptive business practices of these illicit multinational entities, WorldCom negotiated the 1998 CompuServe transaction to themselves, opaquely, by purchasing the shares of CompuServe with $1.2 billion of WCOM stock, placing WorldCom is the precarious position which is expressly discussed in Plaintiff's Supplement to Motion (¶46-52), the following day, as the ink set on paper of the purchase, WorldCom sold the CompuServe Information Service portion of the company to AOL, retaining the CompuServe Network Services.  AOL then sold its networking, Advanced Network Services ("ANS") to WorldCom.  Sidgmore, vice chairman of WorldCom is quoted as saying, the accountants were doing taxes, AOL was doing information services, and WorldCom was doing networks.  Through WorldCom Advanced Networks, WorldCom continued operation after being combined with AOL's network subsidiary, ANS under the name Gridnet.  In 1999, WorldCom acquired MCI and became MCI WorldCom, WorldCom Advanced Networks became MCI WorldCom Advance Networks ultimately absorbed into UUNET.  As WorldCom collapsed, see Plaintiff's Motion for Injunctive Relief (¶46-52), MCI emerged independent and, in 2006, Verizon purchased MCI with CompuServe being retained by Verizon Business through the purchase of AOL in 2015.

25.     Based on the foregoing statements, evidenced by the corporate records below, Plaintiff states that WorldCom Group Inc. held a domestic pass through out of New York, incorporation October 25, 1990, which remains active of registrant record today.  The WorldCom Wireless registered in Arizona, foreign for profit, registered May 5, 1993.  WorldCom, Inc. registered in Little Rock, Arkansas as a foreign for profit corporation, July 19, 1994, registration withdrawn, no date associated, it appears to be a holding company with the remaining structures all and inclusive, foreign. Plaintiff draws direct parallel between the Defendants, WILLIAM J. CLINTON and HILLARY R. CLINTON as to registrant record location, the facts undisputable.



26.    Plaintiff brings to the Honorable Court's attention *Vivien v. WorldCom, Inc.* No. 3:02-cv-01329 (N.D. Cal. July 26, 2002), the case concerned retirement funds of and belonging to the employees of WorldCom, alleging fraud and artificial inflation of WorldCom's stock price, facts which eluded the federal investigators in their work-product, Plaintiff states that such omissions by the federal investigators was an intentional omission.  The lawsuit filed under Employee Retirement

Income Security Act ("ERISA") of 1974, a federal statute drafted with the intent of protecting the rights of employee benefit plan participants.  Plaintiff refers to the ECF Doc. 69, filed on May 2, 2024 in which Plaintiff first introduced to the Honorable Court the inclusive Defendants' usurpation of her sovereign Rights which regard the federally protected election process, venue, outcome and audit processes.  Plaintiff enters as EXHIBIT 1, that on May 6, 2024, the business day following Plaintiff's Court submission, the New York State Common Retirement Fund transacted holdings in GlobalFoundries, holding a value of $3,435,000.00.  Plaintiff claims direct correlation between the two events, thereby inferring intent to deceive and hide from the truth, and as God's intent, from Justice.  Plaintiff states as a matter of record in and among the Plaintiff's ECF repository, the myriad of shell corporations and front companies, when combined with the commercial backed mortgage securities, See ECF 45, disclose a knowing hand manifested and orchestrated by the inclusive Defendants with every intent of economic espionage, up to and including the People's retirement accounts.

27.     Following the 2000 election, Florida retired the punch-card voting machines which had produced the ballots subject of the case, each State continued to conduct elections as directed through State guidelines.

28.     2002, the FEC revised their standards established for electronic voting, last revised in 1990.

29.     2005, the Election Assistance Commission ("EAC") was developed offering election certification and accreditation at which point 17 States accept ECA-accreditation, none obtained certification.  Black Box voting introduced in Leon County, Florida.  Election outcome was proven to be accessible, evidenced to be hackable by Princeton Professor, Edward Felton (Diebold Electronic Voting Machine).

30.     Plaintiff attaches the September 28, 2022 report entitled, "A Brief History of Tech and Elections: A 26-Year History."  The co-author, Katie Harbath, worked for Facebook over a 10-years period, during which, she built Team structures who worked with politicians and government, instructing them how to use the Facebook platform  for elections.  She would serve as Facebook's public policy Director from 2013 – 2019 coordinating work on elections globally during that period including with in the United States.  A review of the report evidences the echoed statement of George Washington,

> All obstructions to the execution of the laws, all combinations and associations, under whatever plausible character, with the real design to direct, control, counteract, or awe the regular deliberation and action of the constituted authorities, are destructive of this fundamental principle, and of fatal tendency. They serve to organize faction, to give it an artificial and extraordinary force; to put, in the place of the delegated will of the nation the will of a party, often a small but artful and enterprising minority of the community; and, according to the alternate triumphs of different parties, to make the public administration the mirror of the ill-concerted and incongruous projects of faction, rather than the organ of consistent and wholesome plans digested by common counsels and modified by mutual interests.[1]

31.     Plaintiff states that under guise of HAVA drafted and codified by the minds and hands of the inclusive Defendants, foreign encroachment has been taking place in the sovereign elections of since 2002, the facts presented to this Honorable Court are irrefutable inclusive of corporate records which affirm same.

32.     Plaintiff states which the facts substantiate, Defendant, GEORGE W. BUSH, son of the former Vice President, George H. W. Bush, whose birth name is George H. Scherff, Jr., son of George H. Scherff, Sr., both formerly of the German Reich and transferred into the CIA via Operation Paperclip following WWII, in and among at least 10,000 other persons formerly of the German Reich, retained and so employed by the Central Intelligence Agency ("CIA"), a federal law enforcement agency first as the Office of Strategic Services ("OSS") and, following

---

[1] George Washington, Farewell Address. (1796) Accessed June 4, 2024 via the American Battlefield Trust.com

WWII, by Executive Order of Harry S. Truman, dated October 1, 1945, was restructured and renamed to the CIA. Following the events of September 11, 2001, additional changes took place at the bequest of the 9/11 Commission and the inclusive Defendants.

33.     Plaintiff states that the 2000 election subject of *Bush v. Gore*, 531 U.S. 98 (2000), discloses several key facts:

      i. No one from the Gore campaign ever challenged the legal analysis presented by Jeffrey Toobin, despite the fact that 18 Florida Counties did not carry out the legally mandated machine recount.[2]

      ii. Plaintiff asserts that Gore didn't challenge the findings or seek redress for the omission of the machine recounts because the Constitutional crisis over the ballot count was the headliner event, the star of the show was the complex election related apparatus those automations introduced beginning in 2002 to present. At each phase-in of the structured changes, foreign entities, under guise of established domestic corporation, were given carte blanche venue access to the sole expression of sovereign Rights held by the Plaintiff, informed by an independent evaluation, privately determined, guided by personal worldview including the trinitarian lens of God, the Father, to inform selection be of like-mind, governing while holding to the cardinal moral truths:

…that all Men are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty, and the Pursuit of Happiness – That to secure these Rights, Governments are instituted by Men, deriving their just Powers from the Consent of the Governed. We are all created equal, as defined by our natural rights; thus, no one has rights superior to those of anyone else. Moreover, we are

---

[2] Toobin, Jeffrey. "Too Close To Call". Random House, 2002, p. 66.

born with these Rights, we do not get them from government – Indeed, whatever Rights or Powers government has come from us, from "the Consent of the Governed."[3]

        iii.  In February, 2019, Microsoft announced that it had detected spear-phishing attacks from APT28, directed at the German Marshall Fund.  Plaintiff overviews findings of analysis from the German Marshall Fund, see ECF Docs. 45, ¶70; 73, ¶51.  Plaintiff restates as provided in the press release of Microsoft, Clint Watts, employed by the German Marshall Fund, was retained by Microsoft as Manager of Cybersecurity in 2024; Mr. Watts was also the keynote speaker at the National Association of Secretaries of State at the outset of COVID-19, see ECF Doc. 45-22.

34.    Plaintiff states that on June 3, 2024, Microsoft announced a milestone agreement with Hitachi to accelerate business and social innovation with generative AI on the Azure Open AI Service, Dynamics 365, Copilot for Microsoft 365 and GitHub Copilot platforms to accelerate the Lumada business and improve productivity.  Plaintiff states, that the Microsoft/Hitachi agreement and the inclusive application development will share the cloud-based Azure platform with the sovereign elections of the United States.

35.    On May 22, 2024, Microsoft and G42, subject of Plaintiff's Motion, executed an artificial intelligence (AI) Agreement in Kenya in which G42 (United Arab Emirates) will collaborate with local partners to build a cutting-edge data centre campus powered by renewable geothermal energy and water conservation technology.  "The data centre will run on and provide access to Microsoft Azure through a new East Africa Cloud Region, which will become

---

[33] Declaration of Independence.  Cato Institute, 2002.  Cato.org.

operational within 24-months of the signing of the definitive agreements."[4]  Plaintiff states that the Microsoft/G42/East Africa geothermal project will share the cloud-based Azure platform with the sovereign elections of the United States.

36.     Plaintiff states that the escalation of adverse risk resulting from cybersecurity breaches, each of which has resulted in appropriation of taxpayer funds and, in some cases, as with Defendant, UNITED HEALTHCARE (April, 2024), funds expressly paid in ransom to assure the protection of the eroding private data as well the sovereign Rights, inclusive, of and belonging to the Plaintiff.

**TRAFFICKING IN PERSONS:**

37.     Plaintiff draws from the ancient records, citing the inclusive Defendants and the history which runs concurrent to the facts in evidence but, like their illicit activities, remain opaque.  Plaintiff serving God, Almighty as Master Creator, having undergone extensive academic training, she understands that within the DNA structure of each Created being there lies the potential of good and evil, one not apart from the other but rather striving for harmony in balance.  The harmonious balance is thrown off when the human created is severed from its Creator, God.  Plaintiff has personally witnessed this in real-time with clients who were under immense pressure from the commercialism of society, have lost their balance and overextended themselves through fiscal obligations, Trino, Plaintiff's company, works with them to regain balance, avoiding foreclosure while course correcting their fiscal outlay, reorienting them to that which they were designed for; the freedom to serve absent the financial pressures having overextending themselves financially.  Invariably, as they serve freely and independent of external directive, they undergo a dynamic shift, the give and take between the servant and the

---

[4] Okorie, Ifeoma Joy.  "Kenya Gets $1 Billion from Microsoft and UAE's G42 for Geothermal Data Centre."  May 22, 2024.  Accessed Techpoint.africa.com

served, alters how they see themselves in the world, their community, even within their family. Plaintiff states that the inclusive Defendants seek to extinguish the foregoing, in its entirety.

38.     Having a thorough understanding of history, Plaintiff raises the Jesuit-controlled Knights of Malta, a Roman Catholic military order controlled by the Jesuit Superior General.  It was, in fact, the Jesuits who have, for centuries, sought through various machinations to subsume control over the banking system in the United States and, they have done so with aid of internal persons and entities, the persons include the Rothschilds, Morgans and Rockefellers.

39.     Plaintiff states that the foregoing history becomes imperative in navigating BCCI as well the myriad of multinational corporations who share common mapping of opaque fiscal records, layered corporate structuring and a penchant for wealth creation, the latter of which resolves disengages the resolve back to Creator, God; an ancient battle.  Applying this history, in 2012, the Rothschilds and Rockefellers linked their global finance, with Europe's Rothschild banking dynasty agreeing to buy a stake in the Rockefeller group's wealth and asset management business to gain a long-sought foothold in the United States.  Rothschild's London-listed RIT Capital Partners said on Wednesday it was buying a 37 percent stake in Rockefeller from French group Societe Generale's private banking arm, for an undisclosed sum.   During that same period of time, the inclusive Defendants employed the Awan Brothers and, as fiscal records provide paying a significant portion of the Awan family in addition, with taxpayer funds, Plaintiff's funds.  Plaintiff has clearly evidenced the familial lineage to Amjad Awan (See United States v. Awan, Bilgrami, Hassan, et al, 996 F.2d 1415 Docket 90-4114), as outlined in ECF Doc. 45. Plaintiff assures the Honorable Court, that such a voluminous record, despite the investigative compromise, the facts dismiss theory altogether.  That said, Plaintiff refers to the foregoing docket and Appeal of July 27, 1992 (see U.S. Court of Appeals for the Eleventh Circuit – 966

F.2d 1415 (11th Cir. 1992), Agent Mazur, the undercover investigator involved in the BCCI

Tampa matter, refers to "haven countries R82:25-27, and shell corporations (R86:24-30)."

These facts, in part, upheld the conviction of the subject parties and are germane to this brief in

opposition to the Defendant's motions to dismiss, the mapping of BCCI, irrefutable.

     40.     Richard Clarke ("Clarke") had a working history in and among the inclusive

Defendants, holding various roles in National Security appointed by Defendants WILLIAM J.

CLINTON and GEORGE W. BUSH, leaving in 2003. Thereafter, he helped the United Arab

Emirates set up a cyber security unit, outlined in ECF Doc. 77, ¶63. Plaintiff states that after

Clarke left the UAE firm, it was reported that the sequence of firms were surveilling women's

rights activists, UN Diplomats and FIFA officials. Plaintiff found the statement peculiar and

reviewed the existing findings of her repository for FIFA related parties, several of the inclusive

Defendants are so affiliated, including UNITEDHEALTH GROUP, former CEO, Bill McGuire

is the owner of the Minnesota United F.C.; Defendant PHILIP MURPHY co-owns a soccer club;

however, it is the UAE that Plaintiff found particularly interesting. The chief executive officer

and managing director of Mubadala Investment Company also serve as the chairman of the

Manchester City F.C., Melbourne City F.C. and the Mumbai City F.C.

     41.     Plaintiff applied the foregoing incongruence to the NBA, again applying the

findings to her existing repository. Plaintiff arrived at the Arison Family, there were several

closely associated commonalities, the Bank of Hapoalim, National Foundation for the

Advancement of the Arts, Bill Gates, Shimon Perez, and other associated non-profit

organizations including Aesara Partners. Degrees of separation and statistical anomalies did not

account for the cross-pollination of findings.

     42.     Plaintiff noted that Count de S.G. Elkaim, former vice president of E.F. Hutton &

Company directed Ted Arison to go public before an impending stock market correction, Arison took his advice taking Carnival Cruise Lines public one month in advance of the infamous crash in October, 1987, Hutton serving as one of the four underwriters.  In 1990, to avoid paying estate tax, Arison renounced his United States citizenship, returning to Israel where he founded Arison Investments which would form a consortium in 1997 and purchase the controlling shares in Bank Hapoalim for over $1 billion, taking the Bank private.

43.      Plaintiff had previously researched Bank Hapoalim, the largest bank in Israel, both the Bank, AIPAC and the L.F. Rothschild all areas cross-pollinated directly in and among the area of human trafficking, noting ¶23, herein.

44.      Plaintiff analyzed the Count Elkaim Investments Corporation which correlates directly to the existing repository on human trafficking through the Morocco Finance Corporation, an active company associated with Countess Elkaim.  Plaintiff states that Esther de S.G. Elkaim is a financial consultant for Count Elkaim Capital Management Corp. and serves as a columnist for MarketWatch.   Plaintiff states that it would be beneficial for shell corporations to avail themselves of such capacity, such a person or persons would secure a mutual benefit in that usury relationship model, including but not limited to choice in conduct and protections so extending.

45.      Plaintiff states that Esther Elkaim serves the Agudath Israel of America, Chicago as the receptionist.  Esther is a family member of those parties outlined, above 28.  Plaintiff retains a repository on the Agudath Israel of America, outlined in the company of AIPAC in ECF, Doc. 45, both of which correlate directly to human trafficking.

46.      Plaintiff researched Count Elkaim Investments Corporation, associated with Count Elkaim Capital Management Corporation both sharing a registrant residing address of

9701 Collins Avenue, Bal Harbor, Florida 33154 as domestic for-profit designation, filed

February 1, 2000.  The associated names include: DE S.G. Elkaim Count and DE St. George

Elkaim Esther, open-source analysis provided Count de S.G. Elkaim, Esther D. Elkaim, Countess

De Elkaim and Esther De Elkaim with a principal address of 9601 Collins Avenue, Bal Harbor,

Florida 33154.  In addition, Count Elkaim Investment Corporation, an active business enterprise,

company designee Count Marc De S.G. Elkaim and Esther de St. George Elkaim, incorporated

March 23, 1992 with a primary address of 9701 Collins Avenue, Bal Harbor 33154, also

associated, Count Elkaim Foundation, Inc., and Count Elkaim Capital Management Corporation.

Plaintiff notes that Bal Harbor is in the same geographic location in which BCCI operated, the

mapping so too orients to the BCCI organizational structure, noting the foregoing paragraphs,

statistically significant correlations.

47.     Plaintiff states as a matter of record, Defendants, CHARLES "CHUCK"

SCHUMER, ANDREW CUOMO, LETITIA JAMES and KATHY HOCHUL, advocating in the

interest of SentosaCare, while American citizens were made to die in nursing homes, alone,

while other innocents were raped by persons employed through SentosaCare, absent protections

specifically afforded the victims under the Americans with Disabilities Act, the New York State

Human Rights Law and the Reasonable Accommodation and Disability Rights under the NYS

Human Rights Law (See https://dhr.ny.gov/system/files/documents/2022/05/nysdhr-disability-

rights-handbook-073020.pdf).  Plaintiff calls to the Honorable Court's attention ECF Docs. 45;

45-22; 45-23, to which SentosaCare is directly associated with Agudath Israel of America.

48.     Plaintiff notes that in 2019, De Sant George Elkaim filed a lawsuit in Florida, see

De Saint George Elkaim et al v. City of Miami, Case 1:19-cv-24269, simultaneously, another

matter, Elkaim v. Lotte, N.Y. Palace Hotel, Supreme Court, NY County 150124/2017, the

Plaintiff name in the foregoing case Erna De Saint George Elkaim.  Plaintiff continued research

focusing on the registrant business address of the corporations, as above.  Plaintiff states as a

matter of public record, there are 35 companies who share a registrant business address of 9701

Collins Avenue "Suite 903" Bal Harbor, Florida 33514. (See:

https://www.bizapedia.com/addresses/9701-collins-avenue-bal-harbour-fl-33154.html).  Plaintiff

states further that findings expressly provide that each such company has identical names shared

commonly in other States.  Plaintiff herein refers to ECF Doc. 45-28.

49.    In July, 2023, Caz Craffy, an employee of Monmouth Capital Management,

Monmouth County, New Jersey, formerly with Newbridge Securities Corporation, National

Securities Corporation and Joseph Gunnar & Co.  Between 2018 and 2022, Craffy bilked

honored veterans, Gold Star families, through repeated executed trades, recycled trades, without

family's consent or authorization, through these unauthorized trades he unlawfully secured for

himself nearly $1.5 million in commissions.  Plaintiff quotes U.S. Attorney Philip R. Sellinger

taken from the DailyVoice article, "the victims 'have laid the dearest sacrifice on the alter of

freedom…these families deserve our utmost respect and compassion, as well as some small

measure of financial security from a grateful nation."   Plaintiff refers to ECF Doc. 45,

irrefutable evidence to that of conspiracy theory.

50.    On July 7, 2021, the United States International Development Corporation

("DFC") chief executive officer, Adam Boehler visited Morocco under guise of exploring

opportunities to facilitate private sector investment and strengthening economic growth.  Plaintiff

was befuddled given the state of affairs in the United States, not the least of which at the time the

continued lockdowns and mandated vaccination requirement as provided in ECF Doc. 45, by

both the Defendant, JOSEPH R. BIDEN and the inclusive Defendants.  Mr. Boehler was

accompanied on his trip by Ambassador Kelley Currie, Ambassador-at-large for Global

Women's Issues at the United States State Department, and Charity Wallace, senior vice

president for Strategic Initiatives and managing director for the 2x Women's Initiative at DFC;

during their visit a roundtable forum was hosted in which the recent 2X MENA Initiative was

recognized.  At the forum, DFC announced that a $100 million fund would be created working

with the Small Enterprise Assistance Funds ("SEAF"), dedicated up to $50 million on market

opportunity and tackling endemic problems in Morocco focused innovative solutions driven by

local entrepreneurs, with direct support to small and medium enterprises ("SME's") in areas

defined as impact sectors: agriculture, healthcare, manufacturing, water and sanitation, and clean

energy.  The program highlights the DFC directed $3 Billion memorandum of understanding

("MOU") with Morocco and the new regional Prosper Africa office, forthcoming in Rabat,

building on the prior work by the United States Agency for International Development

("USAID").  The program and MOU signified the Administration's Women's Global

Development and Prosperity Initiative ("W-GPD") "to catalyze $1 Billion of investments of

projects that advance women's economic empowerment in the Middle East and North Africa."

51.     Plaintiff refers to ECF, Doc. 77-3 in which Defendant, HILLARY R. CLINTON

as Secretary of State withheld emails contained on her private email server, in and among the

3,000 emails which a statement from attorney Sidney Blumenthal, who would also serve as

counsel to Defendant WILLIAM J. CLINTON in the Monica Lewinsky lewd matter.  Plaintiff

states as a matter of record, Defendant JOSEPH R. BIDEN was Vice President of these United

States at the time of Defendants' actions herein stated.  The memo provides, "Quaddaffi's

government holds 143 tons of gold, and a similar amount of silver.  This fractional reserve was

accumulated prior to the current rebellion and was intended to be used to establish a pan-African

currency based on the Libyan golden Dinar.  This plan was designed to provide the Francophone African Countries with an alternative to the French franc ("CFA")."  Plaintiff would reference the citation, however, like many other Exhibits presented to this Honorable Court within the docket repository, the subject document has been removed from public record, receiving an error 404 prompt.

52.     In 1995, Felix Somm, former managing director of CompuServe Germany was charged with violating the German child pornography laws because of the material that CompuServe's network was transmitting to Germany, convicted in 1997 and sentenced to probation.  Somm was acquitted of the charges in 1999.

## PLAINTIFF'S STATEMENT OF HARMS

## SOVEREIGN ELECTIONS:

53.     Plaintiff realleges and incorporates by reference all prior paragraphs of this responsive pleading and the paragraphs as fully set forth herein.

54.     Under the *Anderson-Burdick* balance test, in considering a challenge to a state election law, in this case all and inclusive voting machine apparatus associated with the election process including but not limited to voter's ballot entry, machine tabulation, and audit be manually conducted, the Court must carefully balance the character and magnitude of injury to the First and Fourteenth Amendment Rights to the Plaintiff who seeks to vindicate against "the precise interests put forward by the State as justification for the burden imposed by its rule,; taking into consideration 'the extent to which those interests make it necessary to burden the Plaintiff's Rights.'" (See *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)).

55.     Unless Plaintiff is granted the relief requested herein, millions of voters' Right to

vote, including Plaintiff's, will be severely injured, made to be alien and removed from all sovereignty of and belonging to the voter through the interference made accessible by the election software and hardware manufacturers, hosts to the election of these United States; including but not limited to three (3) foreign nation-states, the United Arab Emirates, Japan and South Africa.

56.     Plaintiff states that the ongoing border crisis in the United States, subject of Plaintiffs Amended Complaint, ECF Doc. 45, and resulting from the dereliction of the Department of Homeland Security, the Executive Branch and the Department of Justice with an unknown true and factual count of persons unlawfully crossing the border which has created a crisis in elections so too threatening the sovereignty of these United States.  Accordingly, strict voter identification of sovereign citizens of these United States demands enforcement.

57.     Title 18 §§ 245(b)(1)(A); (a)(1) and (b)(1)(A) provide strict protection of federal elections.  These federal statutes are further fortified under Executive Order 13848 which expressly protects these United States from foreign encroachment "in who or in substantially part, outside the United States to interfere in or undermine public confidence in United States elections, including through the unauthorized accessing of election and campaign infrastructure or the covert distribution of propaganda and disinformation, constitutes an unusual and extraordinary threat to the national security and foreign policy of the United States…(Section 1.(ii))if any foreign interference involved activities targeting the infrastructure of, or pertaining to, a political organization, campaign, or candidate, the extent to which such activities materially affected the security or integrity of that infrastructure, including by unauthorized access to, disclosure or threatened disclosure of, or alteration or falsification of, information or data."[5]

---

[5] Trump, Donald J. Executive Order 13848-"Imposing Certain Sanctions in the Event of Foreign Interference in a United States Election"  September 12, 2018.  Accessed https://www.presidency.ucsb.edu

58.     Plaintiff states that the covert actions of the inclusive Defendants surreptitiously and unequivocally impose on the sovereign Civil Rights of the Plaintiff under Title 18 § 494. Plaintiff has provided proofs in evidence form expressly outlined in ECF Docs. 73; 73-1; 73-2; 73-4; 73-4; 73-5; 73-6; 73-7; and 73-8, evidencing that all and inclusive election software associated with the United States election, from end to end, has been knowingly, covertly and overtly compromised by opaque ownership with corporate registration, year-end reporting proving to *foreign* entities in and among the inclusive software manufacturers.  The seditious action exiles the Plaintiff's sovereign Rights, including but not limited to Equal Protections of the 14th Amendment; the Right to Life, Liberty and Property – expressly protected apart from State deprivation; the individual Rights enumerated in and among the Bill of Rights and substantive due process.

59.     Plaintiff states that the covert actions of the inclusive Defendants have resulted in overt interference in the United States elections contractual host entity, Microsoft, for which the elections access via the Cloud Azure portal.  As Plaintiff evidenced in and among the Motion for Injunctive Relief and supporting documents, Microsoft has executed contracts with G42, a wholly government owned enterprise of the United Arab Emirates (April 16, 2024); a contract with the government of Kenya with interface in and among Microsoft and G42 (May 22, 2024); and Hitachi, a Japanese corporate entity (June 3, 2024).  The foregoing foreign entities represent, a foreign government, a foreign government owned enterprise and a foreign enterprise; all three partner collaboratives will be hosted within the Microsoft Azure Cloud platform which hosts the sovereign elections of these United States.  Plaintiff states a clear and present danger manifested through economic espionage, conducted covertly and overtly, through third-party entities in and among public private partnerships, apart from public bid requirements while averting

transparency, thereafter, consummated with taxpayer funds, the Plaintiff's funds.

60.     Plaintiff states gross violations of Article II, Section 2 Case or Controversy Clause, violations which foreclose Plaintiffs constitutional Right to Life, Liberty and Property citing Executive action, made knowingly covert, directing the DOJ and Judiciary in acts which subvert the Constitution, Bill of Rights and Declaration of Independence each of which are covenants to the People, the Plaintiff, her Rights unalienable, informed by God, Almighty, these being the Laws of Nature and of Nature's God.  Defendant, JOSEPH R. BIDEN, orchestrated by his hand and oration the express imposition and usurpation of the Rights of Donald J. Trump directing his judicial designees, herein outlined while not inclusive, in the nullification of the 5th Amendment Due Process Clause, and the 14th Amendment Equal Protections Clause.  "The Constitution, and the laws made in pursuance thereof, and all Treaties made under the authority of the United States shall be the supreme law of the land; that the Judges of every State shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding; that the Judicial power of the United States shall extend to all cases in law and equity arising under the Constitution, the laws of the United States and Treaties made under their authority…"[6] As a consequence to the Defendant's actions to usurp Executive authority, squandering the 1st Amendment Rights of the Executive's political opponent, candidate Donald J. Trump, Plaintiff's Rights, by extension, have been foreclosed including Plaintiff's sovereign Rights under Title 18 Section 245, interfering with a federal election by threat of force to willfully injure, intimidate, or interfere with 'any person because he is or has been, or in order to intimidate such persons … from participating, without discrimination on account of race, color, religion or national origin," in voting or voting -related activities.  Defendants' own oration affirms his traverse on Plaintiff's

---

[6] Madison, James. "Correspondence to Edward Everitt" August 28, 1830.  Accessed June 3, 2024.  Founders Online

Rights, unconstitutional in every way.

61.     Plaintiff claims further infringement of her Rights under Title 18 Section 245, citing discrimination in jury selection, further imposing on Plaintiff's unimpeded Right. Defendant, JOSEPH R. BIDEN, through his surrogate and designee, Judicial activist, Judge Merchan, knowingly and discriminatorily selected jury members so as to steer a determinative outcome in a trial without a victim, Ms. Daniels having long ago provided written testimony that the allegations were unsubstantiated and not true.  As a direct consequence to the Defendant's actions, Plaintiff's Rights under the Constitution have been deemed a hostage to a political tyrant.  These pervasive infringements by the Defendant are further exacerbated, hemorrhaging, when this Honorable Court is made aware that simultaneous effort by the Defendant to likewise usurp the trial of Hunter Biden, the Defendant's son.

62.     Plaintiff states that the knowing, calculated and cunning actions, each overt as covert orchestrated by the inclusive Defendants, from the year of our Lord, 2000, November and the elections so associated with each subsequent year thereafter, have been knowingly compromised by foreign entities, multinational corporations and global parties with each such entities so too knowing of the trickery and deceitful actions of the inclusive Defendants, thus biding their time as though pirates at open sea.  The inclusive Defendants have usurped and coopted every ounce of trust that the Plaintiff afforded government and, given to the political capital entrenched in and among the Lebanon Borough officials, Plaintiff righteous disgust in the comprehensive manifestation of the schema is immeasurable.  The Rights to which the Plaintiff so carefully protected, conducting herself in the utmost honor in vocation and civic capacities while comporting to unconstitutional laws and regulations so under false pretense of the inclusive Defendants' manifesto of subversion of these United States is beyond reproach.

63.      Plaintiff states a conspiratorial overt and covert intent with evidenced actions proving malevolence by the inclusive Defendants, gross violations under 18 U.S.C. §371; defrauding by economic espionage, creating an insolvency while transacting the Plaintiff's sovereignty, a covenant of God's decree and making, free will in the pursuit of Life, Liberty and Property.  That while the inclusive Defendants shuttered the Church, their sect toiled.  While our children struggled in an adaptive learning environment forced upon them, their sect toiled. While our veterans were left standing and mortally wounded, the thirteen, their sect toiled. While Laken Riley, an innocent had every hope for tomorrow, her life stolen, their sect toiled. The Founders, so firm in their exacting words that statesmen may find harmony, not in the absence of difference but made better as statemen for the iron sharpening iron debate; here there was no debate, there was pure, unadulterated evil in Jesuit cloak.  So determined in their primary covert focus, that every single facet of government with that exception was literally put on hold, See ECF Doc. 77, ¶¶21-23

**TRAFFICKING IN PERSONS:**

64.      Plaintiff realleges and incorporates by reference all prior paragraphs of this responsive pleading and the paragraphs as fully set forth herein.

65.      Plaintiff states the moral deprivation displayed through Executive action, judicial activism and overt statutory usurpations traversed by the inclusive Defendants has sought to eradicate the most sacred of all Plaintiff's moral conscience which sustains her Rights to Life, Liberty and Property.  These actions have sought to engineer a morally shift from Judeo-Christian values of moral code expectations towards that which the inclusive Defendants fester within themselves; these actions were done to condition society much as has been witnessed historically in third-world Countries, in large part by the inclusive Defendants, their designees

and covenant associates.  In a short breath of time, they have introduced Baalesque characteristics, normalizing wholly unhealthy constructs to the youngest of God's creation, simultaneously fostering behavioral norms the likes of heathens while stroking the most vulnerable to enjoin their snare all with unspoken and full knowledge of their schema in the back of their minds as they market for the merchant of souls.  Preparing as they contrive, having every knowledge of the dysfunction while the external parties to their covenant, foreign nation-states, look on with full knowledge retaining disturbing silence.

66.    Plaintiff states that the inclusive Defendants have formed contracts unspoken, undocumented and through which they have taken action to realize by upholding the most heinous persons from among them, living in society to aid in social engineering, absent concern for silent, victims who do not report; watching, they shirk all moral responsibility inserting humanistic personal choice while retaining focus on fruition of the silent contract.  For years, Plaintiff was confounded, believing, academic to the contrary, that governmental branches omitting investigative details by accident or missed a rung on the ladder as they climb the tree of knowledge; nothing could be further from the truth, they are not interested in God's justice with balance in equities; retaining their cultural paradigms written by the ancients, their preference to chaos ensuring they are not discovered for who and what they are.  Plaintiff claims harm, tangible in every way, the expectation of the pursuit of happiness which the inclusive Defendants have sought to squander through the foregoing actions, they care nothing of others.

67.    Plaintiff claims harm resulting from the Defendants, ANDREW CUOMO, LETITIA JAMES, CHARLES "CHUCK" SCHUMER, KATHY HOCHUL, PHILIP MURPHY, JUDITH PERSICHILLI, SEJAL HATHI and MATTHEW PLATKIN as regards conflict and infringement to Plaintiff's sovereign protection and entitlement to all privileges and immunities

under the 14th Amendment, Article IV, Section 2 concerning the care, treatment and absence of

protections resulting from SentosaCare and the nursing home deaths resulting from COVID-19,

see ECF Doc. 45.  Plaintiff has included and reiterates here, SentosaCare was found guilty of

trafficking in persons.

68.     Plaintiff states gross infringement of her Rights of Equal Protections under the

14th Amendment resulting from activities associated with conspiracy to defraud these United

States through deceit, craft and trickery in the orchestrated Bills of Attainder contracted and

consummated with election software and hardware companies, each front companies to foreign

entities.  In its most audacious manifestation, Microsoft contracted with G42 and Kenya as well a

private Japanese company, Hitachi, with functions of the inclusive contractual work product

operable on the same cloud-based, Azure program in which the sovereign United States election

is hosted.  Article  1, Section 10, Clause 1 being clear, "No State shall enter into any Treaty,

Alliance, or Confederation; grant letters of Marque and Reprisal; coin money; emit Bills of

Credit; make any Thing but gold and silver Coin of Tender in Payment of Debts; pass any Bill of

Attainder, ex post facto Law, or Law impairing the Obligation of Contracts, or grant any Title of

Nobility" (Constitution.congress.gov).  Plaintiff has evidenced economic espionage with the sell

off of United States business entities with the aid of frontmen, Equity Partners.  Plaintiff has

further evidenced the crisis mounting in the commercial backed mortgage security market.

Plaintiff has further evidenced the sale of real property to foreign nation-states, including the

UAE.  Plaintiff asserts to this Honorable Court that the inclusive Defendants, are consenting to

and have taken action in advancing the manifestation of the United States, itself, becoming a

shell entity.

69.     Absent the Court's action affirming Plaintiff's request for Injunctive Relief,

Plaintiff's most sacred of Rights, that of her duties superior to those arising from any human relation, religious liberty and allegiance foremost to her Creator, God.  These Rights which resolve back to the Creator are inalienable, affirmed in triune harmony; Father, Son and Holy Ghost and, secondarily to neighbor in civil discourse within dominion, so too a gift, harmonious with government by covenant of the Founders drafted to paper, the Constitution, Bill of Rights and Declaration of Independence, inspired by God, triune in kind.  Violation or usurpation of these Rights would mean to abolish one triune or the other, a foreclosure no less than attempted at Calvary.

70.     Plaintiff analyzed Count De S.G. Elkaim who has owned and operated the following organizations.  The shell corporations could not be located through standard open-source search.  There are also very limited records for the non-profit organization.  However, there are a significant number of public complaints regarding fraudulent fundraising, phone scams.  Plaintiff claims harm to public trust having every reason to believe the organization are associated with the schema to influence public sentiment.

a.  Count Elkaim Foundation, Inc. (Incorporated:  1994) 6-persons associated.

b.  Morocco Finance Corporation (Incorporated: 1993) 5-persons associated.

c.  Count Elkaim Investments Corporation (Incorporated: 1992) 5-persons associated.

d.  Count Elkaim Capital Management Corporation (Incorporated:  2000) 2-persons associated.

e.  March 21, 2021, Crown Heights, New York.  Dating back as far as 2014, Esther Rochel, daughter of Count and Countess Maklouf Elkaim has been swindling entire communities of money under the guise of Jewish projects, the stories

follow AIPAC's inception very closely; claiming to help Jewish charities –

philanthropic endeavors and funding various Jewish projects, all the while living

off of the funds.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment:

A.  Declaring that in the context of foreign election interference, in violation of Title 18 §

245 and Executive Order 13848, the federal election of 2024 and all elections from

that point forward be conducted with paper ballots, hand counted and that citizen

voters provide photo voter identification (ID) at the time of voting.

B.  Declaring elections be conducted through early voting and day of voting, Election

Day with all mail-in ballots postmarked or other USPS marking reflecting mailed by

Election Day.

C.  Award Plaintiff costs, expenses, and reasonable attorneys' fees pursuant to, inter alia,

42 U.S. C. § 1988 and other applicable laws; and

D.  Granting such other relief as the Court deems just and proper.

**CERTIFICATION**

I HEREBY CERTIFY that I filed today, Wednesday, June 5, 2024, the foregoing with the Federal Clerk of the Court for the United Stated District Court, District of New Jersey, which will send notification of such filing to all parties registered for this case, including the Defendant's counsel.


/s/   Mary B. Logan
Mary Basile Logan
*Pro-Se* Plaintiff



**cc:  All Counsel of Record (Via ECF)**