Mary Basile Logan
Post Office Box 5237
Clinton, New Jersey 08809
Email: Trino@trinops.com

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW JERSEY

MARY BASILE LOGAN, individually and on behalf          |
of those similarly situated, *Pro-Se*;                 |
                                                       |
               Plaintiff,                                         |
                                                       |
MERRICK GARLAND, in his official capacity              |
Attorney General, Department of Justice;               |
                                                       |
LLOYD AUSTIN, III, in his official capacity as the     |
Secretary, Department of Defense;                      |
                                                       |
WILLIAM J. BURNS, in his official capacity as the      |
Director, Central Intelligence Agency;                 |
                                                       |
CHRISTOPHER A. WRAY, in his official capacity          |
as the Director of the Federal Bureau of Investigation; |
                                                       |
DENIS RICHARD MCDONOUGH, in his official               |
capacity as Secretary of Veterans Affairs;             |
                                                       |
ALEJANDRO MAYORKAS, in his official capacity as        |
Secretary, U.S. Department of Homeland Security;       |
                                                       |
MARCIA L. FUDGE, in her former capacity as Secretary   |
U.S. Department of Housing and Urban Development;       |
                                                       |
ROBERT CALIFF, in his capacity as Commissioner,        |
Food and Drug Administration;                          |
                                                       |
WILLIAM J. CLINTON, in his official capacity as the    |
former President of the United States of America;       |
                                                       |
HILLARY R. CLINTON, in her official capacity as        |
former Secretary of State for the United States of America; |

THOMAS KEAN, Sr., in his former capacity as Chairman
9/11 Commission;

ROBERT MUELLER, in his former capacity as Director
of the Federal Bureau of Investigation;

JAMES COMEY, in his former capacity as Director
of the Federal Bureau of Investigation;

CHRISTOPHER J. CHRISTIE, in his capacity as the
former-Governor of New Jersey;

RICHARD "DICK" CHENEY, in his former capacity
as Vice President of the United States;

ELIZABETH "LIZ" CHENEY, in her former capacity
as Chair, January 6 Commission;

JOHN KERRY, in his official capacity as U.S. Special
Presidential Envoy for Climate;

GEORGE W. BUSH, in his former capacity as
President of the United States;

BARACK HUSSEIN OBAMA, in his former capacity as
President of the United States;

LORETTA LYNCH, in her former capacity as
United States Attorney General;

JAMES BAKER, in his former capacity as White House
Chief of Staff;

ERIC HOLDER, in his former capacity as United States
Attorney General;

JOSEPH R. BIDEN, in his official capacity as President,
his former capacities as Vice President and Senator, of
these United States;

JOHN ASHCROFT, in his former official capacity,
as United States Attorney General;

JAMIE GORELICK, in her official capacity, Homeland
Security Advisory Council member;

**CIVIL DOCKET: 3:24-CV-00040
ZNQ-TJB**

**ORAL ARGUMENT REQUESTED**

NANCY PELOSI, in her official capacity as
Congresswoman (CA);

GEORGE NORCROSS, in his capacity as Chairman,
Cooper University Medical Systems;

PHILIP MURPHY, in his official capacity as Governor
of New Jersey, and as former Chair of the National
Governors Association (NGA);

TAHESHA WAY, in her former capacity as Secretary
of State, as former President of the National Association
of Secretaries of State, and her current capacity as
Lt. Governor, New Jersey;

JUDITH PERSICHILLI, in her official capacity as then-
Commissioner of Health for the State of New Jersey;

SEJAL HATHI, in her official capacity as Deputy
Commissioner for Public Health Services;

MATTHEW PLATKIN, in his official capacity as
Attorney General of the State of New Jersey;

KATHY HOCHUL, in her official capacity as Governor
of New York;

ANDREW CUOMO, in his former capacity as Governor
of New York and his capacity as Vice-Chair of the National
Governors Association;

LETITIA JAMES, in her capacity as Attorney General of
the State of New York;

SUSAN RICE, in her official capacity as United States
Domestic Policy Advisor;

ADAM SCHIFF, in his official capacity as Congressman,
of the State of California;

CHARLES "CHUCK" SCHUMER, in his official
capacity as Senator for the State of New York;

XAVIER BECERRA, in his official capacity as
Secretary of Health and Human Services;

JANET YELLEN, in her official as Secretary of
the United States Treasury;

ROD ROSENSTEIN, in his former capacity as United
States Deputy Attorney General;

HUMA ABEDIN, in her former capacity as vice
Chair of Hillary Clinton;

DEBBIE WASSERMAN SCHULTZ, in her current
capacity as U.S. Representative, (FL-25);

BILL NELSON, in his official capacity as Administrator
of NASA;

OCCIDENTAL PETROLEUM;

UNITED HEALTHCARE;

DEMOCRAT NATIONAL COMMITTEE;

REPUBLICAN NATIONAL COMMITTEE;

JAMES PITTINGER, in his official capacity as Mayor
of Lebanon Borough, State of New Jersey;

LISA SELLA, in her official capacity as Deputy Clerk,
Lebanon Borough, State of New Jersey;

ROBERT JUNGE, in his official capacity as Municipal
Co-Chair, Republican Party, Lebanon Borough, State of
New Jersey;

JOHN DOES (1-100)

JANE DOES (1-100)
                    Defendants.

_____

## 2nd SUPPLEMENT TO
## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION HEARING DATE,
## PRELIMINARY INJUNCTION, AND PERMANENT RESTRAINING ORDER

Plaintiff, Mary Basile Logan, respectfully moves this Court for a preliminary injunction as set forth below and for the reasons set out in the accompanying Brief in Support of Plaintiff's Motion for Preliminary Injunction Hearing Date and Permanent Restraining Order.  Fed. R. Civ. P. 65(a).  Because there are only legal questions at issue, Plaintiff respectfully requests that this Court consolidate the preliminary injunction hearing with the trial on the merits and rule on the merits in accordance with Fed. R. Civ. P. 65(a)(2).  Plaintiff provides this supplement to the Motion scheduled before the Honorable Court on September 5, 2024, ECF Doc. 105; 104; 104.1; 106; 106-1; 106-2; 106-3; 106-4; and 107.

WHEREFORE, Plaintiff respectfully request the Court grant their Motion and issue a preliminary injunction pending a decision on the merits of Plaintiff's claims in this matter. Plaintiff confirms scheduled hearing date set by the Honorable Court for October 7, 2024.


Dated:          September 16, 2024

Respectfully submitted,

/s/ Mary B. Logan

Mary B. Logan
Plaintiff, *Pro-Se*
Post Office Box 5237
Clinton, New Jersey 08809

Mary Basile Logan
Post Office Box 5237
Clinton, New Jersey 08809
Email:  Trino@trinops.com

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW JERSEY

_____

| MARY BASILE LOGAN, individually and on behalf | |
| of those similarly situated, *Pro-Se*; | |
| | |
| Plaintiff, | |
| | |
| MERRICK GARLAND, in his official capacity | |
| Attorney General, Department of Justice; et al. | |
| | |
| Defendants. | **CIVIL DOCKET: 3:24-CV-00040 ZNQ-TJB** |
| | |
| | **ORAL ARGUMENT REQUESTED** |

**SUPPLEMENT TO OPENING BRIEF IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION HEARING DATE,**
**PRELIMINARY INJUNCTION, AND PERMANENT RESTRAINING ORDER**

Mary Basile Logan
Plaintiff, *Pro-Se*
Post Office Box 5237
Clinton, New Jersey 08809
(908) 200-7294
Email:  Trino@trinops.com

Dated:  September 16, 2024

## SUPPLEMENT TO OPENING BRIEF

1.      On January 4, 2024, Plaintiff filed this lawsuit alleging that Defendants' collective actions, moving as co-conspirators to meet their ends, manifest in events abhorrent to the Constitution and to the inalienable Rights of the Plaintiff each taken under the color of law, depriving her of rights, privileges, or immunities in violation of 42 U.S.C. § 1983, the First and Fourteenth Amendments to the Constitution, and the Equal Protections Clause.  Plaintiff now moves for a preliminary injunction. Plaintiff states that notice to the adversarial party and not perfected formal service is needed to assert jurisdiction to issue an injunction (*Whirlpool Corp. v. Shenzhen Sanlida Elec. Tech. Co., Ltd.,* Case No. 22-40376 (5th Cir. Aug. 25, 2023) (Barksdale, Southwick, Higginson, JJ.))  Plaintiff restates the inclusive claims, inclusive of harms and remedy as set forth in the amended complaint and supplemental submissions with Exhibits so accompanying as set forth in ECF 45; 45-1; 45-2; 45-3; 45-4; 45-5; 45-6; 45-7; 45-8; 45-9; 45-10; 45-11; 45-12; 45-13; 45-14; 45-15; 45-16; 45-17; 45-18; 45-19; 45-20; 45-21; 45-21; 45-22; 56; 46; 46-1; 46-2; 55; 55-1; 55-2; 55-3; 55-4; 55-5; 73; 73-1; 73-2; 73-3; 73-4; 73-5; 73-6; 73-7; 73-8; 105; 104-1; 105; 106; 106-1; 106-2; 106-3; 106.4; 107  in support of the certified statements of harm herein.

2.      The foregoing Defendants MERRICK GARLAND, LLOYD AUSTIN, WILLIAM J. BURNS, CHRISTOPHER A. WRAY, DENIS MCDONOUGH, ALEJANDRO MAYORKAS, MARCIA FUDGE, ROBERT CALIFF,  WILLIAM J. CLINTON, HILLARY R. CLINTON, THOMAS KEAN SR., ROBERT MUELLER, JAMES COMEY, RICHARD "DICK" CHENEY, ELIZABETH "LIZ" CHENEY, JOHN KERRY, GEORGE W. BUSH, BARACK HUSSEIN OBAMA, LORETTA LYNCH, JAMES BAKER, ERIC HOLDER, JOSEPH R. BIDEN, JOHN ASHCROFT, JAIME GORELICK, NANCY PELOSI, GEORGE NORCROSS, KATHY HOCHUL, ANDREW CUOMO, LETITIA JAMES, SUSAN RICE, ADAM SCHIFF, CHARLES "CHUCK" SCHUMER,

XAVIER BECERRA, JANET YELLEN, ROD ROSENSTEIN, HUMA ABEDIN, DEBBIE WASSERMAN SCHULTZ, BILL NELSON, OCCIDENTAL PETROLEUM, UNITED HEALTHCARE, the DEMOCRAT NATIONAL COMMITTEE, the REPUBLICAN NATIONAL COMMITTEE, DEBBIE WASSERMAN SCHULTZ; JAMES PITTINGER, LISA SELLA; CHRISTOPHER J. CHRISTIE, PHILIP D. MURPHY, TAHESHA WAY, JUDITH PERSICHILLI, SEJAL HATHI, MATTHEW PLATKIN and ROBERT JUNGE, hereinafter referred to as "inclusive Defendants." Plaintiff had made application to the Honorable Court to include LISA MONACO, MICROSOFT, BILL GATES, WARREN BUFFETT, MIKE PENCE, CRESCENT CAPITAL, KAMALA HARRIS, MITT ROMNEY, HARVARD ENDOWMENT, JEREMY B. BASH, DICK DURBIN, GAVIN NEWSOM, GRANT VERSTANDIG, GRETCHEN WHITMER, HANSJORG WYSS and JARED SCHUTZ POLIS co-colluders who covertly labored collectively to exact a predetermined outcome at the expense of Plaintiffs' sovereign Rights as set forth below, inclusive of harms.

## 2ND SUPPLEMENT TO OPENING BRIEF

### SUBVERSION OF THE UNITED STATES

3.      Plaintiff restates claims alleged in ECF Doc. 45 ¶ 66 – 67, 70, inclusive.

4.      Plaintiff restates claims alleged in ECF Doc. 106, ¶ 49.

5.      Plaintiff restates repository held of 4,200 990 records of approximately 1,738 non-profit entities.

6.      Plaintiff states Defendant JOSEPH R. BIDEN, KAMALA HARRIS, Mitt Romney in and among the inclusive Defendant, including but not limited to those pending confirmation by the Honorable Court, LISA MONACO, MICROSOFT, BILL GATES, WARREN BUFFETT, MIKE PENCE, CRESCENT CAPITAL, KAMALA HARRIS, MITT ROMNEY, HARVARD

ENDOWMENT, JEREMY B. BASH, DICK DURBIN, GAVIN NEWSOM, GRANT VERSTANDIG, GRETCHEN WHITMER, and JARED SCHUTZ POLIS, the foregoing parties, having affirmed the unlawful impeachments of the President of United States, intent of character assassination in advance of the federal election, the very same actions taken in New York to ensure he hold the unlawfully secured smear on his otherwise impeccable record, labeled a "felon" no less the assassination of his stellar reputation as the impeachments.  These inclusive actions violate the sovereign Rights of the candidate himself and, so too, violate the Plaintiff sovereign Rights.

7.      Plaintiff states Defendant, JOSEPH R. BIDEN, KAMALA HARRIS, Mitt Romney in and among the inclusive Defendant, including but not limited to those pending confirmation by the Honorable Court, LISA MONACO, MICROSOFT, BILL GATES, WARREN BUFFETT, MIKE PENCE, CRESCENT CAPITAL, KAMALA HARRIS, MITT ROMNEY, HARVARD ENDOWMENT, JEREMY B. BASH, DICK DURBIN, GAVIN NEWSOM, GRANT VERSTANDIG, GRETCHEN WHITMER, and JARED SCHUTZ POLIS, the inclusive parties colluded against the sovereign Rights of the American People in withholding CARES Act funding so as to foster, create and exacerbate urgency so as to influence the vulnerability of human life, welfare and housing through the subversion of existing Executive Authority granted under the Constitution to Donald J. Trump.

8.      Plaintiff states that on August 8, 2022, the inclusive Defendants turned the Constitution inside out and upside down, by the hand of two political opponents, JOSEPH R. BIDEN and KAMALA HARRIS, the Plaintiff and every sovereign citizen of these United States watched in horror as privacy and the Rights against tyrannical, unlawful search and seizure were torn and quartered, a public display intent of embarrassment for the guests as much the principal residents, Donald J. Trump, Melania Trump and Baron Trump.  In furtherance of ¶ 28, herein, Plaintiff states the only East and West in these United States meet the salt water of the Pacific and the Atlantic, created by two

hands that once were forced stay by nails pointing to His whole of dominion, Berlin we are not nor will these United States ever be.  The directives scribed on paper, a warrant, so violated the sanctity of private family solemness, slicing through the scent of fresh-mowed grass and folded linen as though the Defendants JOSEPH R. BIDEN and KAMALA HARRIS themselves had put their hands in the private thoughts and items of the Trump family.

a.    Today, we inch closer as with each passing day the inclusive Defendants' rhetoric and political bondage has stirred in the People an new understanding, love your neighbor as self and know their story for it could so too be yours; when the co-Defendant, FBI traversed the lawn in Florida, it might well have been the Plaintiff's in New Jersey, when they touched private items, it might well have been the Plaintiffs'.  The interview is OVER, it took the course of choice but it is well established; the inclusive Defendants stand not for democracy but for communism and tyranny, words spoken by action and deed.

9.    Plaintiff states Defendant JOSEPH R. BIDEN, KAMALA HARRIS, Mitt Romney in and among the inclusive Defendant, including but not limited to those pending confirmation by the Honorable Court, LISA MONACO, MICROSOFT, BILL GATES, WARREN BUFFETT, MIKE PENCE, CRESCENT CAPITAL, KAMALA HARRIS, MITT ROMNEY, HARVARD ENDOWMENT, JEREMY B. BASH, DICK DURBIN, GAVIN NEWSOM, GRANT VERSTANDIG, GRETCHEN WHITMER, and JARED SCHUTZ POLIS, having affirmed acts of Congress in the appropriate of funds while expressly withholding knowledge of the co-collusion in and among NGO organizations intent of subversion of these United States.  These actions sought to implicate unwilful parties, knowledge withheld them so as to deceive at the time of casting their floor vote, See:  https://www.congress.gov/bill/117th-congress/house-bill/1319/all-actions?overview=closed&q=%7B%22roll-call-

vote%22%3A%22all%22%7D.

10.     Plaintiff states Defendant JOSEPH R. BIDEN, KAMALA HARRIS, Mitt Romney in and among the inclusive Defendant, including but not limited to those pending confirmation by the Honorable Court, LISA MONACO, MICROSOFT, BILL GATES, WARREN BUFFETT, MIKE PENCE, CRESCENT CAPITAL, KAMALA HARRIS, MITT ROMNEY, HARVARD ENDOWMENT, JEREMY B. BASH, DICK DURBIN, GAVIN NEWSOM, GRANT VERSTANDIG, GRETCHEN WHITMER, and JARED SCHUTZ POLIS the foregoing parties knowingly collaborated while withholding their knowledge so as to deceive the taxpaying public, Plaintiff among them, discriminating based on race to ensure appropriation of funds under the American Rescue Plan with Defendants, JOSEPH R. BIDEN and KAMALA HARRIS while affirming through ¶ 8, above, that Defendant, KAMALA HARRIS would retain the Constitutional authority to vote on Amendment Number: S.Amdt. 888 to S.Con.Res. 5, securing and affirming the forecast of NGO funding, with such record reflective of the Vice President casting the tie vote.

11.     Plaintiff states Defendant, JOSEPH R. BIDEN, ALEJANDRO MAYORKAS, KAMALA HARRIS, Mitt Romney in and among the inclusive Defendant, including but not limited to those pending confirmation by the Honorable Court, LISA MONACO, MICROSOFT, BILL GATES, WARREN BUFFETT, MIKE PENCE, CRESCENT CAPITAL, KAMALA HARRIS, MITT ROMNEY, HARVARD ENDOWMENT, JEREMY B. BASH, DICK DURBIN, GAVIN NEWSOM, GRANT VERSTANDIG, GRETCHEN WHITMER, and JARED SCHUTZ POLIS, having given aid and comfort, collaborating, training and hosting subversive parties with whom they have cooperated and garnered fiscal holding through such collaboration, exceeding consent and affirming collusion with intent of forecasting and outcome.

12.    Plaintiff audited the 990 returns of ViVe, Denver, Colorado, d/b/a ViVeWellness.org, for years reflected 2019 and 2023, date stamped received in Ogden, Utah on July 6, 2020 and those of 2022, date stamp omitted, as is consistent among all and inclusive 501c3 fiscal records secured through open-source.

13.    Plaintiff audited the 2018, 990EZ ViVe tax return record secured through open-source which affirms that organization stated of their own hand, Part V, #46, "Did the organization engage, directly or indirectly, in political campaign activities on behalf of or in opposition to candidates for public office?"  Plaintiff states that the subject organization's designee marked "No" of their own hand, by pen.

14.    Plaintiff audited the 2018, 990 EZ ViVe tax return record secured through open-source fiscal records of grants received, as below, receiving $86,880.00.  LinkedIn denotes the organization was established in 2015, does not correlate with 990 tax records.

Schedule A (Form 990 or 990-EZ) 2019            Page **2**

**Part II**   **Support Schedule for Organizations Described in Sections 170(b)(1)(A)(iv) and 170(b)(1)(A)(vi)**
(Complete only if you checked the box on line 5, 7, or 8 of Part I or if the organization failed to qualify under Part III. If the organization fails to qualify under the tests listed below, please complete Part III.)

**Section A. Public Support**

| Calendar year (or fiscal year beginning in) ▶ | (a) 2015 | (b) 2016 | (c) 2017 | (d) 2018 | (e) 2019 | (f) Total |
|---|---|---|---|---|---|---|
| 1   Gifts, grants, contributions, and membership fees received. (Do not include any "unusual grants.") | | | | 86,880 | 118,619 | 205,499 |
| 2   Tax revenues levied for the organization's benefit and either paid to or expended on its behalf | | | | 0 | | 0 |
| 3   The value of services or facilities furnished by a governmental unit to the organization without charge | | | | | | |
| 4   **Total.** Add lines 1 through 3 | | | | 86,880 | 118,619 | 205,499 |
| 5   The portion of total contributions by each person (other than a governmental unit or publicly supported organization) included on line 1 that exceeds 2% of the amount shown on line 11, column (f) | | | | | | 25,993 |
| 6   **Public support.** Subtract line 5 from line 4 | | | | | | 179,506 |

**Section B. Total Support**

| Calendar year (or fiscal year beginning in) ▶ | (a) 2015 | (b) 2016 | (c) 2017 | (d) 2018 | (e) 2019 | (f) Total |
|---|---|---|---|---|---|---|
| 7   Amounts from line 4 | | | | 86,880 | 118,619 | 205,499 |
| 8   Gross income from interest, dividends, payments received on securities loans, rents, royalties, and income from similar sources | | | | 0 | | 0 |
| 9   Net income from unrelated business activities, whether or not the business is regularly carried on | | | | 0 | | 0 |
| 10   Other income. Do not include gain or loss from the sale of capital assets (Explain in Part VI.) | | | | 86,880 | 118,619 | 205,499 |
| 11   **Total support.** Add lines 7 through 10 | | | | | | |
| 12   Gross receipts from related activities, etc. (see instructions) | | | | | 12 | |
| 13   **First five years.** If the Form 990 is for the organization's first, second, third, fourth, or fifth tax year as a section 501(c)(3) organization, check this box and **stop here** | | | | | | ▶ ☑ |

**Section C. Computation of Public Support Percentage**

| | | |
|---|---|---|
| 14   Public support percentage for 2019 (line 6, column (f) divided by line 11, column (f)) | 14 | 87.3 % |
| 15   Public support percentage from 2018 Schedule A, Part II, line 14 | 15 | 81.59 % |

16a   **33 1/3% support test—2019.** If the organization did not check the box on line 13, and line 14 is 33 1/3% or more, check this box and **stop here.** The organization qualifies as a publicly supported organization   ▶ ☐

b   **33 1/3% support test—2018.** If the organization did not check a box on line 13 or 16a, and line 15 is 33 1/3% or more, check this box and **stop here.** The organization qualifies as a publicly supported organization   ▶ ☐

17a   **10%-facts-and-circumstances test—2019.** If the organization did not check a box on line 13, 16a, or 16b, and line 14 is 10% or more, and if the organization meets the "facts-and-circumstances" test, check this box and **stop here.** Explain in Part VI how the organization meets the "facts-and-circumstances" test. The organization qualifies as a publicly supported organization   ▶ ☐

b   **10%-facts-and-circumstances test—2018.** If the organization did not check a box on line 13, 16a, 16b, or 17a, and line 15 is 10% or more, and if the organization meets the "facts-and-circumstances" test, check this box and **stop here.** Explain in Part VI how the organization meets the "facts-and-circumstances" test. The organization qualifies as a publicly supported organization   ▶ ☐

18   **Private foundation.** If the organization did not check a box on line 13, 16a, 16b, 17a, or 17b, check this box and see instructions   ▶ ☐

Schedule A (Form 990 or 990-EZ) 2019

15.     Plaintiff audited the 2023, 990 ViVe tax return record secured through open-source which affirms that organization stated of their own hand, Part IV, #3, "Did the organization engage, directly or indirectly, in political campaign activities on behalf of or in opposition to candidates for public office?" Plaintiff states that the subject organization's designee marked "No" of their own hand, by pdf/computer aided entry.

16.     Plaintiff audited the 2023, 990 EZ ViVe tax return record secured through open-source fiscal records of grants received, as below, receiving $6,224,770.

17.     Plaintiff audited the corporate registration of the principal ViVe associate who is 2019, was the only party to garner income from the 501c3, Yolanda Casas.  Plaintiff states that open-source records provide her employer as Neuroelectrics Corporation originally registered as a Cambridge, Massachusetts domestic for profit entity on March 21, 2013.  Plaintiff states, subsequent registrations made as below:

a.      Neuroelectrics, Inc., registered as Delaware Corporation, October 15, 2020.

b.      Neuroelectric Usa Corporation, registered  as Delaware Corporation, April 22, 2021.

c.      Neuroelectric Usa, Corporation. registered as Massachusetts Foreign Corporation, May 7, 2021.

d.      Neuroelectric Usa, Corporation. registered Pennsylvania Foreign Corporation, June 14, 2022.

e.      Neuroelectric Usa, Corporation. registered as California Corporation, April 19, 2023 – Terminated.

f.      Neuroelectric Usa, Corporation. registered as North Carolina Foreign Corporation, November 8, 2023.

g.      Neuroelectric Usa, Corporation. registered as Florida Foreign Corporation, December 1, 2023.

h.      Neuroelectric Usa, Corporation. registered as Virginia Foreign Corporation, March 26, 2024.

i.      Neuroelectric Usa, Corporation. registered as Minnesota Foreign Corporation, June 3, 2024.

j.      Neuroelectric Usa, Corporation. registered as District of Columbia Corporation, June 3, 2024.



9/13/24, 8:27 AM

Bizapedia - Find Companies, People, Addresses, & Trademarks

## Bizapedia™

### Pro Data Subscription

Get weekly data lists in CSV file format of all new company filings by State.

**FIND OUT MORE**

### Pro Search Subscription

Perform nearly unlimited advanced searches with our Pro Search service.

**FIND OUT MORE**

### Pro API Subscription

Perform B2B based due diligence checks in every state with our Pro API.

**FIND OUT MORE**

**COMPANY**    PEOPLE    SERVICE/PRODUCT    TRADEMARK    ADDRESS

| Neuroelectrics | Enter City... | Select State/Province |

Sponsored Links

11 matches were returned.

Click a row below to view the associated profile.

| Relevance Score | Company Name | Entity Type | Registered Agent | Filed | Filing Status | Address Locations |
|---|---|---|---|---|---|---|
| 3.8 | Neuroelectrics, Inc. | Delaware Corporation | The Corporation Trust Company | 10/15/2020 | Active | Wilmington, DE |
| 3.7 | Neuroelectrics Corporation | Massachusetts Domestic Profit Corporation | Corporation Service Company | 03/21/2013 | Unknown | Boston, MA and Cambridge, MA |
| 3.8 | Neuroelectrics Usa Corporation | Virginia Foreign Corporation | Registered Agent Solutions Inc. | 03/26/2024 | Active | Cambridge, MA and Mechanicsville, VA |
| 3.6 | Neuroelectrics Usa Corporation | Florida Foreign Profit Corporation | C T Corporation System | 12/01/2023 | Active | Cambridge, MA and Plantation, FL |
| 3.6 | Neuroelectrics Usa Corporation | Massachusetts Foreign Profit Corporation | C T Corporation System | 05/07/2021 | Unknown | Boston, MA and Cambridge, MA |
| 3.8 | Neuroelectrics Usa Corporation | Minnesota Business Corporation (Foreign) | Registered Agent Solutions, Inc. | 06/03/2024 | Active | Cambridge, MN |
| 3.6 | Neuroelectrics Usa Corporation | Delaware Domestic Corporation | The Corporation Trust Company | 04/22/2024 | Active | Wilmington, DE |
| 3.6 | Neuroelectrics Usa Corporation | North Carolina Foreign Business Corporation | Registered Agent Solutions, Inc. | 11/08/2023 | Current-Active | Cambridge, MA and Raleigh, NC |
| 3.6 | Neuroelectrics Usa Corporation | District Of Columbia For-Profit Corporation | Registered Agent Solutions, Inc. | 09/03/2024 | Active | Cambridge, DE |
| 3.8 | Neuroelectrics Usa Corporation | California Stock Corporation - Out Of State - Stock | C T Corporation System | 04/19/2023 | Terminated | Cambridge, MA and New York, NY |
| 3.8 | Neuroelectrics Usa Corporation | Pennsylvania Foreign Business Corporation | CT Corporation System | 06/14/2022 | Active | |



18.     Plaintiff audited the corporate history to affirm company contacts, utilizing the

Massachusetts formation of March 21, 2013:  Ana-Marie Maiques Valls (Director and Treasurer);

Carlos De Otto (Secretary); Giulio Ruffini (President), as below.  Yolanda Casas is not reflected on the

registrant record, was confirmed in secondary source, LinkedIn which states that she was CEO, the

same capacity held by Ana-Marie Maiques Valls.  Plaintiff states that the records do not correlate

because they are fabricated.

19.     Plaintiff focused on the principal parties, Giulio Ruffini, President and Carlos De Otto,

Secretary, analysis provided findings associated with Nikola Tesla IP records affirmed by Plaintiff as

principally sources intellectual property stolen by George Scherff Sr., and George Scherff Jr., at the

turn of the century.

20.    Plaintiff analyzed the careers of Giulio Ruffini cross-pollinating the data with open-source records of and related to their avocation history.  Ruffini has an appreciative history of published data specific to cranial health, communication and transcranial electric stimulation with adaptation for COVID-19 imposed depression and related illness.  FDA application was accepted, announced on May 15, 2020, citing neuroelectrics and clinical trial stimulation therapy available through telemedicine for patients with Major Depressive Depression (MDD).

21.    Plaintiff states that Carlos De Otto, Neuroelectrics corporate Secretary, also serves as Brand Manager for SeedRocket and Senda, Barcelona Spain.  Plaintiff states open source could not confirm fiscal record apart from the evidenced corporate record between Neuroelectrics and SeedRocket.

22.    Plaintiff states confirmation of SeedRocket, Inc., registered in New York on January 4, 2023 and SeedRocket, Inc., registered in Wyoming on July 24, 2024, both domestic registration which reflect no corporate officers' names.

23.    Plaintiff states that on June 30, 2021, Neuroelectrics co-founder and CEO, Ana Maiques presented FDA "breakthrough device designation for its Starstim neuromodulation platform to treat refractory focal epilepsy" the transcranial electrical stimulation (tES), personalized treatment protocols and secure cloud-based mechanism to receive treatment anywhere.  Plaintiff states that the press release states is a "Spain-based" company who in May, 2021 received $17.5m in Series A financing through Morningside Ventures.

24.    Plaintiff analyzed Morningside Ventures through open-source official, governmental records, principally the SEC.  Plaintiff states that the primary records with the SEC are vacant, with -0- entries.  However, the SEC, "UNIFORM APPLICATION FOR INVESTMENT ADVISER REGISTRATION" under the primary business name, "Morningside Venture Capital Limited" with a

principal office of Unit 905-6, ICBC Tower, Hong Kong, holding an CRD ID: your CRD number: 163894.

25.     Plaintiff analyzed the SEC history on Morningside Venture Capital Limited – Plaintiff states that the SEC has no fingerprint of the corporate record.  Open source was accessible to Adviser Registration; however, no further entries accessible, this infers either preferential treatment by the SEC or non-conformance, neither was answered from the record and SEC portal.

26.     NGO – SeedRocket is associated with Carlos de Otto, Brand Manager and Mentor. Over the last ten years SeedRocket helped more than 90 startups during their initial development phase.  Well-known companies like Deporvillage, Habitissimo, Kantox or Escapa Rural have gone through the Seed Funding Venture Program for Entrepreneurs offered by SeedRocket.  SeedRocket organizes two editions of their Campus for Entrepreneurs (Barcelona and Madrid where it is headquartered), presented through a 4-day training and mentoring marathon. The Campus closes with a demo day where the best ideas are presented to investors.



a.

Schedule A (Form 990) 2023      Page **3**

**Part III**   **Support Schedule for Organizations Described in Section 509(a)(2)**
(Complete only if you checked the box on line 10 of Part I or if the organization failed to qualify under Part II. If the organization fails to qualify under the tests listed below, please complete Part II.)

**Section A. Public Support**

| Calendar year (or fiscal year beginning in) ▶ | (a) 2019 | (b) 2020 | (c) 2021 | (d) 2022 | (e) 2023 | (f) Total |
|---|---|---|---|---|---|---|
| **1** Gifts, grants, contributions, and membership fees received. (Do not include any "unusual grants.") | 118,619 | 636,320 | 1,850,749 | 1,318,110 | 6,224,777 | 10,148,575 |
| **2** Gross receipts from admissions, merchandise sold or services performed, or facilities furnished in any activity that is related to the organization's tax-exempt purpose | | | | | | 0 |
| **3** Gross receipts from activities that are not an unrelated trade or business under section 513 | | | | | | 0 |
| **4** Tax revenues levied for the organization's benefit and either paid to or expended on its behalf | | | | | | 0 |
| **5** The value of services or facilities furnished by a governmental unit to the organization without charge | | | | | | 0 |
| **6 Total.** Add lines 1 through 5 | 118,619 | 636,320 | 1,850,749 | 1,318,110 | 6,224,777 | 10,148,575 |
| **7a** Amounts included on lines 1, 2, and 3 received from disqualified persons | | | | | | 0 |
| **b** Amounts included on lines 2 and 3 received from other than disqualified persons that exceed the greater of $5,000 or 1% of the amount on line 13 for the year. | | | | | | 0 |
| **c** Add lines 7a and 7b. | | | | | | 0 |
| **8 Public support.** (Subtract line 7c from line 6.) | | | | | | 10,148,575 |

**Section B. Total Support**

| Calendar year (or fiscal year beginning in) ▶ | (a) 2019 | (b) 2020 | (c) 2021 | (d) 2022 | (e) 2023 | (f) Total |
|---|---|---|---|---|---|---|
| **9** Amounts from line 6. | 118,619 | 636,320 | 1,850,749 | 1,318,110 | 6,224,777 | 10,148,575 |
| **10a** Gross income from interest, dividends, payments received on securities loans, rents, royalties and income from similar sources. | | | | | | 0 |
| **b** Unrelated business taxable income (less section 511 taxes) from businesses acquired after June 30, 1975. | | | | | | 0 |
| **c** Add lines 10a and 10b. | | | | | | 0 |
| **11** Net income from unrelated business activities not included on line 10b, whether or not the business is regularly carried on. | | | | | | |
| **12** Other income. Do not include gain or loss from the sale of capital assets (Explain in Part VI.) | | | | | | 0 |
| **13 Total support.** (Add lines 9, 10c, 11, and 12.) | 118,619 | 636,320 | 1,850,749 | 1,318,110 | 6,224,777 | 10,148,575 |
| **14 First 5 years.** If the Form 990 is for the organization's first, second, third, fourth, or fifth tax year as a section 501(c)(3) organization, check this box and **stop here.** . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐ | | | | | | |

**Section C. Computation of Public Support Percentage**

| | | |
|---|---|---|
| **15** Public support percentage for 2023 (line 8, column (f) divided by line 13, column (f)). . . . . . . . . . | **15** | 100.000 % |
| **16** Public support percentage from 2022 Schedule A, Part III, line 15 . . . . . . . . . . . . . . . . | **16** | 100.000 % |

**Section D. Computation of Investment Income Percentage**

| | | |
|---|---|---|
| **17** Investment income percentage for 2023 (line 10c, column (f) divided by line 13, column (f)) . . . . . . | **17** | 0 % |
| **18** Investment income percentage from 2022 Schedule A, Part III, line 17 . . . . . . . . . . . . . | **18** | |

**19a 33 1/3% support tests–2023.** If the organization did not check the box on line 14, and line 15 is more than 33 1/3%, and line 17 is not more than 33 1/3%, check this box and **stop here.** The organization qualifies as a publicly supported organization . . . . . . . . ▶ ☑

**b 33 1/3% support tests–2022.** If the organization did not check a box on line 14 or line 19a, and line 16 is more than 33 1/3% and line 18 is not more than 33 1/3%, check this box and **stop here.** The organization qualifies as a publicly supported organization . . . . . ▶ ☐

**20 Private foundation.** If the organization did not check a box on line 14, 19a, or 19b, check this box and see instructions . . . . . ▶ ☐

Schedule A (Form 990) 2023

27.      Plaintiff audited the 990 returns of Papagayo, Denver, Colorado, for years reflected 2022 and 2023, date stamp omitted, as is consistent among all and inclusive 501c3 fiscal records secured through open-source.

28.      Plaintiff audited the 2022, 990EZ tax return record secured through open-source which affirms that organization stated of their own hand, Part V, #46, "Did the organization engage, directly or indirectly, in political campaign activities on behalf of or in opposition to candidates for public

office?" Plaintiff states that the subject organization's designee marked "No" of their own hand, by pdf/computer aided entry.

29.    Plaintiff audited the 2022, 990 EZ Papagayo tax return record secured through open-source fiscal records of grants received, as below, receiving $58,221.00.

| Schedule A (Form 990) 2022 | | | | | | Page **3** |
|---|---|---|---|---|---|---|
| **Part III** Support Schedule for Organizations Described in Section 509(a)(2) (Complete only if you checked the box on line 10 of Part I or if the organization failed to qualify under Part II. If the organization fails to qualify under the tests listed below, please complete Part II.) | | | | | | |
| **Section A. Public Support** | | | | | | |
| Calendar year (or fiscal year beginning in) ▶ | (a) 2018 | (b) 2019 | (c) 2020 | (d) 2021 | (e) 2022 | (f) Total |
| 1  Gifts, grants, contributions, and membership fees received. (Do not include any "unusual grants.") . | | | | | 58,221 | 58,221 |
| 2  Gross receipts from admissions, merchandise sold or services performed, or facilities furnished in any activity that is related to the organization's tax-exempt purpose | | | | | | 0 |
| 3  Gross receipts from activities that are not an unrelated trade or business under section 513 . . . . | | | | | | 0 |
| 4  Tax revenues levied for the organization's benefit and either paid to or expended on its behalf. . . . | | | | | | 0 |
| 5  The value of services or facilities furnished by a governmental unit to the organization without charge | | | | | | |
| 6  **Total.** Add lines 1 through 5 | | | | | 58,221 | 58,221 |
| 7a  Amounts included on lines 1, 2, and 3 received from disqualified persons | | | | | | 0 |
| b  Amounts included on lines 2 and 3 received from other than disqualified persons that exceed the greater of $5,000 or 1% of the amount on line 13 for the year. | | | | | | 0 |
| c  Add lines 7a and 7b. | | | | | | 0 |
| 8  **Public support.** (Subtract line 7c from line 6.) | | | | | | 58,221 |
| **Section B. Total Support** | | | | | | |
| Calendar year (or fiscal year beginning in) ▶ | (a) 2018 | (b) 2019 | (c) 2020 | (d) 2021 | (e) 2022 | (f) Total |
| 9  Amounts from line 6. . . . | | | | | 58,221 | 58,221 |
| 10a  Gross income from interest, dividends, payments received on securities loans, rents, royalties and income from similar sources. . | | | | | | |
| b  Unrelated business taxable income (less section 511 taxes) from businesses acquired after June 30, 1975. . . . | | | | | | |
| c  Add lines 10a and 10b. | | | | | | |
| 11  Net income from unrelated business activities not included on line 10b, whether or not the business is regularly carried on. | | | | | | |
| 12  Other income. Do not include gain or loss from the sale of capital assets (Explain in Part VI.) . . | | | | | | |
| 13  **Total support.** (Add lines 9, 10c, 11, and 12.). | | | | | | 58,221 |
| 14  **First 5 years.** If the Form 990 is for the organization's first, second, third, fourth, or fifth tax year as a section 501(c)(3) organization, check this box and stop here. . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐ | | | | | | |
| **Section C. Computation of Public Support Percentage** | | | | | | |
| 15  Public support percentage for 2022 (line 8, column (f) divided by line 13, column (f)). . . . . . . . . | | | | | 15 | 100.000 % |
| 16  Public support percentage from 2021 Schedule A, Part III, line 15 . . . . . . . . . . . . . . . | | | | | 16 | |
| **Section D. Computation of Investment Income Percentage** | | | | | | |
| 17  Investment income percentage for **2022** (line 10c, column (f) divided by line 13, column (f)) . . . . . | | | | | 17 | 0 % |
| 18  Investment income percentage from 2021 Schedule A, Part III, line 17 . . . . . . . . . . . . . | | | | | 18 | |
| 19a  **33 1/3% support tests—2022.** If the organization did not check the box on line 14, and line 17 is not more than 33 1/3%, check this box and **stop here.** The organization qualifies as a publicly supported organization . . . . . . . ▶ ☑ | | | | | | |
| b  **33 1/3% support tests—2021.** If the organization did not check a box on line 14 or line 19a, and line 16 is more than 33 1/3% and line 18 is not more than 33 1/3%, check this box and **stop here.** The organization qualifies as a publicly supported organization . . . . . ▶ ☐ | | | | | | |
| 20  **Private foundation.** If the organization did not check a box on line 14, 19a, or 19b, check this box and see instructions . . . . ▶ ☐ | | | | | | |
| | | | | | | Schedule A (Form 990) 2022 |

a.

30.    Plaintiff audited the 2023, 990 Papagayo tax return record secured through open-source which affirms that organization stated of their own hand, Part IV, #3, "Did the organization engage, directly or indirectly, in political campaign activities on behalf of or in

opposition to candidates for public office?"  Plaintiff states that the subject organization's designee marked "No" of their own hand, by pdf/computer aided entry.

31.    Plaintiff audited the 2022, 990 EZ Papagayo tax return record secured through open-source fiscal records of grants received, as below, receiving $558,312.00.  Adopted, July 22, 2024, Safety, Housing, Education & Homelessness Committee, Denver City Council awarded Papagayo $2,924,179.00 (DHS – State) grant for 70-units housing navigation and rental under the Denver Asylum Seeker Program.

**Schedule A (Form 990) 2023**  Page **3**

**Part III** Support Schedule for Organizations Described in Section 509(a)(2)
(Complete only if you checked the box on line 10 of Part I or if the organization failed to qualify under Part II. If the organization fails to qualify under the tests listed below, please complete Part II.)

**Section A. Public Support**

| Calendar year (or fiscal year beginning in) ▶ | (a) 2019 | (b) 2020 | (c) 2021 | (d) 2022 | (e) 2023 | (f) Total |
|---|---|---|---|---|---|---|
| 1 Gifts, grants, contributions, and membership fees received. (Do not include any "unusual grants.") | | | | 58,221 | 558,312 | 616,533 |
| 2 Gross receipts from admissions, merchandise sold or services performed, or facilities furnished in any activity that is related to the organization's tax-exempt purpose | | | | | | 0 |
| 3 Gross receipts from activities that are not an unrelated trade or business under section 513 . . . . | | | | | | 0 |
| 4 Tax revenues levied for the organization's benefit and either paid to or expended on its behalf. . . | | | | | | 0 |
| 5 The value of services or facilities furnished by a governmental unit to the organization without charge | | | | | | 0 |
| 6 **Total.** Add lines 1 through 5 | | | | 58,221 | 558,312 | 616,533 |
| 7a Amounts included on lines 1, 2, and 3 received from disqualified persons | | | | | | 0 |
| b Amounts included on lines 2 and 3 received from other than disqualified persons that exceed the greater of $5,000 or 1% of the amount on line 13 for the year. | | | | | | 0 |
| c Add lines 7a and 7b. | | | | | | 0 |
| 8 **Public support.** (Subtract line 7c from line 6.) | | | | | | 616,533 |

**Section B. Total Support**

| Calendar year (or fiscal year beginning in) ▶ | (a) 2019 | (b) 2020 | (c) 2021 | (d) 2022 | (e) 2023 | (f) Total |
|---|---|---|---|---|---|---|
| 9 Amounts from line 6. . . . | | | | 58,221 | 558,312 | 616,533 |
| 10a Gross income from interest, dividends, payments received on securities loans, rents, royalties and income from similar sources. | | | | | | |
| b Unrelated business taxable income (less section 511 taxes) from businesses acquired after June 30, 1975. | | | | | | |
| c Add lines 10a and 10b. | | | | | | |
| 11 Net income from unrelated business activities not included on line 10b, whether or not the business is regularly carried on. | | | | | | |
| 12 Other income. Do not include gain or loss from the sale of capital assets (Explain in Part VI.) . . | | | | | | |
| 13 **Total support.** (Add lines 9, 10c, 11, and 12.) | | | | | | 616,533 |
| 14 **First 5 years.** If the Form 990 is for the organization's first, second, third, fourth, or fifth tax year as a section 501(c)(3) organization, check this box and **stop here.** . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐ | | | | | | |

**Section C. Computation of Public Support Percentage**

| | | |
|---|---|---|
| 15 Public support percentage for 2023 (line 8, column (f) divided by line 13, column (f)) . . . . . . . . | 15 | 100.000 % |
| 16 Public support percentage from 2022 Schedule A, Part III, line 15 . . . . . . . . . . . . . . | 16 | 100.000 % |

**Section D. Computation of Investment Income Percentage**

| | | |
|---|---|---|
| 17 Investment income percentage for 2023 (line 10c, column (f) divided by line 13, column (f)) . . . . . . | 17 | 0 % |
| 18 Investment income percentage from 2022 Schedule A, Part III, line 17 . . . . . . . . . . . . | 18 | 0 % |
| 19a **33 1/3% support tests–2023.** If the organization did not check the box on line 14, and line 15 is more than 33 1/3%, and line 17 is not more than 33 1/3%, check this box and **stop here.** The organization qualifies as a publicly supported organization . . . . . . . . ▶ ☑ | | |
| b **33 1/3% support tests—2022.** If the organization did not check a box on line 14 or line 19a, and line 16 is more than 33 1/3% and line 18 is not more than 33 1/3%, check this box and **stop here.** The organization qualifies as a publicly supported organization . . . . . ▶ ☐ | | |
| 20 **Private foundation.** If the organization did not check a box on line 14, 19a, or 19b, check this box and see instructions . . . . ▶ ☐ | | |

**Schedule A (Form 990) 2023**

a.

<u>TESLA INTELLECTUAL PROPERTY</u>

32.    Plaintiff states that Hansjörg Wyss ("Wyss") attended Harvard Business School in 1965, finding employment in the steel industry in Brussels, Belgium, thereafter, developing a medical device manufacturing company, Synthes, established in 1977, opening an American manufacturing plant under the name Synthes USA, in Colorado.

33.    Plaintiff states that Wyss both accessed, retained for himself and plagiarized the Nikola Tesla intellectual property ("IP") records, utilizing the records in the development of Synthes, and thereafter, Synthes USA, companies which he formed.  Plaintiff presents a sample of the legal history of Synthes for the benefit of the Honorable Court.  The central thesis presented is in furtherance of the allegations presented concerning the scheming actions of the inclusive Defendants set to mirror all facets of BCC International 2.0 including treason, crimes against human and genocide each facet forecasted and planned in and among, although not limited to those herein named.  In 2009, top executives at Synthes were indicted by the U.S. Attorneys for Eastern Pennsylvania for using untested calcium-phosphate bone cement on human patients without FDA consents resulting in the death of 3-patients; Wyss was not indicted while four top Synthes executives were convicted and sentenced to prison.

34.    Plaintiff states that in 1998, Hansjorg Wyss created the Wyss Foundation, an NGO dedicated to facilitating partnerships between NGO's and the United States government, programs under the Foundation included the Wyss Scholars which sponsored graduate-level education in the field of land conservation.  Through the Wyss Scholars program, 11 core and 15 associate faculty and their teams of young scientists and engineers has led to impressive productivity, with almost 4,000 patent filings, more than 100 licensing agreements, and 50 startups, as well as numerous industry collaborations. Wyss Institute scientists and engineers work in collaboration with colleagues across

Harvard's Schools of Medicine, Engineering, Arts & Sciences, and Design, as well as with 12 collaborating academic institutions and affiliated hospitals in the Boston-Cambridge ecosystem and across the globe.  Plaintiff alleges Wyss retains absolute knowledge of the plagiarized origin that all and inclusive patent records, product and scientific findings flowing from the Institute have principal origin holding to the Tesla IP records, plagiarized.

35.    Plaintiff states, in furtherance of ¶ 17, above, Neuroelectrics Chief Executive Officer is alleged to have been formally trained at Cambridge, a cited collaborative entity associated with Wyss.

36.    Plaintiff states that in 2007 when Wyss was recognized with the Harvard Business School Alumni achievement award, Wyss commenced a sequence of donations; $125 million (2008), and $131 million (2019).

37.    Plaintiff states Wyss donated $216 million to the Sixteen Thirty Fund and the New Venture Fund since 2016 to present.  Plaintiff restates as a matter of record for the Honorable Court, the New Venture Fund is a contributary fiscal source associated with Arabella and subject of the Notice of Motion, See: ECF Doc. 105, ¶¶ 176, 177.  Plaintiff states, the New Venture Fund underwrites Acronym which owns Courier Newsroom with Wyss' philanthropic donor record extending to States Newsroom.   Plaintiff restates direct correlation between Wyss and the BCC International structure, noting the association and movement of Hmesh Bhise, the avocational associations are well documented in the 1992 BCCI Investigative record, See ECF Doc. 45-1.

38.    Plaintiff states that Wyss founded the Wyss Institute for Biologically Inspired Engineering, a cross-disciplinary research institute at Harvard University focused on the field of biologically inspired engineering within the distinct venues of bioengineering and biomedical engineering for which Wyss has contributed approximately $402 million.  The Institute has launched 29-startup companies to commercialize the concepts developed in collaboration with the Wyss

Institute.  Plaintiff states, the foregoing endeavors are born of the same poisonous fruit as that of

Wyss' business pursuits, the origin of each holding to the Nikola Tesla IP records and original data.

39.    Plaintiff states for the benefit of the Honorable Court, on July 30, 2024, the Wyoming

Secretary of State, Chuck Gray, in the company of Virginia and Missouri, noticed the Federal

Elections Commission regarding federal violation of donor record and donor identity through the

Defendant, DEMOCRAT NATIONAL COMMITTEE donor webportal, ActBlue.  The investigation

surfaced when, immediately following Defendant, KAMALA HARRIS' federal campaign

announcement, thousands of redundant donor records appeared within the ActBlue and FEC reporting.

Plaintiff states, citing autonomous research, the foregoing claims are true and factual reaching to the

most granular level of campaign and extending into school Board elections.  The excerpt below from

the Wyoming Secretary of State's written statement on the matter.

> ActBlue has been accused of stealing peoples' identities to conceal illegal donations, such as
> donations from foreign actors. As the chief election officer for the State of Wyoming,
> Secretary Gray is tasked with ensuring the integrity of Wyoming elections. ActBlue Wyoming
> is required to file statements of contributions and expenditures with the Wyoming Secretary of
> State's Office under the penalty of perjury. Filing a false statement is a violation of the
> Wyoming Election Code. Secretary Gray is legally empowered to refer suspected violations of
> the Election Code to the appropriate prosecuting authority.  The widespread allegations against
> ActBlue are deeply troubling, and we must ensure that political action committees are
> following the Wyoming Election Code," Secretary Gray said in a statement. Claiming that a
> person donated to a PAC if that person never donated to that PAC would be a felony under
> Wyoming law. I am very concerned, and remain committed to a thorough review of
> contributions to ensure compliance with Wyoming law.  See EXHIBIT 1.

40.    In furtherance of the foregoing, Plaintiff includes an excerpt from the Committee on

House Administration Chairman Bryan Steil, as provided to the Federal Election Commission and

attached as EXHIBIT 2.

> In recent weeks, a wide array of sources have voiced concerns that ActBlue is violating or
> skirting federal campaign finance laws in several ways including:
>
> Laundering foreign contributions through prepaid gift cards and U.S. credit and debit
> cardholders; Using prepaid gift cards and credit cards as a vehicle without knowledge of the

owner to launder campaign contributions that would violate Federal Campaign Finance (FCF) law; Deliberate nonuse of the CVV number to hinder verification of the owner or location of the credit card holder; Receipt of a significant number of donations from individuals who are retired and live on a fixed income; Sudden appearance of very large donations from individuals who have previously donated much smaller amount; Patterns of hundreds of donations for $2.50 from the same individual; State Attorney's General from Virginia, Wyoming, and Missouri are conducting similar investigations into ActBlue.

41.    Plaintiff states that in 2023, the Associated Press reported that between 1990 and 2006, Wyss had donated $119,000 directly to candidates and campaigns.  Through the conduit of the Berger Action Fund, which holds a donation record of $339 million to left-leaning NGO's since 2016, the total donation to Defendant, JOSEPH R. BIDEN in 2021 from the Berger Action Fund was $72 million.

42.    Wyss Institute for Biologically Inspired Engineering at Harvard University, subject of the Plaintiff's Notice of Motion, See: ECF Doc. 105, having designed the nuclear infused, "biologically inspired" nasopharyngeal swab in the company of Defendant, UNITEDHEALTH GROUP and the Gates Foundation, Bill Gates, Warren Buffett and Microsoft, was named

43.    Plaintiff restates every inclusive claim as set forth in the Notice of Motion, See ECF Doc. 105, with specific emphasis as to the facts disclosed herein.

44.    Plaintiff restates all claims as set forth within the inclusive responsive pleading, ECF Doc. 60, expounding on ¶ 18, Plaintiff states that the foregoing actions accumulate with those of the historical record, of and belonging to BCC International and specifically the Awan Brothers who are referenced by name lineage in and among the BCC International records repository, see ECF 45-1, p.19, 64, 89, 101, 102, etc.

a.    Plaintiff restates direct correlation between Amjad Awan, head of banking for BCC International and the Awan Brothers.

b.    Plaintiff states that the inclusive Defendants usurped Executive Authority,

expressly provided under the Constitution of the United States, a capacity of Chief authority, held by Donald John Trump, to facilitate and establish gross negligent infringement on National Security, knowingly; treasonous actions.

45.    Plaintiff states that the inclusive Defendants knowingly facilitated, through vast assemblage, including but not limited the extraneous parties and entities associated with the Clinton Foundation; Open Society – George Soros; the Guggenheim Fund; the Rockefeller Brothers Fund; Grameen America – Susan and Nick Pritzker; Climate Justice Alliance; Libra Foundation; Adalah Justice Project; Patagonia; Alliance for Global Justice; Arabella Advisors; the New Venture Fund; the Sixteen Thirty Fund; Acronym; NewsGuard; States Newsroom; the Federal Election Commission; the League of Women Voters; the Wyss Campaign for Nature; the Nature Conservancy; the Trust for Public Land; the Wilderness Society; Tides; the Network for Good; the Youth Project; AARP; the National Network of Grantmakers; the Eagleton Institute; Apollo Alliance; the Sierra Club; Brian Deese; Future Forward USA Action; Colors of Change; MoveOn.org; League of Conservative Voters; Secretary of State Project; Progressive Change Campaign Committee; People's Forum; ViVe, Papagayo, SeedRocket (United States and Spain), IAC, Inc.  The inclusive organizations and entities have been funded with Plaintiff's funds through federal appropriation by the Defendant, the DEMOCRAT NATIONAL COMMITTEE in and among the inclusive Defendants, who have knowingly empowered the sum and substance of organizations and entities to infringe Plaintiff's sovereign Rights, including but not limited to the orchestrated breach of cybersecurity.

46.    Plaintiff states that the Internal Revenue Service has empowered the actions of the inclusive Defendants to knowingly enabled, through vast assemblage, including but not limited the extraneous parties and entities associated with the Clinton Foundation; Open Society – George Soros; the Guggenheim Fund; the Rockefeller Brothers Fund; Grameen America –

Susan and Nick Pritzker; Climate Justice Alliance; Libra Foundation; Adalah Justice Project; Patagonia; Alliance for Global Justice; Arabella Advisors; the New Venture Fund; the Sixteen Thirty Fund; Acronym; NewsGuard; States Newsroom; the Federal Election Commission; the League of Women Voters; the Wyss Campaign for Nature; the Nature Conservancy; the Trust for Public Land; the Wilderness Society; Tides; the Network for Good; the Youth Project; AARP; the National Network of Grantmakers; the Eagleton Institute; Apollo Alliance; the Sierra Club; Brian Deese; Future Forward USA Action; Colors of Change; MoveOn.org; League of Conservative Voters; Secretary of State Project; Progressive Change Campaign Committee; People's Forum; ViVe, Papagayo, SeedRocket (United States and Spain), IAC, Inc.  The inclusive organizations and entities have been funded with Plaintiff's funds infringing and usurping the federally protected election critical infrastructure, Help America Vote Act of 2002 (HAVA; 52 U.S.C. §§ 20901-21145), in particular, includes among other things, federal requirements for voting systems (52 U.S.C. § 21081), as authorized by HAVA, the U.S. Election Assistance Commission (EAC), and the Computer Fraud and Abuse Act (CFAA) prohibits, among other things, a number of activities involving accessing a protected computer "without authorization" or accessing a protected computer that exceeds authorization while breaching, encroaching and usurping her sovereign Rights of cardinal moral truths facilitated by the Defendant, the DEMOCRAT NATIONAL COMMITTEE in and among the inclusive Defendants, who have knowingly empowered the sum and substance of organizations and entities to infringe Plaintiff's sovereign Rights, including but not limited to the orchestrated breach of cybersecurity.

47.    Plaintiff restates claims specific to ECF Doc. 45, ¶ 158 as to the keynote speech provided by former FBI Agent, Clint Watts.  Plaintiff brings to the Honorable Court's attention that the first interface with Watts was at the National Secretaries of State Conference in January, 2020, at which

point, Watts was a consultant, he was thereafter employed with the German Marshall Fund, Hamilton 2.0 and Atlas Public Policy, followed by his current employment with Microsoft, in the area of Cybersecurity.  Plaintiff states that Watts' articulation of "Advanced Persistent Manipulators" ("APM") is consistent with his ethos and, moreover, discloses the engrained culture indicative of systemic psychological double-speak warfare, which was observed throughout the inclusive body of analyses, same being exampled below.

48.    Plaintiff states, that the foregoing engrained culture of systemic psychological double-speak warfare is and remains at the forefront of practiced statecraft by the inclusive Defendants, and was the principal weapon of choice assailed against the sitting Executive of these United States, Donald J. Trump and his Administration.  This same statecraft was practiced and perfected by the CIA under Operation Paperclip, expanded with the initiation of 6,000 persons of unknown origin See ECF Doc. 105, ¶ 115.  Plaintiff states that the pervasiveness paralleled the encroachment into the United States government, at every level, as outlined in the BCCI Investigation record See ECF Doc. 45-1; 45-2.  The investigation ended in 1992, Defendants WILLIAM J. CLINTON and HILLARY R. CLINTON, and the inclusive Defendants collaborated with affixed Administrative parties and existing extraneous entities, never having been disclosed in the origin investigation by Defendants, JOHN KERRY and ROBERT MUELLER, to immediately reinvigorate the structure.

49.    Plaintiff restates for the benefit of the Honorable Court, once the 2020 election changes had been secured, See ECF Doc. 105, "ELECTION FRAUD" the whole of the BCC International 2.0 infused government collaborated in and among extraneous parties, including but not limited to the aforesaid NGO's, media entities, attorneys, etc., while the principal actors the inclusive Defendants, having already disclosed themselves by known provocation, See ECF Doc. 45, Introduction; Doc. 105, ¶ 35; and  Doc. 106, ¶ 90, filed the 2nd impeachment proceeding, January 12, 2021, citing the fabrication of January 6, 2021.



50.

| Generation | Era | Actors | Advancement |
|---|---|---|---|
| 1 | "Disrupt The System" | Hacktivists (Anonymous, Lulzsec, etc.) | • Hacking in pursuit of influence to shape public perceptions |
| 2 | "Exploit The System" | Extremists (AQ, AQ-Iraq, ISI, ISIS, IS) | • Full spectrum, multi-platform social media influence<br>• Attempt at app creation |
| 3 | "Distort The System" | Russia | • Widespread, strategic hacking for influence<br>• Full spectrum social media influence<br>• Disinformation Fusion Center - False personas, Fringe News Outlets, Integration of in-person Influence |
| 4 | "Dominate The System" | "Trolling-As-A-Service" (Cambridge Analytica, Others) | • Employment artificial Intelligence<br>• Advanced social bots<br>• Creation false audio/digital<br>• In-person provocations<br>• Migration app influence |
| 5 | "Own The System" | China (now) & Multi-National Corporations (future) | • Balkanization of the Internet driving users to apps<br>• Incentivize human behavior to create preferred reality |

**Five Generations Of Online Manipulation – Evolution of Advanced Persistent Manipulators (APM)**

Source: Clint Watts (Foreign Policy Research Institute & Alliance For Securing Democracy)

51.     In furtherance of the foregoing, Plaintiff includes an excerpt from the Harvard National Security Journal Online, an article authored by Justine Malzac, entitled *Expanding Lawful Influence Operations*, of April 12, 2022, noting that the article quotes the Defendant, Lloyd Austin and is

subject of the Department of Defense providing further testimony of the intact culture, See EXHIBIT 3.

>…a recent assessment from the National Intelligence Council reported that Russia, Iran, Hezbollah, Cuba, and Venezuela all attempted, in some manner, to influence the 2020 presidential election….reversing the wave of malign influence requires the United States to push back with lawful information operations of its own, as a whole-of-government effort to regain some of this lost ground…Expanding lawful influence operations is key to fulfilling the goals of the National Defense Strategy ("NDS")…the first ever Irregular Warfare Annex… non-lethal capabilities have a more prominent and necessary role than in conventional warfare.

52.    Plaintiff brings to the Honorable Court's attention ECF Doc. 45, ¶ 66, which provides, in part, "BCC International, inclusive of all operations within sovereign nation-states, including these United States.  The mapping clearly discloses the magnitude of corruptive imposition by "expatriates" designees of BCCI, who in 1986 totaled 3,050,000 in the United States, second only to India at 3,200,000 and Egypt at 2,500,000.  Plaintiff emphasizes the foregoing with the correlated figures of multinational corporations ("MNC"); "in 1969 there were 7,000 MNC, in 2008, there were 79,000 multinational parent corporations with 790,000 foreign affiliates worldwide,"[1] layering non-government organizations, ("NGOs") inclusive of religious and nondenominational entities, the inclusive organizations and entities have advanced in volume.  The magnitude of vastness represents "an increase in private, nonstate power across the globe.'"[2]

53.    Plaintiff restates, with emphasis, ECF Doc. 45, ¶ 67.  Since authoring the amended complaint March 22, 2024, significant facts have come to light including those presented in the Notice of Motion, See ECF Doc. 105, presently before the Honorable Court and scheduled for hearing on October 7, 2024.  The volume of corroborating data and findings is exponentially mounting, having affirmed that BCC International 2.0 is no longer theory.

---

[1] Cusimano Love, Maryann. (2007) *Beyond Sovereignty – Issues for a Global Agenda.* Boston, MA.  Wadsworth Cengage Learning. (Research Report:  United Nations Conference on Trade and Development (UNCTAD)), World Investment Report (2008), https://www.unctad.org/en/docs/wir2008overview_en.pdf>, 10.
[2] Ibid. p.98.

54.    Plaintiff restates, with emphasis, those claims presented in ECF Doc. 117, the existential harms mounting, presently extending to include recurrence of unwarranted harms to American girls and women, our frontline of defense – local Law Enforcement and, the comprehensive absence of lawful conduct among the Department of Homeland Security which is mirrored by the unvetted and illegal persons crossing the borders to our North and South.  Plaintiff presents to the Honorable Court, the facts from the BCC International investigation, noting that the investigation was knowingly compromised which infers that the included criminality was either so blatant that it could not be ignored or that the examples were superabundant that to omit them would be futile, as below:

> BCCI's criminality, including fraud by BCCI and BCCI customers involving billions of dollars; money laundering in Europe, Africa, Asia, and the America; BCCI's bribery of officials in most of those locations; its support of terrorism, arms trafficking, and the sale of nuclear technologies; its management of prostitution; its commission and facilitation of income tax evasion, smuggling, and illegal immigration; its illicit purchases of banks and real estate; and a panoply of financial crimes limited only by the imagination of its officers and customers.

55.    Plaintiff restates claim set form in ECF Doc. 45 ¶ 77, with specific emphasis on each of the inclusive parties named, the number of missing children has grown exponentially with no alarm on the part of those legally responsible, including the Defendants, JOSEPH R. BIDEN, KAMALA HARRIS, ALEJANDRO MAYORKAS and the inclusive Defendants.  According to the August 19, 2024 United States Department of Homeland Security, Office of Inspector General report,

a.    Table 1. UCs transferred to ORR, FYs 2019-2023

b.    FY        UCs released to ORR

c.    FY 2019      67,987
d.    FY 2020      15,128
e.    FY 2021     120,859
f.    FY 2022     127,057
g.    FY 2023     117,789
h.    Total        448,820
i.    Source: DHS OIG analysis of ICE data

56.    Plaintiff attaches for the utmost consideration of the Honorable Court, EXHIBITS 4, 5, 6, and 7, exclusive of the referenced report above which provides, in part, "HHS personnel are unable to determine if UCs need wellness checks or post-release services for individuals at an increased risk of being trafficked. Without an ability to monitor the location and status of UCs, ICE has <u>no assurance UCs are safe from trafficking, exploitation, or forced labor.</u>"  Plaintiff fervently reemphasizes the consequences directly correlating from the dereliction of the Defendants, JOSEPH R. BIDEN, KAMALA HARRIS, ALEJANDRO MAYORKAS and the inclusive Defendants; 291,000 UC's unaccounted for, which does not include those having been moved whether by another's hands and feet or their own, THESE ARE MISSING CHILDREN!

57.    Plaintiff states the Defendants, JOSEPH R. BIDEN, KAMALA HARRIS, ALEJANDRO MAYORKAS and the inclusive Defendants knowingly permitting Title 42 to expire on May 11, 2023. They forecasted the border deluge of immigrants for which they were disappointed, in point of fact, the records provide that the **only** concern of the Administration and the dedicated "Border Czar" KAMALA HARRIS, was facilitation of the nuclear-armed nasal swabs and toxic concoction otherwise known commonly as the vaccine.

58.    On March 28, 2022, Rochelle Walensky, then head of the CDC, having issued the order rescinding the CDC Title 42 directive, cited vaccination rates in the United States and in illegal border migrants' resident nation-states, claiming there was no need to expel migrant children citing the testing and vaccination accessible at United States shelters.

59.    Plaintiff states that the inclusive COVID19 policies set forth by the Executives, Donald J. Trump and Defendants, JOSEPH R. BIDEN and KAMALA HARRIS were audited by the Plaintiff.

60.    Plaintiff states as derived from the historic facts, the Wanaque Center in Haskell, New Jersey Adenovirus outbreak resulting in the untimely death of 11 honored CRIPA protected children,

resulted in a continuum of investigative analysis by State and Federal entities, including the NIH, CDC, DOJ and HHS. The facts in evidence provided a comprehensive structure for respiratory outbreak, end to end, up to and including PPE, *cohorting*, isolation and guidelines for at-risk patients – a comprehensive outbreak response plan for those who might or who had come into contact with or exposure to a threatening contagion. The comprehensive record was scribed into legislative action in New Jersey, inclusive of the comprehensive action plan (See ECF Doc. 45, "Wanaque, Haskell, New Jersey").

61. Plaintiff states as a matter of record for the Honorable Court's consideration as to the foregoing, the CDC, and specifically Rochelle Walensky, holding an MPH from Harvard with whom she was affiliated as a professor until 2012, never consulted the Wanaque record during the COVID19 pandemic, her dereliction resulted in the loss of human lives and systemic failure in communications in her capacity. Plaintiff states, it is unconscionable that a federal departmental director, an expert on HIV/AIDS, having every knowledge that the history of outbreak walks parallel with the patient history, and thereafter observation of convalescence. The foregoing is standard protocol which absolutely was not followed by any of the stated federal agencies, the CDC among them.

62. Plaintiff states, in July, 2021, Alabama Association of Realtors v. HHS the Supreme Court ruled that the CDC exceeded its statutory authority at which time the Defendants, JOSEPH R. BIDEN and KAMALA HARRIS assured the Court that the eviction moratorium would no longer continue.

63. Plaintiff states, on August 3, 2021, the Biden Administration claimed it modified the order to only those counties that were experiencing high levels of community transmission. However, the narrowed interpretation still applied to 91% of all U.S. counties, the Defendants, JOSEPH R. BIDEN and KAMALA HARRIS, sought to strip Congress of their authority and transfer it to the

derelict CDC, and specifically to the Harvard educated, HIV/AIDS specialist who evidenced herself as exceedingly interested in governmental control than scientific analysis of existing data, causing human loss.

64.    Plaintiff states, that on November 5, 2021 Defendants, JOSEPH R. BIDEN and KAMALA HARRIS chose to undermine the constitutional balance of powers by expanding its vaccine mandate to include *all workplaces*, not just government and military personnel, under Occupational Safety and Health Administration (OSHA).  Plaintiff restates the claims presented in ECF Doc. 105, ¶¶ 63-76, the Defendants, JOSEPH R. BIDEN and KAMALA HARRIS knowingly forecasted, planned, orchestrated and mandated a vaccine having every knowledge of the nuclear waste, graphene oxide with coated basalt fabric, smallpox vaccine and a myriad of undisclosed ingredients, all of which were toxic to the human body, expressly intended of grave human harms including HIV/AIDS, cancer, myocarditis, and a litany of other medical conditions; not one statement of disclosure or patient consent was permitted by knowing omission of the inclusive Defendants.

65.    Plaintiff states, on November 29, 2022, Dr. Walensky marked the 50th anniversary of the Tuskegee Syphilis Study; Plaintiff unapologetically states, evil incarnate would knowingly seek to serve themselves when orating the atrocities waged against a specific people group, in this case a militia structure group with the full knowledge of the atrocities in parallel playing out in real time; absolutely abhorrent.  Plaintiff states that as a direct consequence to Dr. Walensky's actions, the African American communities were made to extend their trust in the orations of the CDC, broadcasting her statement on "black twitter," consequently their exposure to the vaccine and nasal swab concoctions was heightened, knowingly, causing medical vulnerability where none previously existed intentionally to impose harm on a particular people group.

66.     Plaintiff states for the Honorable Court's consideration as to the remedies in and among the magnitude of human atrocities, the inclusive Defendants have every knowledge of United Nations reports on migration and caravans of immigrants, inclusive of indescribable happenings in and among the innocent of those persons in traverse.  Plaintiff states that in July as Title 42 was ending, Defendants, JOSEPH R. BIDEN, KAMALA HARRIS and SUSAN RICE, witnessing the swarming of illegal immigrants at the border, knowingly created and fostered confusion in and among the illegal immigrants turning them back, with the full knowledge of their anger as a consequence, maliciously so as to intensify the preexisting manifested despondency built over years of human abuse by the inclusive Defendants within the illegal immigrants on their own soil.  The similarity between the foregoing actions, knowingly conducted, mirror that of the CDC Director in recognizing the Tuskegee Airmen.  Plaintiff states what resulted was and is being portrayed in every town, municipality and State today; rape, murder and mayhem, criminal actions by illegal persons void of civility towards law enforcement, first aid and fire safety.

67.     Plaintiff states, the border czar, Defendant, KAMALA HARRIS, did not ignore the border, she fueled its insurgence, intentionally so as to manifest anger, despondency, chaos and criminal conduct up to and including rape, murder, drug infestation, theft and other criminal conduct in these United States.  Plaintiff states, that the fallacy and manufactured job numbers was intent to hide the fact of Defendants, JOSEPH R. BIDEN and KAMALA HARRIS in and among the inclusive Defendants their culpability, not unintended consequences, absolutely and unequivocally orchestrated with depraved indifference, as evidenced by the nasal swabs, mandated COVID-19 vaccines, etc.  The inclusive Defendants care nothing of sacred human life, so too evidence by policy in exacting human fetal tissue research, effective May 5, 2021 (See ECF Doc. 106, ¶ 50).  In the latter case, a reiteration

of damage to God's design upon introduction in formulation of medical science with unknown secondary implications.

68.    Plaintiff states that the facts disclose that the Defendants, JOSEPH R. BIDEN and KAMALA HARRIS Administration knowingly built out a data-set of expulsion records under Title 42, the CBP records provide in the attached Exhibits, that the CBP app was knowingly manipulated with individual illegal migrants entering multiple addresses, significantly skewing the data, intentionally meant to give the appearance that the Defendants were conforming to the law, which they absolutely were not.  Moreover, the Defendants, JOSEPH R. BIDEN and KAMALA HARRIS, Border Czar, were made aware on numerous occasions, in writing, of the ERO field office reports citing dangerous conditions; HARRIS did not amend policy, actually manifesting the chaos, intentionally.  Plaintiff states in furtherance of the foregoing, the funding appropriations for the CBP app and phones provided to the illegal immigrants, in the company of myriad of other personal items, disseminated by the same NGO's who work on both side of the border and the very same that imposed on the federally protection election infrastructure during the 2020 election.

69.    Plaintiff refers the Honorable Court to ECF Doc. 45, ¶¶ 6, 7, 8, 9, 10, 11, 12, 13, 17, 18, 19, 20, 25, 26, 27, 29, 30, 37, 39, 41, 42, 43, 46, 47,   which regards the appointments of Defendants, in successive order, MERRICK GARLAND, LLOYD AUSTIN, WILLIAM BURNS, CHRISTOPHER WRAY, DENIS RICHARD MCDONOUGH, ALEJANDRO MAYORKAS, ROBERT CALIFF, ROBERT MUELLER, JAMES COMEY, DICK CHENEY, LORETTA LYNCH, JAMES BAKER, ERIC HOLDER, JOHN ASHCROFT, JAMIE GORELICK, MATTHEW PLATKIN, ANDREW CUOMO, SUSAN RICE, ADAM SCHIFF, CHUCK SCHUMER, HUMA ABEDIN, and DEBBIE WASSERMAN SCHULTZ their avocational history germane to Plaintiff's claims herein, in and among the inclusive Defendants.

70.    Plaintiff states in January, 2021, attorney Alan Dershowitz lobbied in the interest of Dan Gertler, owner of Glencore to have the United States Treasury issue a license, temporarily lifting sanctioned restriction which resulted from ongoing fraudulent activity, the license was conditionally issued for one year.  Plaintiff provides for the benefit of the Honorable Court, contextual history relevant to the claims herein.

a.    Glencore is the corporate successor to the trading firm founded by Marc Rich, subject of Plaintiff amended complaint (See: ECF Doc. 45, ¶ 70v.), Rich sold his majority stake in 1994, for $600 million, thereafter forming Global Energy Commodities and Resources.  Following sale, the CEO of Glencore is Ivan Glasenberg (1994).  Dan Gertler became a partner to Glencore International Plc. (2007).

b.    In February, 2009, Katanga Mining Ltd., Canada, announced a sizable loan from Glencore and others, including Lora Enterprises.  In 2020, Glencore purchased Katanga Mining and it was delisted from the Toronto Stock Exchange.  Aristotelis Mistakidis, retired from Glencore, becoming a billionaire in May, 2011 with the Glencore IPO offering, presently serves as a non-executive director of Katanga Mining.

c.    In February, 2017, Glencore bought Gertler's stake in major Democratic Republic of Congo ("DRC") mines, including Katanga for more than $500 million.  Thereafter, the U.S. Justice Department settled a bribery case brought against the New York hedge fund Och-Ziff Capital Management Group, referencing Lora Enterprises, described as a controlling unnamed Israeli DRC partner.

d.    Och-Ziff, subject of SEC and DOJ investigation for violations of Foreign Corruption Practices Act for allegedly paying bribes to African nations was rebranded in September, 2019 to

Sculptor Capital Management.  In December, 2021, assets under management totaled $38.1B.  In June, 2023, it sold its real estate investment firm to Rithm Capital for $639 million.

     e.     In June, 2022, New Residential became independent of Fortress, terminating its existing management agreement for $400 million; Rithm remained autonomous.

     f.     In May, 2024, Fortress was acquired by the Mubadala, a wholly owned entity of the United Arab Emirates.

     g.     In May, 2018, the Qatar/Glencore consortium acquisition shares of Rosneft, thereafter Qatar became the largest shareholder in Rosneft, apart from Russian which retains 50%, Glencore's shares were .57 percent stake in Rosneft.

     h.     Plaintiff states, despite the enormous wealth held by Glencore, 60-70% of the DRC inhabitants of the DRC region are reported to live in poverty.  The DRC region serves as the primary producer of cobalt, critical for batteries.

     i.     In addition to Glencore, Dan Gertler has investments in iron ore, gold, cobalt and oil mining, agriculture and banking; investigations for money laundering, bribery, human rights abuse and fraud have been conducted against him in nearly all of his individual business ventures by a multitude of nation-states.

     71.     Plaintiff states, in August, 2021, Defendant BILL GATES, Jeff Bezos, Michael Bloomberg and Ray Dalio entered into a joint London-based mining company named Bluejay to source critical raw material needed for electric vehicles in keeping with the Paris Accord commitments immediately fortified following the inauguration of Defendants, JOSEPH R. BIDEN and KAMALA HARRIS.

     72.     Plaintiff states, that in June, 2023, Jack Ma joined Bill Gates and Jeff Bezos in the KoBold Metals venture, the joint fund called Breakthrough Energy Venture.  Jack Ma is the co-

founder of Alibaba Group, Yunfeng Capital and formerly the China Telecommunications Corporation, and, presently the Ant Group.  In early 2024, Ma replaced Softbank as Alibaba's largest shareholder.

73.    Plaintiff states that simultaneous to the foregoing actions and events by Defendants, JOSEPH R. BIDEN and KAMALA HARRIS, in October, 2021, Qatar was selected to open dialogue with Nicolas Maduro, seemingly in the interest of 10 prisoners, including 6-Citgo executives detained by Maduro in retaliation for the extradition of Alex Saab to the United States, the latter charged in 2019 for money laundering with links to Hezbollah, laundering funds for the Venezuelan government and activities in direct conflict with United States national security.  A schematic of the money laundering operation, as below.  Plaintiff states the criminal indictment regards manipulation of United States goods imported to Venezuela, of particular relevance is the noted "significant time in Miami, Florida"[3] spent by the alleged conspirators which aligns directly with the BCC International investigative record, see EXHIBIT 8.

74.    In 2016, Saab established the Local Committees for Supply and Production (CLAP) programme, importing food for the poor in the context of the country's food shortages.  Saab sold food to Venezuela for more than US $200 million in a signed contract with President Nicolas Maduro through a company registered in Hong Kong, China, as a pass though.  The food supplies were then resold through Grand Group Limited for 112% more than the original price in Mexico.

75.    In 2018, the Venezuelan government began paying for CLAP imports using its gold resources.  The US Treasury said the government was pressuring miners to sell Saab gold at an inflated market price.  "The gold would be flown to the United Arab Emirates (UAE) and Turkey. Mulberry, Saab's company based in Turkey is alleged to help facilitate payments for the selling of gold and goods back to Venezuelan clients.

_____

76.    While residents of Venezuela go without food, altogether, according to the reports of the U.S. Treasury Secretary, Steven Mnuchin, "They use food as a form of social control, to reward political supporters and punish opponents, all the while pocketing hundreds of millions of dollars through a number of fraudulent schemes."  The Department of Treasury alleges Saab worked with Maduro's three stepsons, Walter, Yosser and Yoswal, also known as Los Chamos, slang for "the kids," to gain access to government officials so he could secure government contracts through bribes. The three in return were rewarded with kickbacks, See: https://www.occrp.org/en/news/stepsons-of-venezuelan-president-sanctioned-by-the-us.

77.    Plaintiff notes that the Saab 2016 DEA investigation associated with money laundering and trafficking in cocaine was associated with the Global Bank of Commerce in Antigua, no such banking entity exists of record.  Again, the name is closely mirroring the BCC International structure.

78.    Plaintiff attaches the conditional pardon issued by Defendant, JOSEPH R. BIDEN following the negotiations for the prisoner exchange by Qatar, executed December 15, 2023.  Within the body of the pardon, there was absolutely no deterrent language as to the interface between Saab and Maduro in the interest of the United States.

79.    The criminal actions and continuum of conduct by Saab will undoubtedly be repeated and, the future action will reflect on the ineffective leadership of the Defendants, JOSEPH R. BIDEN and KAMALA HARRIS, as though sharks in the water, the history of Saab and Maduro fortify the foregoing statement, dismissing exaggeration altogether.   The foregoing information by Maduro's immediate

80.    Despite a litany of fiscal investigations, Madura named Saab as president of the International Investment Centre of Venezuela.

81. Plaintiff examined the open-source records of and pertaining to the Saab investigation, in the company of correlating facts of the same period, noting the following:

a.    The persistent allegations of fraud and money laundering filed against Saab by the United States are not isolated, claims and sanctions have been filed by the United Kingdom, Colombia, Cape Verde, among others.  While Maduro continually denies his involvement in government matters, Saab has repeatedly created various food distribution elaborate shell structures and followed recurrent food dissemination programs, skimming and laundering funds with each such organization.  There is no abatement to Saab's actions, because justice is continually evaded, there is no deterrent and therefore the behavior remains unchanged.

b.    Defendants, JOSEPH R. BIDEN and KAMALA HARRIS lifted the Venezuelan sanctions presumably an effort of good faith; however the terms were not met in kind through the negotiations undertaken by Qatar, the sanctions were not reinstated.

c.    When combining the delegation of diplomatic negotiations to Qatar, a decision made by the Defendants, JOSEPH R. BIDEN, KAMALA HARRIS the Secretary of State or another United States Cabinet-level designee, with the removal of sanctions and, after negotiation terms were not met, the absence of immediate sanction redress including but not limited to reinstatement, evidences weakness on the part of the Defendants, so too discloses a vulnerability to the sovereign citizens of the United States.

d.    Applying the foregoing with Saab history as well that of Maduro, and the wide-open borders at our North and South, the Defendants, JOSEPH R. BIDEN and KAMALA HARRIS signaled a clear and resounding message as much to the Nation's enemies as its allies.  These foreign nations have responded accordingly which is precisely why the crime index is escalating in every tier, entire housing complexes are being subsumed by gangs armed with weaponry exceeding that of law

43

enforcement by orchestrated policy of the co-Defendants and lawlessness is rapidly becoming an everyday occurrence.

    e.    The correlation with the BCCI mapping in the investigative record in relationship to the model of business structure utilized by Saab has direct comparison.  Venezuela is referenced 7-times through the BCCI Investigative record, the inclusive references regard kick-backs associated with charitable organizations and, in some cases associated with Jimmy Carter.

    f.    The BCCI Investigative record for Venezuela had one of the largest deposit records, $24,000,000.00, the Miami correlation stands on its own merit as a direct correlation.

82.    Plaintiff states that Saab's investigative record states that he was trained by Hezbollah, at or about 1999.  Also associated with the Islamic Jihad Organization ("IJO").

83.    In 2000, he arrived in the United States, retaining his IJO status, training in Lebanon and conducted numerous operations for the IJO, surveilling several properties of significance in NYC; large cities including Boston and Washington DC, sought to obtain fertilizer in the United States for use as an explosive precursor.

84.    Plaintiff states, in furtherance of the foregoing, in addition to United States surveillance, similar activities were carried out abroad by Saab, including attempted murder (2003) of a man understood to be a suspected Israeli spy.

85.    Plaintiff states that as a character reference, Saab's repeated blatant misrepresentations and lies, including the fraudulently entered marriage transacting $20,000, alleged to have wife apply for citizenship; Saab later perjured himself by denying the marriage was unrelated to immigration purpose (Source: DOJ).  Plaintiff states the history of Saab's lies and misrepresentations eliminates his credibility, altogether.

86.    Plaintiff analyzed a second hostage negotiation under the direction of Defendants, JOSEPH R. BIDEN and KAMALA HARRIS, also involving Venezuela, in this case, Leonard Glenn Francis, subject of an extensive scheme involving the United States Navy.  Plaintiff provides a brief overview of the case:

a.    U.S. Naval bribery scandal involving Leonard Glenn Francis "Fat Leonard," a Malaysian defense contractor and 17 Naval officers who were involved scandal, commencing in 2006, to direct contractual business to Fat Leonard's company, Glenn Defense Marine Asia Ltd ("GDMA") and a Thai subsidiary, Glenn Marine Corp.

b.    As early as 2010, GDMA, Thailand invoicing was viewed as "padded" by John McCain, however, GDMA had an internal strawman, a spy who was feeding every conversation back. As a consequence, the contracts continued to be awarded and corrective action alluded movement from observation to investigation.  The foregoing behavior escalated until 2013, when the facts became so blatant that the matter could no longer be ignored, a military investigation commenced.  It is unclear if the unlawfully seated Executive commenced or was aware of the investigation at that time.  In 2010, a civilian Navy attorney drafted ethics guidelines for the 7th Fleet; however, these floundered implementation due to compromised staff until late 2012 before being implemented.

c.    In 2018, 30 people plead to a variety of related charges.  Thereafter, in 2019, an identical structured schema to that of DK Marine Service, ship husbandry was involved in corruption out of Korea.  Conspiracy and bribery charges resulted, pleadings filed in Eastern District of Michigan; alleged to coverup and coordination to obscure the overcharges. The Fat Leonard related convictions were held in June, 2022, and in September, 2023, Judge Sammartino reversed verdicts of the former ship Captains, allowing them to plead to misdemeanors and pay a fine of $100/per person.

d.    In December, 2023, following a year of negotiations with Qatar again taking the lead, Francis was extradited to Miami, thereafter transferred to San Diego in early January for prosecution on federal changes.  Plaintiff states that the scheme is the same as BCC International, the only variation is the venue, everything else is the same.

87.    On October 12, 2000, the USS Cole was attacked, the Washington Post would make application for FOIA disclosure, the fulfillment would reveal that after al-Qaeda attacked the USS Cole, and the September 11, 2001 attacks on the World Trade Center and the Pentagon.  Plaintiff completed an analysis of media which included the parent company, Liberty Media and the holding company IAC which is associated with Chelsea Clinton, one of several Board Members.

88.    Plaintiff states that Liberty Media is an affiliate of Charter Communications, Inc., Charter Communications, Inc.  Charter Communication CATV systems founded in 1980 by Charles H. Leonard, in Michigan.  Through a series of partnership and mergers the organization grew to include Spectrum Communication (1981-1983), and thereafter Cencom Cable Television (1993) followed by Crown Media Holdings (1995), and a consent agreement between Charter and Earthlink for high-speed internet access through cable modems in Los Angeles and Riverside, CA.

89.    In 1998, Paul Allen, a business partner and co-founder of Microsoft bought a controlling interest in Charter Communication while acquiring Marcus Cable in Texas for $2.8b., with the acquisition, Charter has 1 million subscribers/customers.   Plaintiff states based on the findings regarding Microsoft, it can be surmised that Microsoft was involved in the foregoing events, including but not limited to the USS Cole attack, 9/11, the 1993 World Trade Center and the Pentagon.

90.    Plaintiff states that in 1993, as the United States was completing its investigation of BCC International and commencing the investigation of Marc Rich, attaching to the Defendants WILLIAM J. CLINTON and HILLARY R. CLINTON in both cases, Al Gore was acting as an advisor to Liberty

Media while serving as Vice President. Following the strict contrast/comparison model of analysis, HSBC resurfaces as a funding partner, noted in ECF Doc. 45 ¶ 74 with attachment directly to Robert Maxwell, Hermitage Capital Management noting that Bill Browder, its founder had worked for Maxwell, also attaching directly to Occidental Petroleum and Marc Rich.

91.    Plaintiff restates the irreparable injuries herein provided.

92.    Plaintiff states that simultaneous events were being levied by the Defendants, JOSEPH R. BIDEN and KAMALA HARRIS against their political opponent by way of Judicial designees, waging unconstitutional lawfare directed at Donald J. Trump and his family, their business interests and private property, intent to influence the court of public opinion as much as disparaging him personally, exceeding election interference with the intent of eviscerating the viability of his candidacy altogether, and his personhood, a violation of his sovereign Rights to Life, Liberty and Property as well the cardinal moral truths. In taking the foregoing actions, apart from being present personally, the Defendants, JOSEPH R. BIDEN and KAMALA HARRIS, affirmed who they are, their unbridled, authentic character, that which they hide from the public in campaign speeches was on full display; their absence of humanity, decency, civility calculated with the whole of the public observing; aghast.

i.    The inclusive Defendants were in no manner done in their atrocious treatment of their opponent, immediately after impeaching him twice over for what time has defined as little more than a perfect phone call and a frequency fed Pelosi-theatrical event on the 6th of January, they now see the err of their ways and back-peddling they are to the point of plagiarizing the proposed policies, political dialogue and human engagement – albeit by busing the audience in. The skeleton support which remains would not embody the central nervous system, desperation has them copying donor records while one three the other under the bus that awaited their paid rally attendees.

ii.      They have now attempted to not only assassinate the character of Donald John Trump, Melania Trump and each of their children, just yesterday for the second time in as many months, their spewed disdain for humanity spilled over, yet again, physically endangering the candidate's life. Plaintiff states very succinctly, we are fortified with the salt and light, God derived having no burden but for the foot of the cross.  As we have born witness of the inclusive Defendants' testimony who forecasted and carried out their malevolent plan for every man, woman, child and unborn's death – we full well know who and what the inclusive Defendants are, we are not like you and will never succumb to remotely mirroring that which they spew.  Nervous laughter cannot hide the truth, the fear is palatable and no amount in a plagiarized corporate war chest can stay the hallowed groundswell of righteousness invoked by His testimony, rightly, a Judeo-Christian free People.

iii.      The residual, that which remains, resemble rabid dogs in search of power, prowess to that of a servant to their fellow man, woman and child – for fear they too be bitten.  The public at large having borne witness of the inclusive Defendant's treacherous actions have been weaponized to condition human being to be less trusting, this too was a component of their overall COVID plan.

iv.      The Plaintiff stands with the People and their candidate in Donald John Trump, finding equilibrium in the Rights inalienable, informed by Natural Law, those scribed by the Founders in the Constitution, the Bill of Rights and the Declaration of Independence, conferring same in resolve affixed of authored names to the People, a parallel covenant of trust, unmistakably triune.  Within same, are the Rights, unalienable, which protect while serving to reinforce the resolve of the foregoing covenant, these include Title 18 Sections 245(b)(1)(A); (a)(1); and (b)(4).

v.      Plaintiff states that the foregoing Rights have been foreclosed by the Defendants, JOSEPH R. BIDEN, KAMALA HARRIS and the inclusive Defendants who traversed and exiled them in the company of the Separation of Powers, Article I, Section 7, by directing, choreographic and

officiating apart from their physical presence, through the persons of their designation including but not limited to Judge Lewis Kaplan; Judge Chutkan; Judge Arthur Engoron; Judge Juan Merchan; Alvin Bragg; Fani Willis, Jack Smith; Lisa Monaco; Defendant, LETITIA JAMES; Eric Schneiderman and Barbara Underwood, each no less culpable for their surrogacy on the part of the inclusive Defendants, and the resulting actions which followed, inclusive of the harms established herein.

b.    The foregoing was solidified by the actions of the Defendants, JOSEPH R. BIDEN and KAMALA HARRIS, advocating the interest of criminals in Alex Saab and Leonard Glenn Francis holding to an appreciation investigative record, including allegations of murder and attempted murder, perjury, fraud, money laundering, etc.,. The actions of the inclusive Defendants so egregious and merciless as to be void of humanness, a respect for civil and discourse with a principal intent of influence in the public sphere to breed hate on the foundation of lies and incantations manifested in their minds as much as lawyerly verbiage, in some cases having to create guardrail of law where none existed for the express purpose of their unwarranted, unlawful provocation.



93.          https://insightcrime.org/news/us-charges-point-to-rampant-corruption-at-venezuela-state-oil-company/                    2/5

94.    Plaintiff states that Secretary of State, Antony Blinkin was at the time of the unfolding events above, *visiting* South America, in Ecuador, thereafter, would travel to Colombia.  Plaintiff states, as supported by the travel history, the Secretary of State was knowingly encouraging border traverse by illegal immigrants, with full knowledge as to the absence of federal management and oversight by the border czar, Defendant, KAMALA HARRIS, blatantly fostering chaos and human tragedies upon unwitting, innocent citizens of the United States.

95.    Within the body of the DHS reports, as referenced above, Plaintiff calls to the Honorable Court's attention, the report entitled "ICE cannot Monitor All Unaccompanied Migrant Children released from DHS and U.S. Department of Health and Human Services Custody" dated August 19,

2024, the Defendants, JOSEPH R. BIDEN and KAMALA HARRIS, in addition to the inclusive Defendants, continually failed to implement and monitor for measurable benchmark parameters, exposing acute vulnerability to the citizens of the United States in the areas of Life, Liberty and Property.

<u>IRREPARABLE INJURY</u>

96.     Plaintiff restates each and every harm of irreparable injury as previously set forth in ECF Doc. 45; 104; 105.

97.     Plaintiff states that the inclusive Defendants prepared, in advance, for the harms known as unintended consequences resulting from COVID-19, including but not limited to imposed depression, AIDS/HIV, myocarditis, child RSV, cancer in various forms and related illness in the company of psychological trauma, each knowingly inflicted.  The harms incalculable with children unprepared and made vulnerable to propaganda, a secondary harm.

98.     Plaintiff states that the analysis of the subject report above, emphasizes the absolute dereliction of the border czar, Defendant KAMALA HARRIS, as provided in the excerpt below, the absence of implementation of new policy by multiple entities, is not a failure on the part of the departments, it is a systemic on the part of the supervisory body, at the helm, the Defendant, KAMALA HARRIS, utterly absent in all respects.  The consequence these failures are human tragedies playing out in real time, rape, murder and criminal actions escalating throughout the United States.  The fact that the Defendant has NEVER VISITED the border speaks to her absence of leadership, her blatant disregard for the human consequences of management, there is no other explanation short of known orchestration to the chaos that is taking place; appalling actions by the Defendants, JOSEPH R. BIDEN and KAMALA HARRIS

in conjunction with the inclusive Defendants as each and every incident was avoidable but for political ideological attachments. The funding of the border support NGO's, exacting services to specific people groups at the expense of others, fostering gang violence and turf wars within communities is in direct conflict with the Constitution and the sovereign Right to Life, Liberty and Property, unalienable and informed by God, Almighty.

99. Plaintiff states, as of August 16, 2024, sourced from the cdp.gov webportal, the CBP saw the largest fentanyl seizure in the agency's history in July, 2024 – the fact that these event continue to escalate is at the hands of the Defendants, JOSEPH R. BIDEN and KAMALA HARRIS. As a direct consequence to the extraordinary aid of NGO's and fiscal donors including but not limited abuse of the autonomous Judicial branch through bribery and coercion to influence an exact, predetermined outcome. Plaintiff states succinctly, these are the very same protocols and funding projects that gave rise to the riots in 2020, Plaintiff states that the inclusive Defendants are preparing to move their silent war to a new level, at any expense to protect what they are not entitled to; the evisceration of the unalienable Rights of the Plaintiff, the People and their candidate of choice, Donald J. Trump;

100. Plaintiff states for the benefit of the Honorable Court, Hansjorg Wyss' philanthropic endeavors are overshadowed by his absence of a green card and United States citizenship, according to the 2014 New York Times article. Plaintiff states that Wyss has applied ill-gotten gains acquired through plagiarism and fraud, leveraging these gains against the fabric of these United States, usurping Plaintiff's sovereign Rights, holding her citizenship hostage, to that of her untethered, sacred God-informed vote.

101. Plaintiff states that Wyss thought nothing of treating clinical trial patient absent FDA consent and patient disclosures, moreover there was no accountability for his action which

resulted in the death persons.  It can be surmised that the same would hold true in the case of the COVID19 redesigned nasopharyngeal swabs.

102.    Plaintiff states that the Wyss Institute for Biologically Inspired Engineering at Harvard University, has and continues to knowingly exposed unwitting American sovereign citizens to AIDS to advance scientific research at the expense of human lives, having every knowledge of the smallpox vaccine, See ECF Doc. 106, co-colluding in and among the inclusive Defendants.

103.    Plaintiff states that the Wyss Institute for Biologically Inspired Engineering at Harvard University, in collaboration with the inclusive Defendants has sought to orchestrate a resurgence of AIDS by extoling transgenderism and permanent medical interventions, affixing children and the most vulnerable including but not limited to those of a protected class of disability, who are in a season of maturation with known vulnerability and one which is well documented in the field of child psychology, medicine and social science.  Plaintiff states that the foregoing are grotesque violations of human rights, violations of the GLOBAL MAGNITSKY HUMAN RIGHTS ACCOUNTABILITY .

104.    Plaintiff states that the Wyss Institute for Biologically Inspired Engineering at Harvard University had given aid of design and venue as a collaborator in and among the inclusive Defendants sponsoring, fostering and manifesting the traverse of undocumented, illegal immigrants crossing through the Northern and Southern border of these United States.

105.    Plaintiff states, as the Honorable Court weighs the subject pleading in and among the irrefutable facts and supporting Exhibits, the combination of the irrefutably compromise by foreign entities having paid to gain access to the shared Microsoft Azure platform, including the United Arab Emirates, a principal facilitator within the BCCI structure; Palantir, a private equity

organization having known interface with human trafficking as well other illicit activities; Coca-Cola, Japan via Hitachi and Kenya.  The foregoing foreign entities have consummated contracts to affirm venue which will permit unfettered parallel access in the company of the United States federal critical election infrastructure (See: ECF Doc 105, ¶ 24).

106.    Plaintiff speaks specifically to the BCC International 2.0 structure with specific notation to the Honorable Court of the appointment history of each of the inclusive Defendants, as well their recurrence, it is peculiar that in some cases, political faction carries little weight, similarly the evaluation of skills and expanse of knowledge.  Plaintiff analyzed a second hostage negotiation under the direction of Defendants, JOSEPH R. BIDEN and KAMALA HARRIS, also involving Venezuela, in this case, Leonard Glenn Francis, subject of an extensive scheme involving the United States Navy,

107.    Plaintiff claims appreciative harm to her sovereign Right to select of her own volition a Presidential candidate apart from imposition, usurpation or deceptive actions by the opposing which would otherwise impede the candidates lawful ability to serve.  Plaintiff states the foregoing extending to jury tampering, judicial activism, bribery and contract manipulation so as to constrain, restrict or otherwise impeded a candidates' viable ability to freely serve his constituents.  As to the foregoing statement, Plaintiff calls on the Saab indictment and respectfully asks the Honorable Court to the review same; from an unbiased analysis, Plaintiff finds egregious partiality heavily weighted against the candidate, Donald John Trump to that of a Alex Nain Saab Moran and Alvaro Pulido Vargas.  It is the Plaintiff's understanding that the law is to equitably applied as well in its evaluation, absent preconceived concepts.  For the benefit of your Honor, in every case of claim brought against the federal candidate, Plaintiff found significant fault and bias in the evaluative records used to buttress the claims, same represented

as Exhibits in repository of the Honorable Court.  If Plaintiff cannot choose but for a candidate

that the opposing party finds or deems acceptable, how then is holding to a Constitutional

Republic?  Plaintiff states, the foregoing question being quasi-rhetorical, **every** freedom in the

balance left to dangle on the opposing party's determination in the company of the corporation

who, themselves are plagiarists; this being no account of equity.  Plaintiff claims measurable

harms under Title 18 Section 245(b)(1)(A); (a)(1) and (b)(4).

108.    Plaintiff states as to the Honorable Court's consideration of the foregoing,

throughout the Amy Coney Barrett Supreme Court hearings, Senators Whitehouse and Durbin

presented numerous visual aid regarding dark money influence within the Judicial process,

including those cases that are heard before the Highest Court of Honor in these United States.

Plaintiff seeks to be crystal clear, Wyss and others of similar non-citizen status, are exceeding

usurpation of the Plaintiff's sovereign Right as aforesaid, they are enslaving an entire populous

to *their* will(s) as the highest bidder(s), actually purchasing the election.

109.    In furtherance of the foregoing, the Plaintiff states the evidence irrefutable, the

very parties including Wyss, having formulated and orchestrated the genocide, extermination,

ethnic and racial cleansing, serious bodily injury, and forced sterilization of the Plaintiff as well

her immediate family, including child-bearing age children,  (See: ECF Doc 105, ¶ 54;

Irreparable Harms); are the same persons purchasing the elections, steering candidacy by virtue

of campaign finance thresholds so too are engineering social, civil and psychological warfare

against the citizenry and, indeed this fine Nation in the United States, to which, in Wyss case, the

only interest holding to Wyss is real property which he may or may not own and private

philanthropic interests.  The resulting immeasurable as to Plaintiff Constitutional Rights to Life,

Liberty and Property, affirmed by her sovereign God-informed vote, apart from interference, imposition or otherwise crude encumbrance to same.

110.    In reviewing the expanse of NGO's and extraneous parties involved in the federal election protected infrastructure, whether under the auspice of advocacy or some semblance of access, as the Honorable Court weighs this Motion, there are several factors that demand thorough evaluation:

a.    A statistically significant number of corporations registered in the United States are conducting themselves as pass-throughs for a foreign entity, only disclosed through SEC filing.  Plaintiff encourages the Honorable Court to verify that statement independently, Plaintiff uses various sources including Bizapedia with two secondary sources as contrast/comparison.

b.    'An exceptional number of products and infrastructure, including electrical, battery, right down to the refrigerator and hair dryer are all, and inclusive Tesla derived, **STOLEN IP** records.

c.    By the same token of Wyss' philanthropic posture, up to and including political encroachment, in the evaluation of equity a principal assessment tool of the Honorable Court, how many of these Tesla plagiarists are betting against the bank to retain what they believe belong to them?  This in absence of voice to the contrary by the pleading before the Honorable Court.  To that end, Wyss holds to the same ethos as Bayer, and as facts provide, less a train ride, every human being was made vulnerable by personal choice of a small selected few who retain wealth garnered from fruit of the poisonous tree and, as a consequence have an unresolvable fracture within themselves which permits their perspective to be retained, protected.

d.    Plaintiff states pecuniary harm regarding the products associated with the Tesla fracture, fraud and plagiarism as there is no protection for the consumer, the Plaintiff, in assuring

safety in the pursuit of Life, Liberty and Property.  Plaintiff calls to the Honorable Court's attention that the medical industry, most especially those Wyss is in involved in but also PET scans which verify cancer cells and cancer growth are fractured as provided in the ECF Doc 105.

e.    Plaintiff states as a matter of record all of the foregoing is precisely the weapon being lodged against Donald John Trump, leveraging him, his independence and based on the unconstitutional determination of the New York Judiciary, his ability to conduct business – freely and control his real property as he sees fit, not dissimilar from Wyss.  The variant is squarely balanced on the Tesla IP records; holding hostage of Donald John Trump, and indeed these United States.  Plaintiff finds an absence of equity when two attempts on a man's life becomes less valuable and important to humanity than one's bank account.  For the good of all of humanity, Plaintiff prays over this Honorable Court in this most imperative evaluation.

111.    Plaintiff states the harms resulting from the foregoing incalculable, intent to exact a breach of her sovereign Right to the practice of Freedom of Religion of autonomous choosing, inclusive of her very core essence defining her sovereign status and, as facts provide, her private choice in whom she serves as adherence in formulating in the basis of all decisions, that of God, Almighty.

<u>RELIEF</u>

Plaintiff respectfully requests this Honorable Court grant its motion for preliminary injunction, all relief as set forth therein.  Plaintiff prays over the Honorable Court.

**CERTIFICATION OF SERVICE**

I HEREBY CERTIFY that I filed today, Monday, September 9, 2024, in accordance with Federal Rule of Civil Procedure 11, the foregoing with the Federal Clerk of the Court for the United Stated District Court, District of New Jersey, via electronic filing, which

will send notification of such filing to all parties registered for this case, including the

Defendant's counsel via the electronic filing system.

/s/   Mary B. Logan
Mary Basile Logan
*Pro-Se* Plaintiff

**cc:  All Counsel of Record (Via ECF)**