# U.S. DEPARTMENT OF HOMELAND SECURITY
# OFFICE OF INSPECTOR GENERAL

OIG-24-45                                                    August 14, 2024

FINAL REPORT

## FEMA's Inadequate Oversight Led to Delays in Closing Out Declared Disasters



EXHIBIT 5



# OFFICE OF INSPECTOR GENERAL

## U.S. Department of Homeland Security

*Washington, DC 20528 | www.oig.dhs.gov*

August 14, 2024

MEMORANDUM FOR:     The Honorable Deanne Criswell
                    Administrator
                    Federal Management Agency

FROM:               Joseph V. Cuffari, Ph.D.     JOSEPH V     Digitally signed by JOSEPH
                    Inspector General            CUFFARI      V CUFFARI
                                                              Date: 2024.08.14 12:58:52
                                                              -04'00'

SUBJECT:            *FEMA's Inadequate Oversight Led to Delays in Closing Out Declared Disasters*


Attached for your action is our final report, *FEMA's Inadequate Oversight Led to Delays in Closing Out Declared Disasters*. We incorporated the formal comments provided by your office.

The report contains two recommendations aimed at improving the closeout of declared disasters. Your office concurred with both recommendations. Based on information provided in your response to the draft report, we consider recommendation 1 open and unresolved. As prescribed by Department of Homeland Security Directive 077-01, *Follow-Up and Resolutions for the Office of Inspector General Report Recommendations*, within 90 days of the date of this memorandum, please provide our office with a written response that includes your (1) agreement or disagreement, (2) corrective action plan, and (3) target completion date for the recommendation. Also, please include responsible parties and any other supporting documentation necessary to inform us about the current status of the recommendation. Until your response is received and evaluated, the recommendation will be considered open and unresolved.

We consider recommendation 2 open and resolved. Once your office has fully implemented the recommendations, please submit a formal closeout letter to us within 30 days so that we may close the recommendations. The memorandum should be accompanied by evidence of completion of agreed-upon corrective actions and of the disposition of any monetary amounts.

Please send your response or closure request to OIGAuditsFollowup@oig.dhs.gov.

Consistent with our responsibility under the *Inspector General Act*, we will provide copies of our report to congressional committees with oversight and appropriation responsibility over the Department of Homeland Security. We will post the report on our website for public dissemination.

Please contact me with any questions, or your staff may contact Kristen Bernard, Deputy Inspector General, at (202) 981-6000.

Attachment

EXHIBIT 5



# DHS OIG HIGHLIGHTS

## *FEMA's Inadequate Oversight Led to Delays in Closing Out Declared Disasters*

**August 14, 2024**

## Why We Did This Audit

FEMA manages numerous disaster declarations, with billions of dollars in obligated funding. We reviewed disaster declarations that had been open for more than 10 years (as of October 2022) to determine to what extent FEMA manages closeout of declared disasters, per Federal regulations and FEMA program requirements.

## What We Recommend

We made two recommendations to improve FEMA's closeout of declared disasters.

**For Further Information:**
Contact our Office of Public Affairs at (202) 981-6000, or email us at:
DHS-OIG.OfficePublicAffairs@oig.dhs.gov.

## What We Found

The Federal Emergency Management Agency (FEMA) did not ensure that it closed out disaster declarations in a timely manner. We reviewed 79 disaster declarations and identified 26 programs with nearly $9.4 million in unliquidated funds that remained open beyond their approved periods of performance. These programs included public assistance, individual assistance, and hazard mitigation grant programs that were awarded in 2012 or earlier. This situation is problematic because costs incurred after the period of performance ends are not reimbursable.

Additionally, FEMA extended 41 program periods of performance or closeout liquidation periods without detailed documented justification, as required. These programs represent more than $7 billion in unliquidated funds that could potentially be returned to the Disaster Relief Fund. These extensions delayed project closures by up to 16 years, which, in some cases, resulted in time expended for administrative requirements equaling or exceeding the recipients' time to perform actual repair or construction work.

These issues occurred because FEMA Regional officials did not follow the closeout process. Also, Federal regulations and FEMA guidance provide no incentive to close out grants in a timely manner or consequences for failure to do so. Without improved oversight and stronger policies, billions of dollars of unliquidated funds that could otherwise be returned to the Disaster Relief Fund will remain obligated to state, territorial, tribal, or local governments and unavailable for use in providing relief in connection with current disasters.

## FEMA Response

FEMA concurred with both of our recommendations. Appendix B contains FEMA's management response in its entirety.

EXHIBIT 5

**OFFICE OF INSPECTOR GENERAL**
*U.S. Department of Homeland Security*

## Table of Contents

Background ........................................................................................................................... 1

Results of Audit ................................................................................................................... 3

    FEMA Did Not Close Programs After Periods of Performance Expired ................................ 3

    FEMA Approved Multiple POP and CLP Extensions ......................................................... 5

Conclusion ......................................................................................................................... 10

Recommendations............................................................................................................. 10

Management Comments and OIG Analysis......................................................................... 10

Appendix A: Objective, Scope, and Methodology............................................................... 12

DHS OIG's Access to DHS Information................................................................................ 13

Appendix B: FEMA Comments on the Draft Report............................................................. 14

Appendix C: Status of 79 Declarations within Audit Scope ................................................. 18

Appendix D: Potential Monetary Benefits .......................................................................... 21

Appendix E: Office of Audits Major Contributors to This Report ......................................... 22

Appendix F: Report Distribution ........................................................................................ 23

## Abbreviations

| | |
|---|---|
| C.F.R. | Code of Federal Regulations |
| CLP | closeout liquidation period |
| DRF | Disaster Relief Fund |
| FEMA | Federal Emergency Management Agency |
| HMGP | hazard mitigation grant program |
| IA | individual assistance |
| IFMIS | Integrated Financial Management Information System |
| OCFO | Office of the Chief Financial Officer |
| PA | public assistance |
| POP | period of performance |

**OFFICE OF INSPECTOR GENERAL**

*U.S. Department of Homeland Security*

## Background

Under the *Robert T. Stafford Disaster Relief and Emergency Assistance Act*, Title 42 of the United States Code (U.S.C.) § 5121, et seq., as amended (Stafford Act), the Federal Emergency Management Agency (FEMA) provides Federal assistance following presidentially declared major disasters or emergencies when the magnitude of an incident exceeds affected state, territorial, tribal, or local government capabilities to respond or recover.  FEMA provides this assistance in the form of awards (grants) under three main programs: public assistance (PA), hazard mitigation grant program (HMGP), and individual assistance (IA).  In administering these grants, FEMA must comply with government-wide rules pertaining to all Federal assistance.[1]

Congress appropriates money for disaster response in the Disaster Relief Fund (DRF).  FEMA manages the DRF and uses it to direct, coordinate, manage, and fund eligible response and recovery efforts pursuant to the Stafford Act.  However, given a significant increase in the number of natural disasters FEMA responds to annually, recipients' needs may exceed available appropriations.  Specifically, as of July 31, 2023, FEMA projected the DRF would have a $4.3 billion deficit at the end of September 2023.[2]  When the DRF is projected to be insufficient to meet Stafford Act requirements, FEMA must prioritize lifesaving and life-sustaining activities.  FEMA prioritizes response and urgent recovery efforts without interruption, but new obligations not necessary for these activities are paused under a procedure known as Immediate Needs Funding.  Because of the DRF deficit, the FEMA Administrator implemented Immediate Needs Funding in response to Hurricane Idalia in September 2023.

According to FEMA Manual 205-0-1, *Grants Management*, the work under each grant should occur within a certain timeframe, known as the period of performance (POP).  Costs incurred after the end of the POP are not allowable under the grant.  In some cases, FEMA issues POP extensions at the request of the recipient.[3]  Once the POP has expired or when all projects associated with the program are completed, FEMA considers the grant ready for closeout.  Within 90 days[4] after the POP has ended, a timeframe known as the closeout liquidation period (CLP), the recipient must submit to the applicable FEMA Regional office all financial performance and other reports required as a condition of the grant.  Once the FEMA Regional office reviews and approves final reports and analyses, it performs a final financial reconciliation, deobligates any remaining grant

---

[1] Title 2 of the Code of Federal Regulations (C.F.R.) Part 200 applies to FEMA awards for declarations issued on or after December 26, 2014.  However, FEMA regulations in 44 C.F.R. Part 13 and related Office of Management and Budget circulars and regulations referenced therein continue to govern declarations and awards made before December 26, 2014, including those declarations within our scope.

[2] FEMA's August 8, 2023 *Disaster Relief Fund: Monthly Report.*

[3] Recipients are the state, territorial, tribal, or local governments that receive an award directly from FEMA to carry out an activity under a FEMA assistance program.

[4] For awards made before November 12, 2020, including those declarations within our scope, all of a recipient's final program performance, financial, and other reports as required by the terms and conditions of the Federal award are due no later than 90 calendar days after the end date of the POP.

**OFFICE OF INSPECTOR GENERAL**
*U.S. Department of Homeland Security*

funds, and notifies the Office of the Chief Financial Officer (OCFO).  After the OCFO reviews and approves the information provided, the OCFO processes the closure and closes the grant through the Integrated Financial Management Information System (IFMIS).[5]  Any funds deobligated during this process are returned to the DRF, where they may be used for future disaster responses.

## Figure 1.  Generalized Closure Procedure for Grant Programs



Source: Department of Homeland Security Office of Inspector General analysis of FEMA's program closeout process

Once all the authorized grant programs associated with a disaster are closed, the FEMA Regional office requests that the OCFO close the disaster declaration/FEMA State Agreement.  The OCFO then confirms that all grant programs under the disaster are closed and closes out the disaster declaration/FEMA State Agreement and notifies the FEMA Regional office.  The FEMA Regional office then notifies the recipient of the closure.

As of October 2022, FEMA estimated that 847 disaster declarations with approximately $73 billion in unliquidated funds remained open.  For this audit, we focused on the 79 open disaster declarations[6] from this list that were declared in 2012 or earlier.  These 79 declarations had 89 authorized grant programs open as of October 2022 and totaled $8.3 billion in unliquidated funds (i.e., unliquidated obligations).  During the audit, FEMA completed the closure of 13 declarations and closed 16 grant programs associated with open declarations in our scope, returning an estimated $5.7 million to the DRF.

We conducted this audit to determine to what extent FEMA manages closeout of declared disasters in accordance with Federal regulations and FEMA program requirements.

---

[5] The IFMIS is FEMA's official accounting system that maintains all financial data for both internal and external financial reporting.
[6] As shown in Appendix C, we determined FEMA had actually closed 5 of the 79 declarations it reported as open well before 2022.

**OFFICE OF INSPECTOR GENERAL**
*U.S. Department of Homeland Security*

## Results of Audit

FEMA did not ensure it closed out disaster declarations in a timely manner. Specifically, we reviewed 79 disaster declarations and identified 26 programs with nearly $9.4 million in unliquidated funds that remained open beyond their approved POPs. These programs included PA, IA, and HMGP grant programs that were awarded in 2012 or earlier. This situation is problematic because costs incurred after the POP ends are not reimbursable.

Additionally, FEMA extended 41 programs' POP or CLP without detailed documented justification, as required. These programs represent more than $7 billion in unliquidated funds that could potentially be returned to the DRF. These extensions delayed project closures by up to 16 years, which, in some cases, resulted in time expended for administrative requirements equaling or exceeding the recipients' time to perform actual repair or construction work.

These issues occurred because FEMA Regional officials did not follow the closeout process. Also, Federal regulations and FEMA guidance provide no incentive to close out grants in a timely manner or consequences for failure to do so. Without improved oversight and stronger policies, billions of dollars of unliquidated funds that could otherwise be returned to the DRF will remain obligated to state, territorial, tribal, or local governments and unavailable for use in providing relief in connection with current disasters.

## FEMA Did Not Close Programs After Periods of Performance Expired

FEMA did not close out grant programs in a timely manner after their POPs expired. Per 44 C.F.R. § 13.50, the Federal agency will close out the award when it determines completion of all applicable administrative actions and required work.[7] The expiration of the POP drives the program closeout timeline, including FEMA's ability to approve extensions, unless work under a grant award is completed earlier. Because the POP sets the period during which allowable costs may be incurred, costs incurred after the end of the POP are not allowable under the award.[8] For awards made before November 12, 2020 (including all those in our audit scope), FEMA *should* make every effort to complete closeout actions no later than 1 year after receipt and acceptance of all final reports.[9] If the recipient does not perform all requirements under the terms and conditions of the award or does not submit required final reports, FEMA is permitted to initiate administrative closeout. Orderly and accurate closeout processes ensure accountability for grant dollars awarded, document FEMA decision making, and demonstrate compliance with Federal requirements.

---

[7] 44 C.F.R. § 13.50(a) (in effect for disasters within our scope, as discussed in footnote 1).

[8] FEMA Manual 205-0-1, *Grants Management*.

[9] Under guidance for awards made on or after November 12, 2020, FEMA *must* close a program within 1 year of the end of the POP even when a recipient does not complete its closeout requirements, resulting in more timely closure of declarations. This is FEMA's standard closeout process.

**OFFICE OF INSPECTOR GENERAL**
*U.S. Department of Homeland Security*

As of June 30, 2023, 26 of the 89 (29 percent) FEMA grant programs within our scope remained open after their POPs expired.  All 26 program POPs were expired by at least 12 months and, based on our review, none received an extension from FEMA.  Although the 26 programs' POPs had expired and the programs passed the 90-day CLP by as much as 68 months, FEMA did not use its authority to either extend the POP prior to its expiration or administratively close out the programs.  This situation is problematic because costs incurred after the POP ends are not reimbursable, according to FEMA Manual 205-0-1 *Grants Management*.  These 26 grant programs are associated with 26 separate disaster declarations and involve nearly $9.4 million in unliquidated funds (see Table 1) that could potentially be deobligated and returned to the DRF.

### Table 1.  Open Programs with Expired POPs

| Declaration | Declaration Date | Expired Program | POP Date | Months Past POP as of June 2023 | Unliquidated Obligation as of June 2023 |
|---|---|---|---|---|---|
| 1895DR | Mar 2010 | HMGP | Apr 2022 | 14 | $243,019 |
| 1995DR | Jun 2011 | PA | Dec 2017 | 65 | $954,973 |
| 4026DR | Sep 2011 | PA | Sep 2019 | 45 | $271,353 |
| 4028DR | Sep 2011 | HMGP | Jun 2022 | 12 | $208 |
| 4087DR | Oct 2012 | HMGP | Jul 2021 | 23 | $0 |
| 4089DR | Nov 2012 | PA | Nov 2020 | 31 | $702,273 |
| 1807DR | Oct 2008 | PA | Aug 2017 | 69 | $3,132 |
| 1939DR | Sep 2010 | PA | May 2020 | 36 | $407,645 |
| 1946DR | Oct 2010 | PA | Jun 2021 | 24 | $0 |
| 1949DR | Nov 2010 | PA | Jul 2017 | 71 | $10,203 |
| 4017DR | Aug 2011 | PA | Apr 2022 | 14 | $3,252,710 |
| 4031DR | Sep 2011 | PA | Jun 2022 | 12 | $1,061,970 |
| 1604DR | Aug 2005 | HMGP | Sep 2019 | 17 | $95,522 |
| 1841DR | May 2009 | HMGP | Mar 2022 | 14 | $3,888 |
| 1912DR | May 2010 | HMGP | Mar 2022 | 14 | $5 |
| 1935DR | Aug 2010 | HMGP | Aug 2019 | 46 | $0 |
| 4047DR | Nov 2011 | PA | Dec 2021 | 17 | $1,222,901 |
| 4079DR | Aug 2012 | PA | Apr 2022 | 14 | $0 |
| 1586DR | Apr 2005 | PA | Sep 2020 | 33 | $4,151 |
| 1660DR | Sep 2006 | PA | Sep 2020 | 33 | $16,089 |
| 1884DR | Mar 2010 | PA | Apr 2022 | 14 | $480,129 |
| 1888DR | Mar 2010 | PA | Mar 2018 | 63 | $566,489 |
| 1952DR | Jan 2011 | PA | Dec 2021 | 17 | $57,623 |
| 1967DR | Apr 2011 | PA | Dec 2020 | 29 | $0 |

**OFFICE OF INSPECTOR GENERAL**
*U.S. Department of Homeland Security*

| Declaration | Declaration Date | Expired Program | POP Date | Months Past POP as of June 2023 | Unliquidated Obligation as of June 2023 |
|---|---|---|---|---|---|
| 1968DR | Apr 2011 | PA | Apr 2019 | 50 | $2 |
| 4094DR | Nov 2012 | HMGP | Jan 2022 | 17 | $86,753 |
| | | | | Total | $9,441,038 |

Source: DHS OIG analysis of expired POPs

Based on our review, this occurred because FEMA Regional officials' oversight of the closeout process was insufficient.  Further, the open-ended nature of the guidance under 44 C.F.R. provides no incentive for FEMA to close out grants made before November 12, 2020, in a timely manner or consequences for failure to do so.  In addition, the guidance provides no incentive or direction for recipients or FEMA to submit and collect final reports to close out disaster declarations in a timely manner, which increases the potential for waste and abuse of funds.

## FEMA Approved Multiple POP and CLP Extensions

FEMA maintained inconsistent information when documenting its approval of time extensions that delayed the closeout of older disasters.  Specifically, of the 89 grant programs reviewed, 33 (37 percent) have POP extensions and 8 (9 percent) have CLP extensions.  These programs represent more than $7 billion in obligated funds that could potentially be returned to the DRF.

**FEMA Extended POPs without Sufficiently Detailed and Documented Justification**

Of the 33 POP extensions, FEMA approved 24 (73 percent) for PA programs and 9 (27 percent) for HMGPs.  FEMA extended the POP end dates for up to 188 months (15 years, 8 months) past the initial deadline.  As of June 30, 2023, these 33 programs had more than $7 billion in unliquidated funding that could potentially be returned to the DRF.  Table 2 shows the open programs in our scope that received a POP extension.

### Table 2.  Open Programs with POP Extensions

| Declaration | Program | Initial POP End Date | Extended POP End Date | Extension Months | Unliquidated Funds as of June 2023 |
|---|---|---|---|---|---|
| 1603DR | HMGP | Aug 2009 | May 2025 | 188 | $167,266,667 |
| 1603DR | PA | Aug 2009 | Aug 2024 | 179 | $1,621,107,792 |
| 1604DR | PA | Aug 2009 | Dec 2023 | 172 | $103,796,090 |
| 1605DR | HMGP | Aug 2009 | Apr 2023 | 164 | $589,044 |
| 1607DR | HMGP | Sep 2009 | Jun 2023 | 164 | $2,265,200 |

**OFFICE OF INSPECTOR GENERAL**

*U.S. Department of Homeland Security*

| Declaration | Program | Initial POP End Date | Extended POP End Date | Extension Months | Unliquidated Funds as of June 2023 |
|---|---|---|---|---|---|
| 1607DR | PA | Sep 2009 | Apr 2023 | 163 | $23,036,711 |
| 1671DR | PA | Dec 2010 | Jun 2023 | 150 | $258,919 |
| 1786DR | HMGP | Sep 2012 | Feb 2025 | 149 | $54,385,472 |
| 1731DR | HMGP | Oct 2011 | Oct 2023 | 143 | $819,407 |
| 1734DR | PA | Dec 2011 | Jun 2023 | 138 | $707,992 |
| 1791DR | PA | Sep 2012 | Dec 2023 | 135 | $35,821,666 |
| 1792DR | HMGP | Sep 2012 | Dec 2023 | 135 | $13,818,810 |
| 1783DR | PA | Aug 2012 | Jun 2023 | 130 | $6,462,730 |
| 1786DR | PA | Sep 2012 | Apr 2023 | 127 | $11,717,351 |
| 1780DR | PA | Jul 2012 | Dec 2022 | 125 | $15,008 |
| 1817DR | PA | Jan 2013 | Jun 2023 | 125 | $858,251 |
| 4023DR | PA | Sep 2015 | Dec 2025 | 123 | $724,681 |
| 4085DR | PA | Oct 2016 | Sep 2026 | 119 | $4,496,721,829 |
| 1909DR | PA | May 2014 | Dec 2023 | 115 | $18,503,813 |
| 1963DR | PA | Mar 2014 | Oct 2023 | 115 | $3,207,379 |
| 4087DR | PA | Oct 2016 | Dec 2025 | 110 | $8,723,778 |
| 4086DR | PA | Oct 2016 | Oct 2025 | 107 | $359,704,171 |
| 4020DR | PA | Aug 2015 | Dec 2023 | 100 | $21,800,591 |
| 4080DR | HMGP | Aug 2016 | Dec 2025 | 111 | $20,010,788 |
| 1975DR | PA | May 2015 | Jun 2023 | 97 | $2,964,888 |
| 4022DR | HMGP | Sep 2015 | Sep 2023 | 96 | $7,916,110 |
| 4021DR | PA | Aug 2015 | Jun 2023 | 93 | $1,333,489 |
| 4051DR | HMGP | Jan 2016 | Apr 2023 | 87 | $161 |
| 4056DR | PA | Mar 2016 | Jun 2023 | 87 | $39,450 |
| 4094DR | PA | Nov 2016 | Dec 2023 | 85 | $3,302,522 |
| 4097DR | PA | Dec 2016 | Dec 2023 | 84 | $64,582 |
| 4083DR | PA | Sep 2016 | Jun 2023 | 81 | $4,521 |
| 4080DR | PA | Aug 2016 | Apr 2023 | 79 | $45,303,829 |
| **Total** | | | | | **$7,033,253,692** |

Source: DHS OIG analysis of FEMA POP extensions letters

According to guidance governing grants,[10] initial POP end dates are set from the date a disaster is declared, or from the opening of the application period, and initially extend 4 years. Programs may receive POP date extensions to provide additional time for the recipient to complete work and incur allowable costs. Recipients may extend project completion end dates without seeking

---

[10] FEMA Manual 205-0-1, *Grants Management.*

FEMA approval, as set forth in Table 3, based on extenuating circumstances or unusual project requirements beyond the control of a subrecipient.[11]

**Table 3.  Project Completion Deadline Extensions Not Requiring FEMA Approval**

| Type of Work | Initial Deadline (Months) | Additional Time (Months) | Total (Months) |
|---|---|---|---|
| Debris Clearance | 6 | 6 | 12 |
| Emergency | 6 | 6 | 12 |
| Permanent | 18 | 30 | 48 |

Source: 44 C.F.R. § 206.204 (in effect for disasters within our scope, as discussed in footnote 1)

Extensions beyond the timelines in Table 3 require FEMA approval.[12]  According to FEMA Manual 205-0-1, in determining whether to allow a POP extension, FEMA staff should consider whether the extension is right, allowed, necessary, reasonable, and defensible; whether the recipient has provided a sound rationale; and whether there are any other pertinent facts. FEMA's determination must be documented in writing and include the rationale for the decision.  However, documentation for the POP extensions within our scope of review did not always include FEMA's rationale for the decision to extend.  Instead, FEMA's POP extension approval letters contained generally vague justification to support FEMA's decision.

The following are examples of reasons FEMA provided to support approval of a POP extension:

- <u>Declaration Declared 2005, POP Extended to December 2023</u>
  "The subrecipient notes that construction of this type and magnitude is highly susceptible to unforeseen circumstances and complicating factors that can delay the work.  Further, the construction work must proceed in a methodical manner to prevent failure of the existing system while repairs are made to the other portions of the infrastructure."

- <u>Declaration Declared 2010, POP Extended to December 2023</u>
  "Delays were related to the subrecipient requesting a scope of work change for additional funding."

- <u>Declaration Declared 2010, POP Extended to December 2023</u>
  "Delays were related to acquiring additional information as it relates to the partial approval of the hazard mitigation proposal."

---

[11] A subrecipient is a non-Federal entity that receives a subaward from a pass-through entity (recipient) to carry out part of the FEMA award.

[12] 44 C.F.R. §§ 206.204(c)(1), (c)(2)(ii), and (d) (in effect for disasters within our scope, as discussed in footnote 1).

**OFFICE OF INSPECTOR GENERAL**
*U.S. Department of Homeland Security*

FEMA extended multiple program POPs beyond the initial 4-year period without detailed, documented justification because Federal regulations and FEMA's guidelines are open-ended, and the factors for consideration when approving extensions are subjective. As a result, the potential risk for fraud, waste, and abuse increases the longer a program remains open and unliquidated funds continue to be available to recipients and subrecipients.

**FEMA Extended Closeout Liquidation Periods Beyond the Required 90-day Period**

FEMA approved CLP extensions for eight programs within our scope of review—six PA programs and two HMGPs. Recipients received as many as nine extensions for up to 126 months (10 years, 6 months) past the initial POP. As of June 30, 2023, these eight programs had approximately $9.2 million in unliquidated funding that could potentially be returned to the DRF (see Table 4).

### Table 4.  Open Programs with CLP Extensions

| Declaration | Program | POP End Date | Extended CLP End Date | # Ext | Extension Months | Unliquidated Funds June 30, 2023 |
|---|---|---|---|---|---|---|
| **1831DR** | PA | Apr 2013 | Oct 2023 | 8 | **126** | $1,297,183 |
| **1840DR** | PA | Jun 2013 | Oct 2023 | 9 | **124** | $46,544 |
| **1609DR** | PA | Nov 2015 | Dec 2023 | 7 | **97** | $3,792,142 |
| **1785DR** | PA | Mar 2017 | Dec 2023 | 9 | **81** | $816,455 |
| **4084DR** | PA | Jan 2017 | Jun 2023 | 8 | **77** | $1,202,829 |
| **4068DR** | PA | Aug 2020 | Jun 2023 | 5 | **33** | $1,161,242 |
| **1971DR** | HMGP | Jun 2022 | May 2023 | 3 | **11** | $840,461 |
| **1818DR** | HMGP | Sep 2020 | Feb 2021 | 1 | **5** | $8,776 |
| **Total** | | | | | | **$9,165,632** |

Source: DHS OIG analysis of FEMA CLP extension letters

Per FEMA Manual 205-0-1, in conjunction with 44 C.F.R. § 13.50, once the POP has expired or when all projects associated with the program are completed, FEMA considers the grant ready for closeout. During the CLP (i.e., within 90 days[13] after the POP has ended), the recipient must submit all financial performance and other reports required as a condition of the grant to the FEMA Regional office.

---

[13] For awards made before November 12, 2020, including those declarations within our scope, all of a recipient's final program performance, financial, and other reports as required by the terms and conditions of the Federal award are due no later than 90 calendar days after the end date of the POP.

**OFFICE OF INSPECTOR GENERAL**
*U.S. Department of Homeland Security*

CLP extension approval letters generally had broad descriptions as justification for FEMA's extension approvals. Justifications for extension included recipient staff redirected to support other disasters, FEMA and recipients working together to review administrative costs and reconciliations, and technical issues with recipient and FEMA systems. However, although 44 C.F.R. sets a standard CLP of 90 days,[14] these extensions, in some cases, resulted in CLPs equal to or in excess of the years spent performing the repair and construction work under the POP. For example:

- Declaration 1609DR was declared in October 2005, and the POP expired more than 10 years later in November 2015. FEMA extended the CLP to December 2023, more than 8 years after the end of the POP.

- Declaration 1785DR was declared in August 2008, and the POP expired nearly 9 years later in March 2017. FEMA extended the CLP to December 2023, nearly 7 years after the POP expired.

- Declaration 1831DR was declared in April 2009, and the POP expired 4 years later, in April 2013. FEMA extended the CLP to October 2023, more than 10 years after the end of the POP.

- Declaration 1840DR was declared in May 2009, and the POP expired nearly 4 years later, in June 2013. FEMA extended the CLP to October 2023, more than 10 years after the end of the POP.

Additionally, as shown in Table 4, seven of the eight programs received multiple CLP extensions—up to nine extensions in two cases. Of these, two program extensions had expired—one in February 2021 and the other in December 2022. The February 2021 deadline was never extended, but the program remains open. As for the December 2022 expiration, the recipient requested an extension in May 2023. However, FEMA has not yet approved the extension.

FEMA granted excessive CLP extensions past the 90-day requirement to submit all financial performance and other reports as a condition of the grant because Federal regulations and FEMA's guidelines are open-ended, and the nature of approving extensions is subjective. For example, FEMA officials stated that the C.F.R. does not limit the number of extensions allowed. As a result, FEMA continues to grant multiple CLP extensions in some cases. FEMA's continual extensions result in unliquidated funds that could potentially be returned to the DRF to reduce projected deficits instead remaining in administrative limbo. Further, FEMA's inadequate oversight and accountability encourage excessive use of POP and CLP extensions.

---

[14] 44 C.F.R. § 13.50(b).



## Conclusion

As of July 2023, the DRF was projected to have a $4.3 billion deficit by the end of fiscal year 2023.[15]  Continued delays in FEMA closing older disasters put an added strain on the primary source of funding for the Federal Government's disaster relief program by withholding the return of $7.1 billion in potential monetary benefits, as detailed in Appendix D.  Without stronger policies and improved oversight, FEMA risks continuing to close disaster programs in an untimely manner.  Doing so prevents taxpayer dollars associated with expired or excessively extended grants from being returned to the DRF.

## Recommendations

**Recommendation 1:** We recommend that the FEMA Administrator direct FEMA Regions to:

- begin administrative closeout of the 26 grant programs we identified with expired periods of performance to the extent permitted by the Stafford Act, for those with no pending requests for extension or lacking acceptable justifications for extension, and deobligate the associated $9.4 million in remaining funds;

- assess and close, as appropriate, the 42 grant programs in our scope representing $7 billion in unliquidated funding; and

- conduct a review of all authorized grant programs with expired periods of performance to determine whether to administratively closeout and deobligate remaining fund balances, to the extent permitted by the Stafford Act, for those with no pending requests for extension or lacking acceptable justifications for extension.

**Recommendation 2:** We recommend that the FEMA Administrator consistently apply FEMA Manual 205-0-1, *Grants Management* requirements, including that the recipient's request and FEMA's determination for extensions must be in writing and signed, and that FEMA's determination include the rationale for the decision, including how the facts meet the applicable guidelines.

## Management Comments and OIG Analysis

FEMA provided management comments on a draft of this report.  We included the comments in their entirety in Appendix B.  We also received technical comments from FEMA on the draft

---

[15] FEMA enacted Immediate Needs Funding (INF) on August 29, 2023, which enabled the agency to exclude an estimated $8 billion in projected obligations and avoid this projected negative balance.  At the end of fiscal year 2023, with the INF in effect, the DRF balance was a positive $3.2 billion.

**OFFICE OF INSPECTOR GENERAL**
*U.S. Department of Homeland Security*

report, and we revised the report as appropriate.  FEMA concurred with both recommendations. We consider recommendation 1 open and unresolved, and recommendation 2 open and resolved pending receipt of documentation to support actions taken.  A summary of FEMA's response and our analysis follows.

**FEMA Response to Recommendation 1:** Concur.  FEMA stated its regions will review all grant programs with expired POPs considered during this audit, close any that can be closed, and deobligate any funds as appropriate by the estimated completion date of September 30, 2025.

**OIG Analysis:** Although FEMA concurred with the recommendation, FEMA's proposed corrective actions do not fully meet the intent of the recommendation, and therefore we consider it open and unresolved.  FEMA's plan includes a review of expired programs considered during the audit and does not address our recommendation to review all authorized grant programs with expired POPs.  For this recommendation to be considered open and resolved, FEMA should include all expired and open programs in its planned review and take appropriate closeout and deobligation actions.

**FEMA Response to Recommendation 2:** Concur.  FEMA stated that it enforces compliance with FEMA Manual 205-0-1, *Grants Management*, dated November 3, 2023, by using the management review process to validate that all requests are properly documented and signed and conducts internal training on the consistent application of the manual.  FEMA will send DHS OIG documentation corroborating the actions taken by the estimated completion date of February 28, 2025.

**OIG Analysis:** FEMA's proposed corrective action meets the intent of the recommendation.  We consider the recommendation open and resolved pending receipt of the supporting documentation that shows consistent use of FEMA Manual 205-0-1, *Grants Management*.

**OFFICE OF INSPECTOR GENERAL**
*U.S. Department of Homeland Security*

---

**Appendix A:**
**Objective, Scope, and Methodology**

The Department of Homeland Security Office of Inspector General was established by the
*Homeland Security Act of 2002* (Public Law 107–296) by amendment to the *Inspector General Act
of 1978*.

The objective of our audit was to determine to what extent FEMA manages the closeout of
declared disasters in accordance with Federal regulations and FEMA program requirements. To
determine our scope, we requested and obtained from FEMA's OCFO a dataset that included 847
open declarations as of October 2022. After considering the average time for FEMA to close a
declaration (7.4 years, according to the Regions' survey responses) and the demanding
circumstances that surround disasters, the team judgmentally included disasters that were
declared in or before 2012 that remained open as of October 2022 in our audit scope. We
reviewed 79 disasters declared between 1998 and 2012 that were still open according to FEMA
(see Appendix C).

To determine the reliability of the data we used during this audit, we assessed the dataset for
both completeness and accuracy. To assess the completeness of the dataset, we consulted with
DHS OIG's Data Services Division team to compare the list of open declarations received from
FEMA OCFO with the list of open declarations the team retrieved from FEMA's web-based
Business Objects/Web Intelligence database. Our review of the datasets revealed immaterial
variances. To assess the accuracy of the dataset, we reviewed each of the 79 declarations to
confirm if they were open or closed. We determined the data in our dataset matched nearly 100
percent with what we directly observed in source documentation. After our data reliability
assessments, we concluded the data was sufficiently reliable to support the findings,
recommendations, and conclusions in the report.

To answer our objective, we reviewed applicable laws, regulations, FEMA guidance, policies,
closeout procedures for declared disasters, and financial reports. We also reviewed prior DHS
OIG, U.S. Government Accountability Office (GAO), and other related reports. We analyzed the 79
open declarations to determine the open authorized programs, POPs, projects to complete,
amounts awarded, and amounts of unliquidated obligations.

In February, March, and April 2023, we conducted on-site interviews with members of FEMA
Region 2, FEMA Region 4, and FEMA OCFO's Field-Based Office, respectively, and in May 2023 we
conducted an interview with the FEMA Finance Center. We held these interviews to discuss each
office's roles and processes for closing out declared disasters and to determine the status of the
open declarations within our audit scope. We also corresponded with other FEMA Regions (1, 5,
6, 7, 9, and 10) to request documentation to determine the statuses of their open declarations
within the audit scope.

**OFFICE OF INSPECTOR GENERAL**
*U.S. Department of Homeland Security*

We assessed the internal controls significant to the audit objective, audit risk, and the potential for fraud.  This included reviewing relevant FEMA policies and procedures, and interviewing personnel from FEMA Regions and OCFO.  We designed our audit procedures to include steps to mitigate the risks we identified.

We conducted this performance audit from October 2022 through August 2023 pursuant to the *Inspector General Act of 1978*, 5 U.S.C. §§ 401-424, and according to generally accepted government auditing standards.  Those standards require that we plan and perform the audit to obtain sufficient, appropriate evidence to provide a reasonable basis for our findings and conclusions based on our audit objective.  We believe that the evidence obtained provides a reasonable basis for our findings and conclusions based on our audit objective.

## DHS OIG's Access to DHS Information

During this audit, FEMA provided timely responses to our requests for information and did not delay or deny access to information we requested.

**OFFICE OF INSPECTOR GENERAL**
*U.S. Department of Homeland Security*

**Appendix B:**
**FEMA Comments on the Draft Report**

U.S. Department of Homeland Security
Washington, DC 20472

 FEMA

June 20, 2024

MEMORANDUM FOR:    Joseph V. Cuffari, Ph.D.
                   Inspector General

FROM:              Cynthia Spishak      CYNTHIA   Digitally signed by
                   Associate Administrator  SPISHAK   CYNTHIA SPISHAK
                   Office of Policy and Program Analysis      Date: 2024.06.20 15:34:42 -04'00'

SUBJECT:           Management Response to Draft Report: "FEMA's Inadequate
                   Oversight Led to Delays in Closing Out Declared
                   Disasters" (Project No. 22-035-AUD-FEMA)

Thank you for the opportunity to comment on this draft report. The Federal Emergency
Management Agency (FEMA) appreciates the work of the Office of Inspector General
(OIG) in planning and conducting its review and issuing this report.

FEMA leadership is pleased to note OIG's recognition that during—the period of this
audit—FEMA completed the closure of 13 declarations and closed 16 grant programs
associated with open declarations within the scope of this engagement, returning an
estimated $5.7 million to the Disaster Relief Fund (DRF). However, FEMA is concerned
that several of OIG's assertions in this draft report are misleading, as it is missing critical
context that gives readers a more accurate and nuanced understanding the myriad factors
that play into FEMA's processes for management of disaster declarations.

For example, the draft report asserts that FEMA granted "excessive" extensions, but
makes this characterization without articulating any quantitative measures or grant
standards that could be used to benchmark such a description. Further, the report only
briefly mentions a few of the many reasons why programs may require extensions to their
period of performance, which can range from the magnitude and complexity of the
project to construction requirements, inclement weather, requirements for environmental
impact reviews and other authorized and necessary regulatory, administrative, or legal
actions.

In addition, FEMA actions to grant extensions to the period of performance based on
extenuating circumstances were compliant with Title 44, Code of Federal Regulations §

**OFFICE OF INSPECTOR GENERAL**
*U.S. Department of Homeland Security*

206.204.[1]  For example, "DR-1841-KY-HMGP" and "DR-1604-MS-HMGP"— codes for declarations cited within the draft report—are both currently undergoing financial reporting reconciliation which must be completed before they can be closed.  Such administrative actions are conducted beyond the expired Period of Performance (POPs) as part of the closeout process, and are required, but were not taken into consideration in the OIG's report, along with appeals, lawsuits, or debt collection.  Nor was this additional context taken into consideration when the report discusses expired POPs beyond the Closeout Liquidation Periods.  "DR-4017-PR," for instance, was under appeal and could not be closed until the appeal process was completed.  However, the appeal for DR-4017-PR is now complete and the disaster is scheduled to be closed at the end of June 2024.  Stating that FEMA's Regional officials' oversight of the closeout process was "insufficient" without acknowledging circumstances that may cause delays is misleading at best.

Moreover, the OIG's draft report notes that the number of grant programs reviewed with extensions (42 out of 89 grant programs reviewed, or 47 percent) represent over $7 billion in obligated funds that could be potentially returned to the DRF.  However, the report does not clarify that four events from Region 2 account for nearly $4.9 billion (or approximately 70 percent) of the total unliquidated funds, and that most of these dollars ($4.5 billion) are for only one grant program—"DR-4085-NY"—which is in response to Hurricane Sandy.  Nor does the report clarify for readers that the unliquidated balance of projects is only 12 percent of the original obligated amounts, which is a clear demonstration of FEMA's commitment to completing the recovery from Hurricane Sandy.

It is important for readers to understand that Hurricane Sandy was a catastrophic event that resulted in nearly $15 billion in Public Assistance (PA) grants to support the State's recovery.  The requests to extend the POPs for Hurricane Sandy were fully documented and justified based on the complex, large-scale construction projects necessary to make repairs to New York's infrastructure, including critical tunnels, waste-water treatment plants, hospitals, and housing facilities.

As of May 2024, DR-4085-NY has an unliquidated balance $4.3 billion.  However, nearly $2.5 billion (58 percent) of this balance related to for Section 428 PA Alternate Procedures of the "Robert T. Stafford Disaster Relief and Emergency Assistance Act"[2] for large permanent projects.  Section 428 grants are fixed costs, intended to improve the flexibility of administering PA grants.  Accordingly, the Applicant may keep any excess funds to be used for cost-effective activities that mitigate the risk of future damage, hardship, or suffering from a major disaster, and activities that improve future PA

---

[1] https://www.govinfo.gov/content/pkg/CFR-2010-title44-vol1/pdf/CFR-2010-title44-vol1-sec206-204.pdf
[2] https://www.govinfo.gov/content/pkg/COMPS-2977/pdf/COMPS-2977.pdf

2

operations or planning. Therefore, $2.5 billion from Hurricane Sandy cannot be returned to the DRF, contrary to the presumption in the OIG's draft report.

In addition, readers of OIG's report should be aware that FEMA Recovery PA Division's Program Support and Management Branch is currently developing a "Public Assistance Backlog Strategy Implementation Guide" (Guide) which, once complete, will establish a Backlog Administrative Closeout Process (BACP) that provides guidance to regional PA offices and recipients on closing large projects that are open past their project completion deadline. This Guide will be a structured, standardized framework for the BACP across all open declarations and regions, while maintaining region-specific practicality. This will enhance the efficiency and effectiveness of: (1) the closeout process; (2) resolving identified challenges; and (3) capitalizing on further development opportunities. Upon completion of this Guide, FEMA's Office of Response and Recovery will disseminate the Guide to all FEMA Regions.

The draft report contained two recommendations with which FEMA concurs. Enclosed find our detailed response to each recommendation. FEMA previously submitted technical comments addressing several accuracy, contextual, and other issues under a separate cover for OIG's consideration.

Thank you for the opportunity to review and comment on this draft report. Please feel free to contact me if you have any questions.

Enclosure

3

**OFFICE OF INSPECTOR GENERAL**
*U.S. Department of Homeland Security*

Enclosure:  Management Response to Recommendations
Contained in OIG 22-035-AUD-FEMA

<u>OIG recommended the FEMA Administrator</u>:

**Recommendation 1:**  Direct FEMA Regions to

- Begin administrative closeout of the 26 grant programs we identified with expired periods of performance to the extent permitted by the Stafford Act, for those with no pending requests for extension or lacking acceptable justifications for extension, and deobligate the associated $9.4 million in remaining funds;
- Assess and close, as appropriate, the 42 grant programs in our scope representing $7 billion in unliquidated funding; and
- Conduct a review of all authorized grant programs with expired periods of performance to determine whether to begin the administrative closeout process and deobligate remaining fund balances, to the extent permitted by the Stafford Act, for those with no pending requests for extension or lacking acceptable justifications for extension.

**Response:**  Concur.  FEMA Regions will review all grant programs with expired POPs considered during this audit, close any that can be closed, and deobligate any funds as appropriate.  Estimated Completion Date (ECD):  September 30, 2025.

**Recommendation 2:**  Consistently apply FEMA Manual 205-0-1, "Grants Management" requirements, including that the recipient's request and FEMA's determination for extensions must be in writing and signed, and that FEMA's determination include the rationale for the decision, including how the facts meet the applicable guidelines.

**Response:**  Concur.  FEMA enforces compliance with FEMA Manual 205-0-1, "Grants Management," dated November 3, 2023, requirements by utilizing the management review process to validate all requests are properly documented and signed.  In addition, FEMA conducts internal training on the consistent application of FEMA Manual 205-0-1.  FEMA will send the OIG documentation corroborating the actions taken to address this recommendation with a request that OIG consider this recommendation resolved and closed, as implemented.  ECD: February 28, 2025.

4



**OFFICE OF INSPECTOR GENERAL**
*U.S. Department of Homeland Security*

**Appendix C:**
**Status of 79 Declarations within Audit Scope**

| No. | DECLARATION | REGION | STATE | INCIDENT TYPE | DECLARATION DATE | STATUS | DATE CLOSED |
|---|---|---|---|---|---|---|---|
| 1 | 2196FS | 09 | HI | Fire | 3/16/1998 | Closed | 7/22/1999 |
| 2 | 1236DR | 05 | WI | Severe Storm(s) | 7/24/1998 | Closed | 5/12/2010 |
| 3 | 1545DR | 04 | FL | Hurricane | 9/4/2004 | Closed | 4/6/2023 |
| 4 | 1561DR | 04 | FL | Hurricane | 9/26/2004 | Closed | 4/4/2023 |
| 5 | 1586DR | 09 | AZ | Severe Storm(s) | 4/14/2005 | Open | - |
| 6 | 1603DR | 06 | LA | Hurricane | 8/29/2005 | Open | - |
| 7 | 1604DR | 04 | MS | Hurricane | 8/29/2005 | Open | - |
| 8 | 1605DR | 04 | AL | Hurricane | 8/29/2005 | Open | - |
| 9 | 1607DR | 06 | LA | Hurricane | 9/24/2005 | Open | - |
| 10 | 1609DR | 04 | FL | Hurricane | 10/24/2005 | Open | - |
| 11 | 1660DR | 09 | AZ | Severe Storm(s) | 9/7/2006 | Open | - |
| 12 | 1664DR | 09 | HI | Earthquake | 10/17/2006 | Closed | 3/6/2023 |
| 13 | 1671DR | 10 | WA | Severe Storm(s) | 12/12/2006 | Open | - |
| 14 | 1731DR | 09 | CA | Fire | 10/24/2007 | Open | - |
| 15 | 1734DR | 10 | WA | Severe Storm(s) | 12/8/2007 | Open | - |
| 16 | 1763DR | 07 | IA | Severe Storm(s) | 5/27/2008 | Closed | 12/12/2022 |
| 17 | 1780DR | 06 | TX | Hurricane | 7/24/2008 | Open | - |
| 18 | 1783DR | 06 | NM | Severe Storm(s) | 8/14/2008 | Open | - |
| 19 | 1785DR | 04 | FL | Severe Storm(s) | 8/24/2008 | Open | - |
| 20 | 1786DR | 06 | LA | Hurricane | 9/2/2008 | Open | - |
| 21 | 1791DR | 06 | TX | Hurricane | 9/13/2008 | Open | - |
| 22 | 1792DR | 06 | LA | Hurricane | 9/13/2008 | Open | - |
| 23 | 1807DR | 02 | VI | Hurricane | 10/29/2008 | Open | - |
| 24 | 1817DR | 10 | WA | Flood | 1/30/2009 | Open | - |
| 25 | 1818DR | 04 | KY | Severe Ice Storm | 2/5/2009 | Open | - |
| 26 | 1831DR | 04 | FL | Severe Storm(s) | 4/21/2009 | Open | - |
| 27 | 1840DR | 04 | FL | Severe Storm(s) | 5/27/2009 | Open | - |
| 28 | 1841DR | 04 | KY | Severe Storm(s) | 5/29/2009 | Open | - |
| 29 | 1853DR | 07 | NE | Severe Storm(s) | 7/31/2009 | Closed | 9/13/2016 |
| 30 | 1859DR | 09 | AS | Earthquake | 9/29/2009 | Open | - |

**OFFICE OF INSPECTOR GENERAL**

*U.S. Department of Homeland Security*

| No. | DECLARATION | REGION | STATE | INCIDENT TYPE | DECLARATION DATE | STATUS | DATE CLOSED |
|-----|-------------|--------|-------|---------------|------------------|--------|-------------|
| 31 | 1884DR | 09 | CA | Severe Storm(s) | 3/8/2010 | Open | - |
| 32 | 1888DR | 09 | AZ | Severe Storm(s) | 3/18/2010 | Open | - |
| 33 | 1895DR | 01 | MA | Severe Storm(s) | 3/29/2010 | Open | - |
| 34 | 1909DR | 04 | TN | Severe Storm(s) | 5/4/2010 | Open | - |
| 35 | 1912DR | 04 | KY | Severe Storm(s) | 5/11/2010 | Open | - |
| 36 | 1925DR | 04 | KY | Severe Storm(s) | 7/23/2010 | Closed | 3/30/2023 |
| 37 | 1935DR | 05 | IL | Severe Storm(s) | 8/19/2010 | Open | - |
| 38 | 1939DR | 02 | VI | Hurricane | 9/28/2010 | Open | - |
| 39 | 1946DR | 02 | PR | Severe Storm(s) | 10/26/2010 | Open | - |
| 40 | 1949DR | 02 | VI | Severe Storm(s) | 11/24/2010 | Open | - |
| 41 | 1950DR | 09 | AZ | Severe Storm(s) | 12/21/2010 | Closed | 10/16/2017 |
| 42 | 1952DR | 09 | CA | Flood | 1/26/2011 | Open | - |
| 43 | 1960DR | 05 | IL | Snow | 3/17/2011 | Closed | 11/25/2022 |
| 44 | 1963DR | 10 | WA | Severe Storm(s) | 3/25/2011 | Open | - |
| 45 | 1967DR | 09 | HI | Tsunami | 4/8/2011 | Open | - |
| 46 | 1968DR | 09 | CA | Tsunami | 4/18/2011 | Open | - |
| 47 | 1971DR | 04 | AL | Severe Storm(s) | 4/28/2011 | Open | - |
| 48 | 1975DR | 06 | AR | Severe Storm(s) | 5/2/2011 | Open | - |
| 49 | 1976DR | 04 | KY | Severe Storm(s) | 5/4/2011 | Closed | 5/9/2023 |
| 50 | 1980DR | 07 | MO | Severe Storm(s) | 5/9/2011 | Closed | 12/13/2022 |
| 51 | 1991DR | 05 | IL | Severe Storm(s) | 6/7/2011 | Closed | 12/14/2022 |
| 52 | 1995DR | 01 | VT | Severe Storm(s) | 6/15/2011 | Open | - |
| 53 | 3330EM | 01 | MA | Hurricane | 8/26/2011 | Close | 9/14/2017 |
| 54 | 4017DR | 02 | PR | Hurricane | 8/27/2011 | Open | - |
| 55 | 4020DR | 02 | NY | Hurricane | 8/31/2011 | Open | - |
| 56 | 4021DR | 02 | NJ | Hurricane | 8/31/2011 | Open | - |
| 57 | 4022DR | 01 | VT | Hurricane | 9/1/2011 | Open | - |
| 58 | 4023DR | 01 | CT | Hurricane | 9/2/2011 | Open | - |
| 59 | 4026DR | 01 | NH | Hurricane | 9/3/2011 | Open | - |
| 60 | 4028DR | 01 | MA | Hurricane | 9/3/2011 | Open | - |

**OFFICE OF INSPECTOR GENERAL**

*U.S. Department of Homeland Security*

| No. | DECLARATION | REGION | STATE | INCIDENT TYPE | DECLARATION DATE | STATUS | DATE CLOSED |
|-----|-------------|--------|-------|---------------|------------------|--------|-------------|
| 61 | 4029DR | 06 | TX | Fire | 9/9/2011 | Closed | 12/22/2022 |
| 62 | 4031DR | 02 | NY | Severe Storm(s) | 9/13/2011 | Open | - |
| 63 | 4046DR | 01 | CT | Severe Storm(s) | 11/17/2011 | Closed | 1/5/2023 |
| 64 | 4047DR | 06 | NM | Flood | 11/23/2011 | Open | - |
| 65 | 4048DR | 02 | NJ | Severe Storm(s) | 11/30/2011 | Closed | 4/3/2023 |
| 66 | 4051DR | 01 | MA | Severe Storm(s) | 1/6/2012 | Open | - |
| 67 | 4056DR | 10 | WA | Severe Storm(s) | 3/5/2012 | Open | - |
| 68 | 4057DR | 04 | KY | Severe Storm(s) | 3/6/2012 | Closed | 4/27/2023 |
| 69 | 4068DR | 04 | FL | Severe Storm(s) | 7/3/2012 | Open | - |
| 70 | 4079DR | 06 | NM | Flood | 8/24/2012 | Open | - |
| 71 | 4080DR | 06 | LA | Hurricane | 8/29/2012 | Open | - |
| 72 | 4083DR | 10 | WA | Severe Storm(s) | 9/25/2012 | Open | - |
| 73 | 4084DR | 04 | FL | Hurricane | 10/18/2012 | Open | - |
| 74 | 4085DR | 02 | NY | Hurricane | 10/30/2012 | Open | - |
| 75 | 4086DR | 02 | NJ | Hurricane | 10/30/2012 | Open | - |
| 76 | 4087DR | 01 | CT | Hurricane | 10/30/2012 | Open | - |
| 77 | 4089DR | 01 | RI | Hurricane | 11/3/2012 | Open | - |
| 78 | 4094DR | 10 | AK | Severe Storm(s) | 11/27/2012 | Open | - |
| 79 | 4097DR | 01 | MA | Hurricane | 12/19/2012 | Open | - |

Source: DHS OIG analysis of declarations within the audit scope
- No data

**OFFICE OF INSPECTOR GENERAL**

*U.S. Department of Homeland Security*

## Appendix D:
## Potential Monetary Benefits[16]

| Finding | Rec. No. | Funds to Be Put to Better Use | Questioned Costs – Unsupported Costs | Questioned Costs – Ineligible Costs | Total |
|---|---|---|---|---|---|
| **Programs Remain Open Beyond Their POPs** | 1 | $9,441,038 | $0 | $0 | $9,441,038 |
| FEMA Approved **Multiple POP and CLP** Extensions | 1 | $7,042,419,324 | $0 | $0 | $7,042,419,324 |
| **Total** | | $7,051,860,362 | $0 | $0 | $7,051,860,362 |

Source: DHS OIG analysis of findings in this report

---

[16] During the audit, FEMA completed the closure of 13 declarations and 16 programs associated with open declarations in our scope, returning an estimated $5.7 million to the DRF.  Because FEMA returned these funds to the DRF, we did not include them in the potential monetary benefits listed in this appendix.

**Appendix E:**
**Office of Audits Major Contributors to This Report**

Larry Arnold, Director (Retired)
Yesenia Starinsky, Director
John Skrmetti, Audit Manager
Katrina Burpo, Auditor-in-Charge
Alfonso Dallas Jr., Auditor
Maufrend Ruiz, Program Analyst
Michael Scoffone, Auditor
Maria Romstedt, Communications Analyst

**OFFICE OF INSPECTOR GENERAL**
*U.S. Department of Homeland Security*

## Appendix F:
## Report Distribution

**Department of Homeland Security**

Secretary
Deputy Secretary
Chief of Staff
General Counsel
Executive Secretary
Director, GAO/OIG Liaison Office
Under Secretary, Office of Strategy, Policy, and Plans
Assistant Secretary for Office of Public Affairs
Assistant Secretary for Office of Legislative Affairs
FEMA Liaison

**Office of Management and Budget**

Chief, Homeland Security Branch
DHS OIG Budget Examiner

**Congress**

Congressional Oversight and Appropriations Committees

## Additional Information

To view this and any other DHS OIG reports, Please visit our website: www.oig.dhs.gov

For further information or questions, please contact the DHS OIG Office of Public Affairs via email: DHS-OIG.OfficePublicAffairs@oig.dhs.gov



## DHS OIG Hotline

To report fraud, waste, abuse, or criminal misconduct involving U.S. Department of Homeland Security programs, personnel, and funds, please visit: www.oig.dhs.gov/hotline

If you cannot access our website, please contact the hotline by phone or mail:

Call: 1-800-323-8603

U.S. Mail:
Department of Homeland Security
Office of Inspector General, Mail Stop 0305
Attention: Hotline
245 Murray Drive SW
Washington, DC 20528-0305

EXHIBIT 5