**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MARY BASILE LOGAN**, <br><br> Plaintiff, <br><br> v. <br><br> **MERRICK GARLAND**, *in his official capacity as Attorney General, Department of Justice, et. al.*[1] <br><br> Defendants. | Civil Action No. 24-00040 (ZNQ) (TJB) <br><br> **OPINION** |

---

[1] Plaintiff's Amended Complaint identifies the following additional Defendants, collectively with Merrick Garland, the "Defendants": Llyod Austin III, in his official capacity as the Secretary, Department of Defense; William J. Burns, in his official capacity as the Director, Central Intelligence Agency; Christopher A. Wray, in his official capacity as the director of the Federal Bureau of Investigation; Denis Richard McDonough, in his official Capacity as Secretary of Veterans Affairs; Alejandro Mayorkas, in his official capacity as Secretary, U.S. Department of Homeland Security; Marcia L. Fudge, in her former capacity as Secretary, U.S. Department of Housing and Urban Development; Robert Califf, in his capacity as Commissioner, Food and Drug Administration; William J. Clinton, in his official capacity as the Former President of the United States of America; Hillary R. Clinton, in her official capacity as Former Secretary of State for the United States of America; Thomas Kean, Sr., in his former capacity as Chairman 9/11 commission; Robert Mueller, in his former capacity as Director of the Federal Bureau of Investigation; James Comey, in his former capacity as Director of the Federal Bureau of Investigation; Christopher J. Christie, in his capacity as the former-Governor of New Jersey; Richard "Dick" Cheney, in his former capacity as Vice President of the United States; Elizabeth "Liz" Cheney, in her former capacity as Chair, January 6 Commission; John Kerry, in his official capacity as U.S. Special Presidential Envoy for Climate; George W. Bush, in his former capacity as President of the United States; Barack Hussein Obama, in his former capacity as President of the united states; Loretta Lynch, in her former capacity as United States Attorney General; James Baker, in his former capacity as White House Chief of Staff; Eric Holder, in his former capacity as United States Attorney General; Joseph R. Biden, in his official capacity as President, his former capacities as Vice President and Senator, of these United States; John Ashcroft, in his former official capacity, as United States Attorney General; Jamie Gorelick, in her official capacity, Homeland Security Advisory council member; Nancy Pelosi, in her official capacity as Congresswoman (CA);George Norcross, in his capacity as Chairman, Cooper University Medical Systems; Philip Murphy, in his official capacity as Governor of New Jersey, and as former Chair of the National Governors Association (NGA); Tahesha Way, in her former capacity as Secretary of State, as former President of the National Association of Secretaries of State, and her current capacity as Lt. Governor, New Jersey; Judith Persichilli, in her official capacity as then-Commissioner of Health for the State of New Jersey; Sejal Hathi, in her official capacity as Deputy Commissioner For Public Health Services; Matthew Platkin, in his official capacity as Attorney General of the State of New Jersey; Kathy Hochul, in her official capacity as Governor of New York; Andrew Cuomo, in his former capacity as Governor of New York and his capacity as Vice-Chair of the National Governors Association; Letitia James, in her capacity as Attorney General of the State Of New York; Susan Rice, in her official capacity as United States Domestic Policy Advisor; Adam Schiff, in his official capacity as Congressman, of the State of California; Charles "Chuck" Schumer, in his official capacity as Senator for the State of New York; Xavier Becerra, in his official capacity as Secretary of Health and Human Services; Janet Yellen, in her

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court upon nine Motions to Dismiss Plaintiff's Amended Complaint ("AC," ECF Nos. 45, 46 & 55) filed by multiple Defendants in this case. (ECF Nos. 52, 53, 54, 56, 61, 72, 74, 76, 81).[2] *Pro se* Plaintiff Mary Basille Logan ("Plaintiff") appears to oppose the Motions as a whole, (ECF Nos. 57, 60, 69, 98, ), to which some Defendants replied, (ECF Nos. 62, 63).[3] Plaintiff has also filed what the Court liberally construes as three motions for a preliminary injunction and/or restraining order with supplementary evidence. (ECF Nos. 73, 77, 103, 105, 106, 107, 108.) Defendants have opposed or otherwise responded, (ECF No. 109, 111, 112, 113, 114, 115) and Plaintiff replied, (ECF No. 116, 117).[4]

The Court has carefully considered the parties' submissions and decides the Motions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will **GRANT** Defendants' Motions to Dismiss with prejudice. To the extent that some Defendants have not filed a responsive pleading, the Court will

---

official [capacity] as Secretary of the United States Treasury; Rod Rosenstein, in his former capacity as United States Deputy Attorney General; Huma Abedin, in her former capacity as Vice Chair of Hillary Clinton; |Debbie Wasserman Schultz, in her current capacity as U.S. Representative, (FL-25); Bill Nelson, in his official capacity as administrator of NASA; Occidental Petroleum; United Healthcare; Democratic National Committee ("DNC"); Republican National Committee ("RNC"); James Pittinger, in his official capacity as Mayor of Lebanon Borough, State of New Jersey; Lisa Sella, in her official capacity as Deputy Clerk, Lebanon Borough, State Of New Jersey; Robert Junge, in his official capacity as Municipal Co-Chair, Republican Party, Lebanon Borough, State Of New Jersey; John Does (1-100), Jane Does (1-100).

[2] The following Defendants filed Motions to Dismiss Plaintiff's AC: the RNC (ECF No. 52); jointly, Governor of New York Kathy Hochul and New York Attorney General Letitia James (the "NYS Defendants") (ECF No. 53); the DNC (ECF No. 54.); Robert Junge (ECF No. 56); George E. Norcross, III (ECF No. 61); Debbie Wasserman Schultz in her capacity as the former head of the DNC (ECF No. 72); United HealthCare ("UHC") (ECF No. 76); jointly, Christopher J. Christie, Philip D. Murphy, Tahesha Way, Judith Persichilli, Sejal Hathi, and Matthew Platkin (the "NJS Defendants") (ECF No. 74); and jointly, James Pittinger and Lisa Sella (ECF No. 81).

[3] The Department of Justice ("DOJ"), submitted a letter to the Court on behalf of all former and current federal officials named in this suit in their official capacity (the "Federal Defendants") contending they had not been properly served and were therefore not required to answer Plaintiff's complaint. (ECF No. 75 at 1.) The DOJ also stated there was no personal jurisdiction in this Court over any of the Federal Defendants based on the lack of service. (*Id.*) Plaintiff has filed multiple letters with the Court and requests for extensions to serve the Federal Defendants. (ECF Nos. 100, 118)

[4] Plaintiff has submitted a variety of additional letters and with the Court. Where necessary, the Court liberally construed them as part of Plaintiff's pleadings or otherwise considered their merits. (ECF Nos. 110, 119, 120, 121, 122.)

*sua sponte* **DISMISS** all of Plaintiff's remaining claims against all Defendants for lack of subject matter jurisdiction. The Court will **DENY** Plaintiff's three motions for preliminary injunctions/restraining orders.

I. **BACKGROUND AND PROCEDURAL HISTORY**

On January 4, 2024, Plaintiff began the instant action by filing a Complaint with the Court. ("Complaint," ECF No. 1.) Plaintiff filed her Amended Complaint with the Court on March 22, 2023. (*See* AC.) Construed liberally, the Court understands Plaintiff to allege all Defendants are involved in a sprawling conspiracy to subvert American electoral processes and voting procedures, with an overall goal of allowing foreign influence into American elections and harming the American electorate. At the heart of her claims is alleged collusion and conspiracy by Defendants to, among other goals, injure President-elect Donald J. Trump and his family through strategic untruths, erase the boundaries between the branches of the U.S. federal government, and harm America by allowing the proliferation of crime and drug cartels. (AC at 4-7, 22-25, 29-32, 34-38, 40-42, 50, 75, 87, 93, 95, 103.)[5]

From the Court's review of its docket, dating from the Amended Complaint, Plaintiff has submitted approximately 1,020 pages of pleadings to the Court, totaling approximately 4,180 pages when combined with supporting evidence.[6] Much of the substance of the pleadings are recitations of theories and "facts" regarding major events in modern U.S. history, including the Covid-19 Pandemic, the September 11, 2001 attack on the World Trade Center, and alleged foreign influence in U.S. politics dating from the mid-20th Century. (*See generally* ECF Nos. 45, 46, 55.)

---

[5] The Court notes that Plaintiff filed a related and similar lawsuit against an overlapping but not identical set of Defendants in this district last year, under Docket Number 23-21174. That case was voluntary dismissed on January 2, 2024. (Dkt. No. 23-21174 at ECF No. 55.) The instant case was filed two days later. (ECF No. 1.)

[6] This tally excludes purely procedural communications with the Court on topics such as proper service or extensions to deadlines.

The bulk of the attached evidence consists of publicly available documents and excerpted quotations from Congressional hearings. (*See generally* ECF No. 45.) A smaller portion of the evidence arises from Plaintiff's relationship with an organization called the "Liberty Project," of which Plaintiff is the Executive Director. (ECF No. 57-3.) Plaintiff attaches a report from the Liberty Project regarding election interference, as well as affidavits from researchers investigating election fraud and interference on behalf of the organization and on behalf of Plaintiff's motion seeking a preliminary injunction regarding the November 5, 2024 election. (ECF Nos. 57-3, 73-1.)

Based on the Court's best understanding of the voluminous documents before it, Plaintiff appears to bring claims under: Article II, § 3.1 of the U.S. Constitution (the "Take Care" clause); 18 U.S.C. § 1001, which prohibits federal employees from falsifying records; 18 U.S.C. §§ 2384, 2385, prohibiting conspiracy to overthrow the government; and Article III § 3 of the U.S. Constitution, prohibiting treason. (*Id.* at 22, 124.) Plaintiff also refers to the First, Fifteenth, and Fourteenth Amendments to the U.S. Constitution, and the USA Patriot Act.[7] (*Id.* at 22.) She states that she seeks declaratory relief under 28 U.S.C. §§ 2201, 2202.[8]

In the section labeled "Remedy", Plaintiff notes that she "received no compensation from this undertaking" and requests that the Court: (1) declare "Defendant's actions as described herein set forth in paragraphs 2-5 above abridge and deny those rights and statutes enumerated in" the

---

[7] "The Patriot Act is officially titled the 'Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001.'" *Am. C.L. Union v. U.S. Dep't of Just.*, 321 F. Supp. 2d 24, 26 (D.D.C. 2004) (citing Pub.L. No. 107–56, 115 Stat. 272 (Oct. 26, 2001)). Plaintiff does not specify what section of the Patriot Act she believes should apply to this action.

[8] In the section of her Amended Complaint titled "Prayer for Relief" Plaintiff writes that she "will not posture to political diatribe, seeking favor from no one presently holding office, her respect diminishing by the day of such parties" and that "on this occasion, the People seek the unvarnished truth and so as to corroborate advancing affirmation, God has demanded that the Plaintiff amass a repository of facts, for which she is obliged." (AC at 123.) Plaintiff writes that in her AC she "gathers the honored voices and breath, the only measure which would have authored this document, unzipping the bags for the world to behold, the Defendant's herein named . . . are responsible for these atrocities – no one else and most certainly not God, Almighty." (*Id.*)

Take Care Clause, 18 U.S.C. § 1001, 18 U.S.C. §§ 2384, 2385; Art. III § 3, clause 1; (2) enjoin the Defendants from committing actions similar to those described in paragraphs 2-5; (3) award Plaintiff $8,000,000,000 in compensatory and punitive damages for the "deprivation of the rights so infringed by corrupt practice"; (4) award Plaintiff attorney's fees, costs, and disbursements incurred in this action; (5) place Donald Trump on the November 2023 ballot, (6) remove Joseph Biden as the "Executive of these United States"; (7) return all voting to in-person paper ballots on election day itself, eliminating early voting; (8) order all paper ballots to be hand counted; (9) end all relationships related to voting with computer companies making electronic ballots. (AC at 124.)

Active Defendants[9] all move to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and/or 12(b)(6). (*See generally* the "MTDs," ECF Nos. 52, 53, 54, 56, 61, 72, 74, 76 & 81.)[10] The MTDs uniformly argue the Court has no subject matter jurisdiction over this case and that Plaintiff has failed to state a claim, seeking dismissal under Rule 12(b). (*See the* MTDs.) More granularly, Defendants argue that: Plaintiff has no standing to bring this case, (*see* ECF Nos. 52, 54, 61, 72, 76, 81); that any claims are statutorily barred due to Defendants' immunity, (*see* ECF Nos. 53, 72); that this Court does not have personal jurisdiction over the Defendants, (*see* ECF Nos. 53, 72 ); that the Court has no jurisdiction over frivolous lawsuits, (*see* ECF Nos. 52); that Plaintiff has violated Rule 8 (*see* ECF Nos. 54, 72, 74) and that Plaintiff fails to coherently articulate a claim or her prayer for relief under the law (*see* the MTDs).

---

[9] Excluding any Defendants who have not appeared in this case, including the Federal Defendants.
[10] While the Court will rely on arguments from the MTDs, it will not substantially quote each MTD individually as its analysis turns on legal theory common to all Defendants.

Even construed liberally, Plaintiff does not substantially oppose the MTDs. (*See generally* ECF Nos. 57, 60, 69, 78.)  Plaintiff's oppositions raise new claims and issues of law, and overall do not address the substantive bases for dismissal brought in the MTDs. (*Id.*)[11]

In subsequent pleadings, Plaintiff filed what the Court construes as three separate motions for preliminary injunctions and/or restraining orders ostensibly related to her claims. (ECF Nos. 73, 105, 107.)[12]  Plaintiff's first motion for preliminary injunction appears to assert election interference from Defendants that would infringe on Plaintiff's right to vote. (the "First Preliminary Injunction," ECF No. 73 at 8.)  Plaintiff's second motion for preliminary injunction appears to seek a preliminary injunction on the basis that Defendants have committed crimes against humanity, treason, and civil rights violations including generalized election interference in relation to the U.S. federal election taking place on November 5, 2024.  (the "Second Preliminary Injunction," ECF No. 105 at 8.)  Plaintiff's also sent a letter stating she seeks a Restraining Order against Defendants James Pittinger, Lisa Sella and Robert Junge after Plaintiff received notice that she was in arrears on her property taxes and a letter from her mortgage holder stating the tax payment was rejected. (the "Third Preliminary Injunction," ECF No. 107 at 1.)

Defendants have opposed or otherwise responded, (ECF No. 109, 111, 112, 113, 114, 115) and Plaintiff replied. (ECF No. 116, 117.)  In Plaintiff's replies to Defendants' oppositions and the

---

[11] Plaintiff's oppositions seem to bring additional causes of action under 18 U.S.C. §§ 1030(A), 1961(C), 1961(D), 1503, 1512, 2510-22, 2701-2702, and 17 U.S.C. § 1201. (See ECF No. By not including these claims in her opening brief, Plaintiff waived these arguments.  *See United States v. Pelullo*, 399 F.3d 197, 222 (3d Cir. 2005)); *see also In re Radnor Holdings Corp.*, 528 B.R. 245, 251 (D. Del. 2014), *aff'd*, 629 F. App'x 277 (3d Cir. 2015) ("Because appellant failed to clearly raise the foregoing issue in his opening brief, the court need not consider the issue.") Additionally, there is no right of action for individuals under Title 18 (18 U.S.C.), which are criminal statutes.  These criminal statutes "do not allow independent civil claims for the simple reason that private citizens do not have 'authority to initiate a federal criminal prosecution; that power is vested exclusively in the executive branch.'" *Livesay v. Murphy*, Civ. No. 20-17947, 2022 WL 4597435, at *7 (D.N.J. Sept. 30, 2022) (quoting *United States v. Nixon*, 418 U.S. 683, 693 (1974)).

[12] Plaintiff also filed a preliminary injunction at ECF No. 103 that is substantially similar to the one filed at ECF No. 105.  As Plaintiff appears to rely on the version submitted at ECF No. 105 in her subsequent filings, the Court will rely on it as well.  (*See* ECF No. 116 at 1.)

large volume of supporting documents she has filed with the Court, she does not articulate a legal basis for the Court to grant the injunctions/ restraining orders, or otherwise meaningfully reply to Defendants' substantive arguments. (*See generally* ECF Nos. 116, 117.)

## II. LEGAL STANDARD

Article III, Section 2 of the Constitution limits the "judicial power" of the United States to the resolution of certain "cases" and "controversies." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State,* 454 U.S. 464, 471 (1982). "The requirements of Art. III are not satisfied merely because a party requests a court of the United States to declare its legal rights, and has couched that request . . . in terms that have a familiar ring to those trained in the legal process." *Id.* The "case" or "controversy" requirement is enforced through a number of justiciability doctrines, which include standing, ripeness, mootness, the political-question doctrine, and the prohibition on advisory opinions. *Toll Bros., Inc. v. Twp. of Readington,* 555 F.3d 131, 137 (3d Cir. 2009).

A case becomes moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome. *A.S. v. Harrison Twp. Bd. of Educ.*, 66 F. Supp. 3d 539, 545 (D.N.J. 2014) (citing *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). In other words, "when it is no longer possible for this court to grant the relief requested, a case is moot and this court lacks jurisdiction to hear it." *Lazur v. Moser*, Civ. No. 21-57, 2022 WL 2719473, at *1 (W.D. Pa. Mar. 11, 2022). The mootness doctrine requires that "an actual controversy [is] extant at all stages of review, not merely at the time the complaint is filed." *Steffel v. Thompson,* 415 U.S. 452, 459 n.10 (1974). "'A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 189 (2000) (quoting *U.S. v. Concentrated Phosphate*

*Export Assn.,* 393 U.S. 199, 203 (1968)).  Mootness may not become an issue until the case has been brought and litigated.  *Id.* at 191.

A federal court must address the question of mootness, even though it was not raised by the parties, because it implicates Article III jurisdiction, and thus, a Court may raise *sua sponte* the issue of whether a suit presents a live case or controversy.  *New Jersey Tpk. Auth. v. Jersey Cent. Power & Light*, 772 F.2d 25, 30 (3d Cir. 1985); *Luppino v. Mercedes Benz USA*, 718 F. App'x 143, 147 (3d Cir. 2017) (explaining that federal courts have a duty to determine mootness or abstract propositions, or to declare legal principles which cannot affect the ultimate issue in the case) (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)); *Just In Time Chem. Sales & Mktg., Inc. v. Ironshore Specialty Ins. Co.*, Civ. No. 13-7127, 2014 WL 3784264, at *1 (D.N.J. July 31, 2014) ("A court may *sua sponte* dismiss a case on grounds of mootness").

Similarly, under Fed. R. Civ. P. 12(b)(1), a court must grant a motion to dismiss if it lacks subject matter jurisdiction to hear a claim.  *See* Fed. R. Civ. P. 12(b)(1).  "A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter."  *Behar v. Murphy*, Civ. No. 20-5206, 2020 WL 6375707 at *2 (D.N.J. Oct. 30, 2020); *see also St. Thomas - St. John Hotel & Tourism Ass'n v. U.S. Virgin Islands*, 218 F.3d 232, 240 (3d Cir. 2000) ("The issue of standing is jurisdictional.").  "On a motion to dismiss for lack of standing, the plaintiff bears the burden of establishing the elements of standing, and each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof."  *Ballentine v. United States*, Civ. No. 99-130, 2006 WL3298270 at *3–4 (D.V.I. Sep. 21, 2006) (internal quotation marks omitted).  To show standing, a plaintiff must establish: "(1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision."  *In*

8

re *Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 272 (3d Cir. 2016) (quoting *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016)).

On a Rule 12(b)(1) motion, a court presumes that it lacks subject matter jurisdiction, and "the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted); *see also Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991) (when jurisdiction is challenged under Rule 12(b)(1), the plaintiff bears the burden of persuasion).

### III. DISCUSSION

#### A. THE ELECTION INJUNCTIONS

##### 1. The Election Related Preliminary Injunctions

Plaintiff filed three Preliminary Injunctions with the Court, two of which are related to the November 5, 2024 election. (the First Preliminary Injunction and the Second Preliminary Injunction, together, the "Election Injunctions," ECF No. 73 & 105.) At this juncture, the Court raises, *sua sponte*, the issue of mootness in the two election-related applications for injunctions in light of the fact that the election has already passed. *See Shapiro v. Barber*, 2022 WL 16748733 (D.N.J. 2022) (finding that a court should not address the preliminary injunction factors before first determining mootness issues); *see also Korean Am. Chamber of Com. U.S.A. LLC v. Overseas Korean Agency*, No. 23-04387, 2023 WL 7126447, at *3 (D.N.J. Oct. 30, 2023) (determining mootness before moving to analysis of the merits of the motion for preliminary injunction). In the Election Injunctions, Plaintiff seeks changes to the electoral process prior to the 2024 U.S. presidential election. (*See* ECF Nos. 73 & 105.)

A U.S. federal court can only adjudicate live cases and controversies. *See Overseas Korean Agency*, 2023 WL 7126447, at *3 (citing *Rendell v. Rumsfeld*, 484 F.3d 236, 240 (3d Cir. 2007)).

In the case of preliminary injunctions, courts may deny injunctive relief for mootness when the requested relief can no longer be granted due to a change in circumstances. *See Bower v. Cannon*, 2018 WL 4204441, at *3 (D.N.J. Sept. 4, 2018). Here, the Court understands Plaintiff's Election Injunctions and the majority of the related evidence to relate to the November 5, 2024 election, which has already occurred. (*See generally* ECF Nos. 73, 77, 105, 106.) As the election has already passed, the Court finds the Election Injunctions are moot, as the Court cannot offer any relief. *See Lazur v. Moser*, Civ. No. 21-57, 2022 WL 2719473, at *1 (W.D. Pa. Mar. 11, 2022) ("[W]hen it is no longer possible for this court to grant the relief requested, a case is moot and this court lacks jurisdiction to hear it."); *see also Overseas Korean Agency*, 2023 WL 7126447, at *3 (denying a preliminary injunction as moot where the primary events complained of in the motions for preliminary injunction had already occurred).

Under certain circumstances, there can be an exception to the "live controversy" requirement for preliminary injunctions, known as the "capable of repetition" exception, even if the preliminary injunction is otherwise moot. *Overseas Korean Agency*, 2023 WL 7126447, at *4. However, that exception only applies where "(1) the challenged action is, in its duration, too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Id.* (quoting *Rendell v. Rumsfeld*, 484 F.3d 236, 241 (3d Cir. 2007)). Given there are four years before the next federal presidential election, and two years until the next midterm election, Plaintiff "will have ample time, if necessary, to bring a new motion for injunctive relief" meaning that "any future challenged action will not be 'too short in duration to be fully litigated before the case will become moot.'" *Overseas Korean Agency*, 2023 WL 7126447, at *4 (quoting *Donovan ex rel. Donovan v. Punxsutawney Area Sch. Bd.*, 336 F.3d 211, 217 (3d Cir. 2003)). Therefore, the "capable of

10

repetition" exception does not apply to Plaintiff's two Election Injunctions. *See Seneca Res. Corp. v. Twp. of Highland, Elk Cnty., Pa.*, 863 F.3d 245 (3d Cir. 2017) (finding that the "capable of repetition" exception did not apply where there was sufficient time for the court to intervene).

As such, the Court denies Plaintiff's motions for preliminary injunctions related to the U.S. election on November 5, 2024, (ECF Nos. 77, 105) as moot.

**B.      STANDING**

Moving to the substance of Plaintiff's AC, Defendants argue that Plaintiff lacks standing because she (1) cannot establish an injury-in-fact, and (2) does not have standing to sue under the statutes she brings this case under. (*See generally* the MTDs.) If Plaintiff lacks standing, the Court has no subject matter jurisdiction over this case. *See, e.g., Raines v. Byrd*, 521 U.S. 811, 818 (1997) (plaintiff bears to burden to establish their "standing to sue"); *Behar v. Murphy*, Civ. No. 20-5206, 2020 WL 6375707 at *2 (D.N.J. Oct. 30, 2020) (standing is a jurisdictional matter); *St. Thomas - St. John Hotel & Tourism Ass'n v. U.S. Virgin Islands*, 218 F.3d 232, 240 (3d Cir. 2000) (same).

"[T]he grounds for jurisdiction must be clear on the face of the pleading that initiates the case." *Goldman v. Citigroup Glob. Markets Inc.*, 834 F.3d 242, 249 (3d Cir. 2016) (citation omitted). While Plaintiff does not coherently oppose Defendants' standing arguments, the Court understands Plaintiff to contend that she has demonstrated an injury-in-fact because, among other similar facts: she was not able to secure an attorney for these proceedings, violating her right to an attorney (AC at 5); Defendant Christopher Christie's property management company contacted "Plaintiff's spouse for contracted services at his commercial property twice" which Plaintiff characterizes as "tampering and intimidation (ECF No. 57 at 25); Defendant Christopher Wray also contacted Plaintiff's spouse for contracted services, and "gave Plaintiff's spouse and her son

11

CIA token coins and made it a point to expound on touring his trophy office," which Plaintiff characterizes as tampering and intimidation (*id.* at 26); a woman of Plaintiff's acquaintance suffered from domestic violence similar to that of a victim of non-parties the Awan brothers, who Plaintiff alleges have extensive relationships with Defendants (*id.*); and the DNC's support of President Biden "is causational in the palpable disclosure of risk to personal life, liberty, and property," (*id.* at 27).

As a general matter, Plaintiff states that the "lawfare being waged" by President Biden violates Plaintiff's civil rights "including but not limited to privacy rights" and her rights under the Help America Vote Act. (*Id.*) Plaintiff's oppositions further include allegations that the NYS Defendants' are liable for harm against Plaintiff because Plaintiff's sibling died from Covid-19 in New York State; that Plaintiff has suffered harm to her reputation and business due to needing to shut down her office due to the alleged witness tampering and intimidation cited above, and has therefore experienced financial instability and issues with her property; and that the treasonous activities on behalf of Defendants "provided and continue to provide great risk of harm to Plaintiff's Civil Rights and life, liberty, and property. (ECF No. 60 at 5, 32, 36; ECF No. 69 at 2, 5-7, 19, 21, 22.)

To allege injury-in-fact, "a plaintiff must claim the invasion of a concrete and particularized legally protected interest resulting in harm that is actual or imminent, not conjectural or hypothetical." *Nickelodeon*, 827 F.3d at 272 (quoting *Finkelman*, 810 F.3d at 193) (internal quotations omitted). A harm is "concrete" only "if it is 'de facto'; that is, it must actually exist"— it cannot be merely "abstract." *Id.* (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016)). To satisfy the injury-in-fact requirement, the injury must be "particularized," such that it affects the plaintiff in a "personal and individual way." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.

1 (1992). The Supreme Court has emphasized that the injury must also be "concrete in both a qualitative and temporal sense"; in other words, the "complainant must allege an injury to himself that is distinct and palpable, as opposed to merely [a]bstract, and the alleged harm must be actual or imminent, not conjectural or hypothetical." *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) (internal quotations and citations omitted).

To that end, allegations of a potential future injury, or the mere possibility of a future injury, will not establish standing. *See id*. at 158; *Reilly v. Ceridian Corp*., 664 F.3d 38, 42 (3d Cir. 2011) ("Allegations of 'possible future injury' are not sufficient to satisfy Article III").

The Court cannot ascertain concrete actions by Defendants that Plaintiff alleges harmed her specifically, other than conclusory statements that Defendants are liable for a multitude of sins and problems, including some facially unrelated to the activities alleged in the AC. Given Plaintiff's failure to provide any evidence of a specific and concrete injury-in-fact beyond self-serving allegations, the Court finds that Plaintiff's claims with respect to alleged changes to the U.S. voting system, the economy writ large, and the structure of the U.S. government lack Article III standing. *See e.g., Kaetz v. United States*, Civ. No. 19-cv-8100, 2020 WL 7351219, at *8 (D.N.J. Dec. 15, 2020) (holding that Plaintiff lacked standing to challenge Governor Murphy's EOs because he did "not set forth facts identifying a cognizable personal injury").

Where Plaintiff has conclusorily stated that Defendants' conduct has caused injuries to herself, she has not pled Defendants' involvement with sufficient particularity or clarity to show injury-in-fact. *See e.g., Freedom from Religion Found. Inc.*, 832 F.3d at 478 ("standing requires that the plaintiff has a concrete grievance that is particularized to him and that the plaintiff is not one simply expressing generalized disagreement with activities in a place in which he has no connection") (emphasis added)); *see also Wayne Land & Min. Grp., LLC v. Delaware River Basin*

*Comm'n*, 959 F.3d 569, 574 (3d Cir. 2020) ("[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." (citation omitted)).

Plaintiff further fails to meet the standing requirements because she does not allege that the challenged activity, to the extent the Court can ascertain what that activity is, harmed her in a personal and individual way relative to other state residents. *Arizona Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 140, 145-46 (2011) (holding that "generalized grievances about the conduct of government," and a complaint that merely "disagrees with" a state's law is insufficient to establish an injury-in-fact). Following the Covid-19 pandemic, the Supreme Court has held that plaintiffs do not have standing to sue government actors seeking injunctive relief related to Covid-19 information and alleged censorship because of a broad theory that their rights have been violated. *See Murthy v. Missouri*, 603 U.S. 43, 71 (2024). Further, courts in this circuit have already held that plaintiffs bringing generalized grievances irremediable by the courts lack standing. *See, e.g.*, *Parker v.* Wolf, Civ. No. 20-1601, 2020 WL 7295831 (M.D. Pa Dec. 11, 2020).

The Court finds that all claims against all Defendants must be dismissed due to Plaintiff's lack of standing. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) ("[C]ourts . . . have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party."); *see also Meyer v. Delaware Valley Lift Truck, Inc.*, 392 F. Supp. 3d 483, 494 (E.D. Pa. 2019) (standing is jurisdictional and thus may be raised *sua sponte*) (citing *Med. Soc'y of N.J. v. Jacobs*, 1993 WL 413016, at *3 (D.N.J. Oct. 5, 1993).

### C.    QUALIFIED IMMUNITY

Even if Plaintiff had standing to sue, the vast majority of the Defendants she brings this case against are protected by the doctrine of qualified immunity, as she brings suit against

numerous state and federal officials acting in their official capacities.[13] (ECF No. 53 at 7-9; ECF No. 74-1 at 6-9.)[14] Qualified immunity is an affirmative defense that shields government officials who perform discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity shields federal

---

[13] At a minimum, the Court identifies the following Defendants as clearly barred from suit under the doctrine of qualified immunity as they are being sued in their capacity as former and current state and federal officials (collectively, the "S&F Officials"): Merrick Garland, in his official capacity as Attorney General of the United States; Llyod Austin III, in his official capacity as the Secretary, Department of Defense; William J. Burns, in his official capacity as the Director, Central Intelligence Agency; Christopher A. Wray, in his official capacity as the director of the Federal Bureau of Investigation; Denis Richard McDonough, in his official Capacity as Secretary of Veterans Affairs; Alejandro Mayorkas, in his official capacity as Secretary, U.S. Department of Homeland Security; Marcia L. Fudge, in her former capacity as Secretary, U.S. Department of Housing and Urban Development; Robert Califf, in his capacity as Commissioner, Food and Drug Administration; William J. Clinton, in his official capacity as the Former President of the United States of America; Hillary R. Clinton, in her official capacity as Former Secretary of State for the United States of America; Thomas Kean, Sr., in his former capacity as Chairman 9/11 commission; Robert Mueller, in his former capacity as Director of the Federal Bureau of Investigation; James Comey, in his former capacity as Director of the Federal Bureau of Investigation; Christopher J. Christie, in his capacity as the former-Governor of New Jersey; Richard "Dick" Cheney, in his former capacity as Vice President of the United States; Elizabeth "Liz" Cheney, in her former capacity as Chair, January 6 Commission; John Kerry, in his official capacity as U.S. Special Presidential Envoy for Climate; George W. Bush, in his former capacity as President of the United States; Barack Hussein Obama, in his former capacity as President of the united states; Loretta Lynch, in her former capacity as United States Attorney General; James Baker, in his former capacity as White House Chief of Staff; Eric Holder, in his former capacity as United States Attorney General; Joseph R. Biden, in his official capacity as President, his former capacities as Vice President and Senator, of these United States; John Ashcroft, in his former official capacity, as United States Attorney General; Nancy Pelosi, in her official capacity as Congresswoman (CA); Philip Murphy, in his official capacity as Governor of New Jersey, and as former Chair of the National Governors Association (NGA); Tahesha Way, in her former capacity as Secretary of State, as former President of the National Association of Secretaries of State, and her current capacity as Lt. Governor, New Jersey; Judith Persichilli, in her official capacity as then-Commissioner of Health for the State of New Jersey; Sejal Hathi, in her official capacity as Deputy Commissioner For Public Health Services; Matthew Platkin, in his official capacity as Attorney General of the State of New Jersey; Kathy Hochul, in her official capacity as Governor of New York; Andrew Cuomo, in his former capacity as Governor of New York and his capacity as Vice-Chair of the National Governors Association; Letitia James, in her capacity as Attorney General of the State Of New York; Susan Rice, in her official capacity as United States Domestic Policy Advisor; Adam Schiff, in his official capacity as Congressman, of the State of California; Charles "Chuck" Schumer, in his official capacity as Senator for the State of New York; Xavier Becerra, in his official capacity as Secretary of Health and Human Services; Janet Yellen, in her official [capacity] as Secretary of the United States Treasury; Rod Rosenstein, in his former capacity as United States Deputy Attorney General; Debbie Wasserman Schultz, in her current capacity as U.S. Representative, (FL-25); Bill Nelson, in his official capacity as administrator of NASA.

[14] To the extent Plaintiff brings claims against Defendants acting in their official capacity under § 1983, the Court finds that the NYS and NJS Defendants are not "persons" amenable to suit under § 1983, and that Plaintiff has not stated cognizable claims or violations of the Constitution against any Defendants to the level required by § 1983. *See Castro v. New Jersey*, 521 F. Supp. 3d 509, 517-18 (D.N.J. 2021); *see also Smith v. New Jersey*, 908 F. Supp. 2d 560, 563 (D.N.J. 2012); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (in a § 1983 action "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.") Further, to the extent that Plaintiff brings § 1983 claims against individuals who are not government actors including George Norcross and Huma Abedin, they are not state actors amenable to suit under the statute.

and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Defining the constitutional right at issue for qualified immunity purposes is critical in assessing whether or not that right was "clearly established." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). "Indeed, qualified immunity would be a worthless defense if a plaintiff could simply invoke a broad constitutional right . . . that a defendant supposedly violated to overcome the hurdle." *Michaels v. New Jersey*, 50 F. Supp. 2d 353, 363 (D.N.J. 1999). Once a defendant raises the defense of qualified immunity, it is the plaintiff's burden to delineate the constitutional right that was violated and show that it was clearly established at the time of the conduct at issue. *Id.* at 362.

The Court finds that the S&F Officials are entitled to qualified immunity on two grounds. First, Plaintiff failed to meet her burden to delineate the constitutional right that was violated. *Id.* In her opposition, Plaintiff simply reiterates that the constitutional right that was violated was her civil rights, including to life, liberty, and property. (*See generally* ECF Nos. 57, 60, 69.) Courts in this district have held that asserting a broad constitutional right such as "due process" is insufficient to overcome the hurdle of defining the constitutional right that was violated. *Michaels*, 50 F. Supp. 2d at 363. Second, Plaintiff does not adequately or coherently allege illegal or unconstitutional behaviors to the extent necessary. Accordingly, the Court concludes that the S&F Officials are entitled to qualified immunity from Plaintiff's claim for money damages. *Kaul v. Christie*, 372 F. Supp. 3d 206, 243 (D.N.J. 2019).

### D. FEDERAL STATUTORY TITLE CLAIMS

Further, as a general matter, Plaintiff cannot bring the claims she allegedly seeks relief for under the statutes she names in her AC, to the extent the Court is able to ascertain her intent. (*See*

*generally* AC.) Plaintiff alleges claims against Defendants under Title 18. None of these claims, however, provide for a private cause of action. Without a private cause of action, Plaintiff does not have standing to bring these claims. *Polaroid Corp. v. Disney*, 862 F.2d 987, 993 (3d Cir. 1988) ("If a private right of action exists in favor of a party, standing follows as a matter of course").

Plaintiff attempts to assert multiple causes of action under Title 18 in her AC: 18 U.S.C. §§ 1001, 2384, 2385. However, as discussed *supra*, these are criminal statutes that do not allow independent civil claims for the simple reason that private citizens do not have "authority to initiate a federal criminal prosecution; that power is vested exclusively in the executive branch." *United States v. Nixon*, 418 U.S. 683, 69e3 (1974).

In light of the fact that all claims under Title 18 of the United States Code do not permit private causes of action, the Court will dismiss these claims.

## IV.     CONCLUSION

For the reasons stated above, the Court will **GRANT** Defendants' nine Motions to Dismiss, and will *sua sponte* dismiss all remaining claims against all Defendants.[15] Given the nature of Plaintiff's claims and the bases for the Court's dismissal of those claims, the Court further finds

---

[15] To the extent individual Defendants seek costs under Federal Rule of Civil Procedure 41(d), the Court denies the request. (ECF No. 54-1 at 11-12.) However, Plaintiff is warned that if she seeks to bring a similar suit against these Defendants again, it will be amenable to imposing sanctions, including costs. Given all claims are dismissed, the Court will also **DENY** Plaintiff's Third Preliminary Injunction. (ECF No. 107.) Further, to the extent Defendant Robert Junge asserts a cross claim, it is **DENIED**. (ECF No. 56.)

that any attempt to amend the Complaint would be futile. Accordingly, the dismissal will be with prejudice. An appropriate Order will follow.

Date: **November 26, 2024**

                                                 **ZAHID N. QURAISHI**
                                                 **UNITED STATES DISTRICT JUDGE**